```
F9GLGAMC
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

       v.                              15 CR 588 (ER)

AHMED MOHAMMED EL GAMMAL,

           Defendant.

------------------------------x

                                      New York, N.Y.
                                      September 16, 2015
                                      3:46 p.m.

Before:

                  HON. EDGARDO RAMOS,

                          District Judge

                    APPEARANCES

PREET BHARARA
     United States Attorney for the
     Southern District of New York
BRENDAN QUIGLEY
ANDREA SURRATT
     Assistant United States Attorneys

FEDERAL DEFENDERS OF NEW YORK
     Attorneys for Defendant
BY:  SABRINA SHROFF
     ANALISA MIRON

F9GLGAMC

1          THE DEPUTY CLERK:  In the matter of United States of
2    America v. Gammal, counsel, please state your name for the
3    record.
4          MR. QUIGLEY:  Good afternoon, your Honor.  Brendan
5    Quigley and Andrea Surratt for the United States.
6          MS. SHROFF:  Good afternoon, your Honor.  Federal
7    Defenders of New York by Sabrina Shroff on behalf of Mr. El
8    Gammal, who is seated to my right.
9          THE COURT:  Good afternoon to you and good afternoon
10   to you, Mr. El Gammal.
11         THE DEFENDANT:  Good afternoon.
12         THE COURT:  This matter is on for arraignment.  So let
13   me begin with you, Ms. Shroff, or with you, Mr. El Gammal.
14   Have you received a copy of the indictment in your case?
15         THE DEFENDANT:  Finally I got one today.  Yes.
16         THE COURT:  So you received a copy of the complaint.
17         Ms. Shroff, do you wish me to read the indictment
18   aloud?
19         MS. SHROFF:  No, your Honor.  Mr. Gammal waives the
20   public reading of the indictment.
21         THE COURT:  How do you plead, Mr. Gammal, do you plead
22   guilty or not guilty?
23         THE DEFENDANT:  Not guilty.
24         THE COURT:  Okay.  Mr. Quigley or Ms. Surratt, why
25   don't you tell me where we stand with respect to matters

F9GLGAMC

1   concerning bail.

2   MR. QUIGLEY:  Your Honor, the defendant was arrested
3   on a complaint that issued from this district in the district
4   of Arizona on August 24.  There was bail proceedings in the
5   district of Arizona later that week and carrying over into the
6   following week.  At that point early the following week, the
7   defendant was ordered detained and removed to this district.
8   In the interim, he was also indicted in this district on the
9   indictment that he's just been arraigned on.

10   THE COURT:  When did he leave Arizona?

11   MR. QUIGLEY:  He left Arizona, your Honor, on I
12   believe September 2, your Honor.

13   THE COURT:  So we're now on the 16th.  Why did it take
14   two weeks?

15   MR. QUIGLEY:  Your Honor, I think that's standard
16   time.  I've had other arrests in the west coast and Arizona
17   where it's taken three weeks or more for the defendant to get
18   here.

19   THE COURT:  Okay.  And I take it the government wishes
20   to continue the bail conditions that were ordered that he be
21   remanded.

22   MR. QUIGLEY:  Yes, your Honor.

23   THE COURT:  Ms. Shroff, did you wish to be heard on
24   the issue of bail?

25   MS. SHROFF:  Not today, your Honor.

F9GLGAMC

1  THE COURT: Now, with respect to your appointment as a
2  Federal Defender, first of all, I haven't appointed you or have
3  you been appointed as yet?
4  MS. SHROFF: No, your Honor.
5  THE COURT: Has Mr. El Gammal filed a financial
6  affidavit?
7  MS. SHROFF: He has, your Honor.
8  THE COURT: Do I have it?
9  MS. SHROFF: No.  May I hand it up, your Honor?
10  THE COURT: Please.
11  Well, he does appear to have some ability to pay a
12  private lawyer.  Ms. Shroff, have you discussed this matter
13  with Mr. El Gammal?  Does he wish to have Federal Defenders
14  represent him?
15  MS. SHROFF: Well, your Honor, I have not asked him if
16  he wishes for the Federal Defenders to represent him because I
17  didn't phrase it --
18  THE COURT: Perhaps I phrased it poorly.
19  MS. SHROFF: I just wanted to note, your Honor, that,
20  if I may, my colleague, Ms. Miron has joined me.  She was stuck
21  in magistrate court.  If she could just help me at counsel
22  table, I would appreciate that.
23  THE COURT: Certainly.  Welcome, Ms. Miron.
24  MS. MIRON: Thank you.
25  MS. SHROFF: Your Honor, Mr. El Gammal does seem to

1  have some assets.  As I discussed with the United States
2  Attorney's Office, I do believe he qualifies for representation
3  under the Criminal Justice Act solely because of the type of
4  case and the cost associated with a proper defense of a case
5  like this.  Of course, if Mr. Gammal were facing a charge of
6  being a felon in possession, he would obviously be retaining an
7  attorney because he could afford an attorney that would be
8  fully able to represent him.
9           The Court, of course, is free to assign some costs to
10 Mr. Gammal, other judges have done that, a monthly cost or a
11 cost to defray the services provided by the Federal Defenders.
12          THE COURT:  The form notes that he is self-employed.
13          MS. SHROFF:  He was.
14          THE COURT:  So presumably he will not be getting any
15 income in the event that he is remanded, correct?
16          MS. SHROFF:  Not unless we succeed in a future bail
17 application, that's correct.
18          THE COURT:  And, therefore, if he is remanded, it will
19 only be a short period of time before, presumably, he's back
20 asking for either CJA funds or to be represented by Federal
21 Defenders.
22          MS. SHROFF:  That's correct, your Honor.  He has no
23 funds now.  He hasn't had any funds since his initial
24 detainment.
25          THE COURT:  What do you mean he has no funds?

1        MS. SHROFF:  I'm sorry.  He has no income since that
2   date.
3        THE COURT:  Does the government have a view with
4   respect to Mr. El Gammal's ability to retain a private lawyer?
5        MR. QUIGLEY:  Your Honor, we recognize that Mr. El
6   Gammal does have not insignificant assets.  And I think it's
7   worth noting for the record that the Federal Defenders in
8   Arizona, I believe that Mr. Gammal did not qualify for
9   appointed counsel.
10       That being said, we recognize that the Court has a
11  significant degree of discretion in this area and that the cost
12  of obtaining adequate representation will depend on the
13  complexity of the case.
14       THE COURT:  How long has Mr. El Gammal been
15  self-employed?
16       MS. SHROFF:  Your Honor, may I just address one point
17  that Mr. Quigley raised?
18       THE COURT:  Certainly.
19       MS. SHROFF:  Your Honor, I did receive a call from the
20  attorney that was retained by Mr. El Gammal in Arizona.  He
21  communicated to us that it was his understanding that Mr. El
22  Gammal would not be able to retain or have sufficient funds to
23  retain an attorney, which is why he had asked the Federal
24  Defenders to be in touch or he had been in touch with the
25  Federal Defenders office so that his client in Arizona, Mr. El

1     Gammal, could be properly treated when he got here.

2             It is my understanding that Arizona has a somewhat
3     different standard.  They actually have a numerical cutoff
4     which the Southern District doesn't have.  But it was
5     Mr. Morrissey's thought process that Mr. Gammal could not have
6     continued to keep up with the cost of retaining a private
7     attorney.

8             I could find out, but I think my client has been
9     self-employed for I think in excess of seven years.

10            THE COURT:  Okay.  Well, I'm going to approve the
11    financial affidavit and assign Federal Defenders to represent
12    Mr. El Gammal given the nature of his income.  He does have,
13    again, some not insignificant assets, but certainly given the
14    charges as I understand them and the indictment and the likely
15    effort that it will require to defend him, at this point making
16    an assumption as to what the discovery will be, I'm going to go
17    ahead and assign Ms. Shroff and Ms. Miron and the Federal
18    Defenders to represent Mr. El Gammal.

19            Now, so, Mr. Quigley, tell me about the case, tell me
20    about the discovery that the government has and when it can be
21    made available to the defense.

22            MR. QUIGLEY:  Your Honor, first, in terms of timing on
23    the Rule 16 discovery, we're discussing a stipulated protective
24    order with defense counsel and we can begin producing discovery
25    as soon as that order is executed, including as early as today.

F9GLGAMC

1    There's a significant volume of Rule 16 discovery in this case.
2    There are a number of social media search warrants.  I think
3    the total amount of returns from those warrants will probably
4    approach, if not exceed a hundred thousand pages.  There are
5    applications related to those warrants.  There are materials
6    related to premises search warrants that were executed in
7    connection with this investigation, materials related to a
8    postarrest statement made by the defendant, and other forms of
9    documentary evidence that we will produce pursuant to Rule 16.
10             There is also, we also anticipate that there will be
11   classified discovery in this case.  We're conducting a review
12   of that material.  We anticipate going through the necessary
13   steps to clear counsel and potentially seek a protective order
14   under CIPA and maybe filing motions under CIPA at a later date.
15             THE COURT:  Okay.  And are you able to estimate for me
16   as you sit here today how long it will take to get that
17   discovery to the defendant?
18             MR. QUIGLEY:  For the unclassified Rule 16 discovery,
19   we can do that in a matter of weeks.  I think what we propose
20   for the classified discovery is we come back in maybe 60 days
21   in connection with a regular status conference and give the
22   Court a status report and address the filing -- address the
23   potential timing of any possible motions under CIPA at that
24   point.
25             THE COURT:  All right.  I'll be prepared to sign or

F9GLGAMC

1       execute a protective order as soon as you present one.
2                Ms. Shroff, how did you wish to proceed?
3                MS. SHROFF:  Your Honor, I could present the
4       protective order.
5                THE COURT:  Okay.  So the parties have stipulated to
6       it?
7                MS. SHROFF:  Yes, your Honor.
8                THE COURT:  Okay.  I have executed the stipulated
9       protective order and it will be put on ECF, unless there's an
10      application that it not be put on ECF.
11               MR. QUIGLEY:  I don't think it needs to be put on ECF.
12               THE COURT:  I typically do.
13               MR. QUIGLEY:  That's fine, your Honor.
14               THE COURT:  Okay.  Is there anything else that we need
15      to do today?
16               MR. QUIGLEY:  Your Honor, I think we should set a new
17      date and we move to exclude time under the Speedy Trial Act
18      until the date of the next conference.
19               THE COURT:  Ms. Shroff, how much time do you want?
20               MS. SHROFF:  Your Honor, I'm a little unclear.  Did
21      Mr. Quigley give a date by which he would complete discovery?
22               THE COURT:  He said he could complete the Rule 16
23      discovery within a couple of weeks, within a few weeks.
24               MS. SHROFF:  Could we pick a week by which he would
25      complete discovery.  And also if I could ask, your Honor, that

1   I understand the government might need a little time to
2   complete its Rule 16 discovery.  However, Mr. Gammal would like
3   to make a bail application.  In lieu of that, we ask that the
4   government at least produce to us Mr. Gammal's postarrest
5   statements within a week, if I could ask for that.
6             MR. QUIGLEY:  That's fine, your Honor.  We can produce
7   the postarrest statements within a week.
8             THE COURT:  My assumption was that you would be
9   turning over the discovery to the defense as you had it and
10  could make it promptly available.
11            MR. QUIGLEY:  That's correct, your Honor.
12            THE COURT:  So, and I guess you have agreed to turn
13  over his postarrest statements by next week, a week from today?
14            MR. QUIGLEY:  Yes, your Honor.
15            THE COURT:  Okay.  Ms. Shroff.
16            MS. SHROFF:  So then, your Honor, I guess we would ask
17  for about three weeks after the government's couple of weeks
18  and that's when we would like.
19            THE COURT:  Why don't we set a firm date two months
20  out.
21            MR. QUIGLEY:  I think that's right, your Honor,
22  especially given the classified discovery review is going to
23  take some time.
24            THE COURT:  Very well.  So let's set a date two months
25  out.

1             MS. SHROFF:  Your Honor, I say this mainly for the
2    benefit of Mr. El Gammal who's not familiar with the procedures
3    of the Southern District of New York.  But, of course, even if
4    the Court sets a date two months out, he reserves the right to
5    come in and make a bail application prior.
6             THE COURT:  Absolutely.  You can make a bail
7    application at any time that you're ready before then.
8             MS. SHROFF:  Thank you.
9             THE DEPUTY CLERK:  Thursday, November 19, 2015 at
10   10 a.m.
11            THE COURT:  Okay?
12            MS. SHROFF:  That's fine your Honor.
13            Your Honor, may I just have a second?
14            THE COURT:  Certainly.
15            MR. QUIGLEY:  Your Honor, is it possible to do it
16   earlier that week?
17            THE COURT:  Earlier that week.
18            MR. QUIGLEY:  Before Wednesday.
19            THE COURT:  Ms. Rivera.
20            THE DEPUTY CLERK:  Tuesday, September 17.
21            MR. QUIGLEY:  November.
22            THE DEPUTY CLERK:  I'm sorry, November.  I'll repeat
23   it again for defense counsel.
24            MS. SHROFF:  Your Honor, I've discussed the speedy
25   trial matter with Mr. El Gammal and he would consent to the

F9GLGAMC

1    exclusion of speedy trial.
2             THE COURT:  Very well.  We have a new date.
3             THE DEPUTY CLERK:  November 17 at 11 a.m.
4             THE COURT:  So I will exclude the time period between
5    now and November 17 under the Speedy Trial Act finding that the
6    interests of Mr. El Gammal in receiving and beginning to review
7    the government's discovery and discussing that discovery with
8    his attorneys outweigh the interest of the public and the
9    defendant in a speedy and public trial.
10            Anything else at this point?
11            MR. QUIGLEY:  Not from the government, your Honor.
12   Thank you.
13            THE COURT:  Ms. Shroff.
14            MS. SHROFF:  No, your Honor.
15            THE COURT:  And, again, just contact chambers if and
16   when you are prepared to make a bail application.
17            MS. SHROFF:  Yes, your Honor.
18            THE COURT:  If there's nothing else, we are adjourned.
19                                o0o
20
21
22
23
24
25