```
     G2BPGAMC

 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x

 3   UNITED STATES OF AMERICA,

 4             v.                            15 CR 588 (ER)

 5   AHMED MOHAMMED EL GAMMAL,

 6                  Defendant.

 7   ------------------------------x
                                             New York, N.Y.
 8                                           February 11, 2016
                                             9:34 a.m.
 9

10
     Before:
11
                         HON. EDGARDO RAMOS,
12
                                             District Judge
13

14                          APPEARANCES

15
     PREET BHARARA,
16        United States Attorney for the
          Southern District of New York
17   NEGAR TEKEEI
     BRENDAN F. QUIGLEY
18   ANDREA LEE SURRATT
          Assistant United States Attorneys
19
     SABRINA SHROFF
20   DANIEL HABIB
          Attorneys for Defendant
21

22

23

24

25
```

1              (In open court)

2              (Case called

3              MS. TEKEEI:  Good morning, your Honor.  Negar Tekeei,
4     Brendan Quigley and Andrea Surratt on behalf of the government.

5              MS. SHROFF:  Good morning, your Honor.  Sabrina Shroff
6     and Daniel Habib on behalf of Mr. El Gammal, who is seated to
7     my right.

8              THE COURT:  Good morning to you both, and good
9     morning, Mr. El Gammal.  This matter is on for status
10    conference; so Ms. Surratt or Ms. Tekeei or Mr. Quigley?

11             MS. TEKEEI:  Thank you, your Honor.  We'd like to
12    update you on the status of discovery in this case.  Since the
13    last conference, the government has produced a significant
14    amount of discovery, including the contents of cell phones and
15    electronic devices that were seized from the defendant's
16    residence and searched pursuant to a search warrant.

17             That includes various devices, an iPad, laptop hard
18    drive, many gigabytes worth of data, and additional search
19    warrant returns from social media and e-mail providers.  At
20    this point, there is no existing Rule 16 discovery that is
21    awaiting production.

22             In terms of classified discovery, we've been working
23    diligently to get the necessary approvals from various
24    components within the government to produce those documents, to
25    the extent they are discoverable.  We are very close to

1  obtaining those approvals, and in anticipation of this, we sent
2  defense counsel a copy of the CIPA Section 3 protective order.
3  We also handed up a copy of that to your Honor's deputy just a
4  little while ago.
5          This protective order has been approved by the
6  Classified Information Security Officer, and it is the same, in
7  substance, as a protective order that was signed by Judge
8  Berman in *U.S. v. Buryakhob* very recently.
9          THE COURT:  I'm sorry, U.S. versus who?
10         MS. TEKEEI:  Buryakhob.
11         In addition, as part of our conversation with the
12 different components of the government, we're required to
13 communicate with an order to produce the classified discovery.
14 We've been working to narrow the scope of any government
15 motions that we might make under CIPA, although that remains a
16 possibility.
17         THE COURT:  Okay.  So the classified materials, if
18 any, have not yet been identified or made available to the
19 defense?
20         MS. TEKEEI:  They have not been made available to the
21 defense yet.  We have spent an enormous amount of time
22 identifying the universe of those documents.  Our office has
23 reviewed each of those documents, and we are just awaiting the
24 necessary approvals to produce the ones that are discoverable
25 to the defendant.  We are very close to getting those

1    approvals.

2              THE COURT:  Can you give the defense any idea of when

3    that approval might be obtained?

4              MS. TEKEEI:  It is difficult to estimate an exact time

5    frame, your Honor.  We are very, very close; so close that we

6    were prepared to send over the protective order.  I don't want

7    to give an exact date.  It's hard to predict, you know, what,

8    if any, additional issues may crop up, but we would hope to

9    begin producing them as soon as possible, or the vast majority

10   of them as soon as possible.

11             THE COURT:  Okay.  Anything else?

12             MS. TEKEEI:  That is all, in terms of updates from us,

13   your Honor.

14             THE COURT:  Very well.  Ms. Shroff or Mr. Habib, have

15   you had an opportunity to review the proposed protective order?

16             MS. SHROFF:  I got the protective order last night,

17   your Honor.  I have not reviewed it.  I do plan to review it

18   and compare it to the protective order that was signed by Judge

19   Kaplan in *Ghailani*.  I plan to do that.  I inform the Court of

20   that only because I've been litigating the issues of protective

21   order in a case in the Eastern District, and we finally

22   culminated those negotiations by using the Judge Kaplan

23   protective order as a guide.  But I don't think we're going to

24   have that much of an issue with the protective order on the

25   CIPA.

                The bigger issue that I'm having, really, is that I don't really hear from government counsel an answer to the Court's question.  Very close, very near, so far so good, I don't know really what that translates to.  I do know that this team has been before many another judge that has told them either put out or move on.  Judge Rakoff has set deadlines for them that they have all managed to meet.  Judge Kaplan has done a similar situation.  Judge Rakoff simply told the government whether they can control DOD or not is up to them.  He sets a deadline, and then enforces that deadline.

                I ask the Court to consider doing the same here, and I say that for two reasons, your Honor.  The Rule 16 discovery that Ms. Tekeei is talking about, that has now been fully produced, it has rolled in since August of 2015.  Now, sitting here today, the Court might think, August to February, it's not that long a time, but they've known for quite some time that this case is coming.  Right?

                There are search warrants.  They've been tracking this case for a while.  They have warrants that they issued on the people in Turkey and in other countries, and they knew for a while that they were anticipating an arrest of Mr. El Gammal. It's kind of disingenuous to say, oh, he got arrested in August, I'm producing the discovery, and I've done okay between August and February.

                Mr. El Gammal would like me to inform the Court that

G2BPGAMC

1  he wants a fairly prompt trial date.  I would like to have some
2  time to make motions, in the event that we have motions to
3  make.
4       I understand that the Court can deem this a complex
5  case and deny my application, but I would ask the Court, at
6  this point, to set a firm deadline by which the government
7  completes its CIPA production or says, okay, you're out of
8  time; two, set a motion schedule now.  We'd like 60 days to
9  make our motion.
10       (Pause)
11       He wants 45 days to make a motion.  I need 45 days to
12 make a motion.  I don't know how long they want to reply, and I
13 just ask the Court to set some deadlines for them.
14       THE COURT:  I don't know that I can, at this point
15 based on the record that's before me, impose a strict deadline
16 on the government to produce the CIPA materials.  I'll go back
17 to them in a second.  But remind me when it was that Mr. El
18 Gammal first appeared here?
19       MS. SHROFF:  He first appeared here -- well, he first
20 appeared in Arizona on 8-20, and then he appeared here on 9-16.
21 He appeared here on 9-16.  He appeared in Arizona -- you don't
22 care when he appeared in Arizona, anyway, but he appeared here
23 on 9-16.
24       THE COURT: Correct. Okay.  I'm happy to set down a
25 motion schedule now.

1         MS. SHROFF:  Of course, the government was aware of
2    the fact that he appeared in August in Arizona because they
3    were in close ties with them, seeking to detain him there.  I
4    mean, I think there was correspondence between Mr. Quigley and
5    his counterpart there when he was trying to get bail.
6         THE COURT:  Can you give me an idea of the volume of
7    the discovery that's been produced to date for Rule 16?
8         MS. SHROFF:  Well, it's voluminous.  I agree it's
9    quite voluminous, but it's equally voluminous for us, and if we
10   manage to get through it, they should be able to get through
11   it.  It's problematic for me for a couple of reasons, and I'll
12   tell the Court why.
13        First of all, it's not produced in any orderly manner.
14   Okay?  The platform on which they've produced it is almost
15   unworkable.  So once we get the discovery from the government,
16   we've actually had to move it onto a separate platform, and
17   then review it in our office.  And then having Mr. El Gammal
18   have time and opportunity to review it is even more cumbersome
19   because the computers at the MCC simply they just don't read
20   the data in the way the government has presented.
21        THE COURT:  Has the government presented the digital
22   discovery to you in one platform or multiple platforms?
23        MS. SHROFF:  No, I think it's in one platform.
24        THE COURT:  Have you been able to translate it
25   effectively to your systems?

1           MS. SHROFF:  We've managed to buy a system to
2    translate it, but the problem for him, who's incarcerated, is
3    we have to put all of the discovery on disks because they won't
4    let me give him a hard drive.  I've tried to talk to Adam
5    Johnson in MCC, who's actually very responsive.  I'm not at all
6    criticizing him.  He's really tried to help us out.
7           But I think the only other recourse we may have is to
8    write to the Court and ask for Mr. El Gammal have discovery
9    hours on the third floor of legal.  I was going to submit a
10   letter later after today's appearance.
11          THE COURT:  So Mr. El Gammal is not under SAM,
12   correct?
13          MS. SHROFF:  No, he's not under SAM.  He's in general
14   population, but he only has two days in the law library, and
15   apparently he's getting some heat for hogging the computer.
16          THE DEFENDANT:  They complain.
17          MS. SHROFF:  Apparently, the other inmates also need
18   time.  Fairly so, because they want to view their own
19   discovery.  But his is so voluminous, like, for example, to go
20   through the Facebook and the e-mails that the government has
21   produced takes a long time.
22          THE COURT:  I understand.  If you want to make an
23   application concerning Mr. El Gammal's computer time at the
24   MCC, you go ahead and make that application.
25          Now, the government has represented, if I heard

1    Ms. Tekeei correctly, that they have turned over all of the
2    Rule 16 discovery, which they are at least currently aware, and
3    appear to have at least made the appropriate requests of the
4    appropriate agencies of the CIPA documents that they believe
5    are relevant.  So now, that's the state of the record before
6    me.
7            I'm happy to impose a deadline or impose a motion
8    schedule concerning the motions that you might make.  Are you
9    able to tell the Court, as you stand here today, Ms. Shroff,
10   what motions you would be making?
11           MS. SHROFF:  I am, but I'd rather not.
12           THE COURT:  Okay.  So you want 45 days, six weeks?
13           MS. SHROFF:  I do, but I just want to say one thing,
14   your Honor.  Even last night I got two more pages of discovery,
15   right?  If they're finished with Rule 16 discovery, they're
16   finished with Rule 16 discovery.  Either they are or they're
17   not.  There has to come a time when the Court says to them,
18   okay, this is it for Rule 16.  It shouldn't keep dribbling on
19   to us.  It's not fair.  He wants to go to trial.
20           THE COURT:  No, no, I understand, but I don't know
21   that it would be appropriate or feasible for me to tell the
22   government, you are no longer allowed to provide Rule 16
23   discovery if some unknown piece of discovery comes in.
24           MS. SHROFF:  Why not?  They have a deadline.  We have
25   deadlines.

1     THE COURT:  There could be a motion to preclude the
2  government's use of that evidence, but I think you would be
3  making a different type of application if they came across that
4  discovery and then didn't turn it over to you.
5     MS. SHROFF:  Only if it was Brady or Giglio, sure.
6  But if it is Rule 16, self-serving discovery, there has to be a
7  deadline, your Honor.  I'm asking the Court to impose that
8  deadline.  It's been since August.  August, September, October,
9  November, December, January, February, seven months to produce
10 discovery; that's enough.
11    THE COURT:  Let's see what comes in, and if anything
12 else comes in that you are made aware of and you want to make a
13 particular motion with respect to that, then you are,
14 obviously, free to do so.
15    So, Ms. Rivera, give us a date six weeks from today
16 for motions.
17    THE DEPUTY CLERK:  March 24, 2016.
18    THE COURT:  I'll give the government three weeks to
19 respond.
20    MS. SHROFF:  So, your Honor, I do believe that the
21 rules allow you to set a deadline for Rule 16 discovery, as
22 opposed to Gigglio and Brady, which is all throughout the case.
23 I'm just saying.  That's all I'm saying.
24    THE COURT:  I understand.  So let me turn to the
25 government.  Ms. Tekeei?

1           MS. TEKEEI:  Your Honor, with respect to the Rule 16
2    discovery, we have produced it as it has become available to
3    the government.  We have produced it in the manner in which we
4    received it and in which we are reviewing it.  Many of the most
5    recent productions were records that we were only recently able
6    to extract, for example, the forensic reports if the electronic
7    devices and also the actual images of the electronic devices.
8    And we've produced those to Ms. Shroff as soon as the forensic
9    analysts were able to get those to us.
10          THE COURT:  And those electronic devices, these are
11   cell phones, laptops, et cetera, were seized at or about the
12   time of Mr. El Gammal's arrest?
13          MS. TEKEEI:  Yes, your Honor.  There are multiple.
14   There are four cell phones, a tablet, on iPad, a laptop hard
15   drive, some CDs, thumb drive, a Go Pro camera data, and so it's
16   quite a large volume of information.
17          In addition, we have done supplemental search warrants
18   since his arrest, and we have been receiving those returns from
19   the providers on a rolling basis.  We have produced those to
20   defense counsel as we have received them, and again, in the
21   manner that we have received them.
22          We expect there may be additional items that we
23   receive in response to our search warrants, and we would be
24   producing those as soon as we obtain them.  And so, you know,
25   as your Honor makes the point, I'm sure Ms. Shroff would like

1  to see any additional documents that we obtain as this case
2  goes forward.
3         In addition, our investigation has not stopped.  Our
4  investigations are ongoing.  Ms. Shroff is aware of that, and
5  so to the extent any additional documents or records are
6  available, as the broader investigation continues, we will make
7  those available to Ms. Shroff as soon as possible.  As of this
8  moment, we have produced everything in our possession that we
9  are aware of that falls under Rule 16.
10        THE COURT:  Ms. Shroff?
11        MS. SHROFF:  Your Honor, several of the search
12 warrants that the government made to the Court, he was arrested
13 in August, right?  They have search warrants into November,
14 December.  They could have asked for those search warrants in
15 August, in September, in October.  They can't just say the
16 delay is all because we're waiting on information coming in.
17        Their application to this Court was in November.  You
18 can't just stand there and say, hey, listen, we're still
19 investigating, and as we keep investigating, we have an
20 absolute right to keep augmenting.  Under that scenario,
21 Mr. El Gammal could be in prison for quite some time with no
22 timetable at all.
23        We're not asking for something irrational.  We're
24 simply saying set a date by which they either produce or are
25 precluded.  At some point, we will make a motion to preclude if

1  this continues. But if their Rule 16 discovery is complete
2  now, we're ready to move forward. In 45 days we'll put in our
3  motions.
4          THE COURT: Okay. Again, based on the record that's
5  been made before me, this matter has only been before me once
6  or twice, and I don't believe that we had perhaps a single
7  substantive appearance. I believe this is the first time,
8  Ms. Shroff, that the defense has made the application or has
9  complained about the lack of speed with which the government is
10 producing its documents, or has complained about the
11 government's continuing investigation.
12         I mean, it happens in all cases that the government is
13 able to continue to investigate even indicted matters, and
14 whether or not a particular defendant is prejudiced as a result
15 of that continuing investigation is a matter that has to be
16 addressed on a case-by-case basis.
17         We're not at that point yet with respect to Mr. El
18 Gammal, at the point where I tell the government, okay, that's
19 it, fish or cut bait. You're going forward with the case that
20 you currently have, the case that you indicted. But we may get
21 there, and I'm sure that I will look to you to tell me when
22 that matter has become unreasonable with respect to
23 Mr. El Gammal, but as I've indicated, we're not there yet.
24 Okay?
25         I would tell the government that we do now have a date

by which the defense is going to be making motions.  I would ask that you speak to your colleagues and counterparts in Washington, or wherever else they might be, and let them know that, you know, the Court is very concerned about getting those classified documents, to the extent they are going to be made available to defense, that they be made as soon as possible.  Okay?

         MS. TEKEEI:  Thank you, your Honor.  We will do so.

         THE COURT:  Okay.  Anything else, Ms. Tekeei?

         MS. TEKEEI:  Not for the government, your Honor.

         THE COURT:  Ms. Shroff?

         MS. SHROFF:  Your Honor, may I just have one second?

         THE COURT:  Certainly.

         (Pause)

         MS. SHROFF:  Your Honor, the Court is correct that we have not raised the issue of delay with the Court.  But I just want to be clear, we have urged the government and we've tried to accommodate their schedule.  So this is the first time because we were hopeful that we wouldn't get here, that we've raised it now with the Court.

         I just put on the record that Mr. El Gammal is still waiting on the return of his family's property.  I'll take that up with Ms. Surratt because, as I informed him, that, you know, deadline has been a little bit more amorphous than the other set here, but we have nothing further to ask of the Court now.

1           THE COURT:  Okay.  Ms. Tekeei?

2           MS. TEKEEI:  Your Honor, the government moves to

3   exclude time between now and the motions deadline that the

4   Court has set for defense counsel, so that defense counsel may

5   continue to review the discovery and prepare their motions.

6           THE COURT:  We're going to get the actual date in a

7   second.  Ms. Shroff?

8           MS. SHROFF:  Your Honor, I think the time is

9   automatically excluded under the Speedy Trial Act when there's

10  motion practice.

11          THE COURT:  But the motion has not yet been made.  I

12  can deem the motion made as of today, and the brief filed 45 or

13  six weeks hence.

14          MS. SHROFF:  Maybe I'm reading the Act wrong, but I

15  think it's excluded.  In any event, we don't have an objection

16  because we need to time to make the motion.

17          THE COURT:  There being no objection, I will exclude

18  the time between now and -- Ms. Riviera?

19          THE DEPUTY CLERK:  March 24th, 2016, the motion is

20  due, and the opposition is due April 14th, 2016.

21          THE COURT:  Okay.  So I'll exclude the time between

22  now and March 24 under the Speedy Trial Act.  I find that

23  Mr. El Gammal's interests in making this motion and reviewing

24  the necessary discovery in support thereof outweigh the

25  interests of the public in a speedy and public trial.

1   Accordingly, that time will be excluded.
2             Unless there's anything else, we are adjourned.
3             MS. TEKEEI:  Thank you, your Honor.
4             (Adjourned)