G2BPGAMC

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

       v.                                15 CR 588 (ER)

AHMED MOHAMMED EL GAMMAL,

           Defendant.

------------------------------x

                                    New York, N.Y.
                                    February 11, 2016
                                    9:34 a.m.

Before:

                   HON. EDGARDO RAMOS,

                              District Judge

                      APPEARANCES

PREET BHARARA,
    United States Attorney for the
    Southern District of New York
NEGAR TEKEEI
BRENDAN F. QUIGLEY
ANDREA LEE SURRATT
    Assistant United States Attorneys

SABRINA SHROFF
DANIEL HABIB
    Attorneys for Defendant

1             (In open court)

2             (Case called

3             MS. TEKEEI:  Good morning, your Honor.  Negar Tekeei,
4    Brendan Quigley and Andrea Surratt on behalf of the government.

5             MS. SHROFF:  Good morning, your Honor.  Sabrina Shroff
6    and Daniel Habib on behalf of Mr. El Gammal, who is seated to
7    my right.

8             THE COURT:  Good morning to you both, and good
9    morning, Mr. El Gammal.  This matter is on for status
10   conference; so Ms. Surratt or Ms. Tekeei or Mr. Quigley?

11            MS. TEKEEI:  Thank you, your Honor.  We'd like to
12   update you on the status of discovery in this case.  Since the
13   last conference, the government has produced a significant
14   amount of discovery, including the contents of cell phones and
15   electronic devices that were seized from the defendant's
16   residence and searched pursuant to a search warrant.

17            That includes various devices, an iPad, laptop hard
18   drive, many gigabytes worth of data, and additional search
19   warrant returns from social media and e-mail providers.  At
20   this point, there is no existing Rule 16 discovery that is
21   awaiting production.

22            In terms of classified discovery, we've been working
23   diligently to get the necessary approvals from various
24   components within the government to produce those documents, to
25   the extent they are discoverable.  We are very close to

1   obtaining those approvals, and in anticipation of this, we sent
2   defense counsel a copy of the CIPA Section 3 protective order.
3   We also handed up a copy of that to your Honor's deputy just a
4   little while ago.
5           This protective order has been approved by the
6   Classified Information Security Officer, and it is the same, in
7   substance, as a protective order that was signed by Judge
8   Berman in *U.S. v. Buryakhob* very recently.
9           THE COURT:  I'm sorry, U.S. versus who?
10          MS. TEKEEI:  Buryakhob.
11          In addition, as part of our conversation with the
12  different components of the government, we're required to
13  communicate with an order to produce the classified discovery.
14  We've been working to narrow the scope of any government
15  motions that we might make under CIPA, although that remains a
16  possibility.
17          THE COURT:  Okay.  So the classified materials, if
18  any, have not yet been identified or made available to the
19  defense?
20          MS. TEKEEI:  They have not been made available to the
21  defense yet.  We have spent an enormous amount of time
22  identifying the universe of those documents.  Our office has
23  reviewed each of those documents, and we are just awaiting the
24  necessary approvals to produce the ones that are discoverable
25  to the defendant.  We are very close to getting those

1     approvals.
2              THE COURT:  Can you give the defense any idea of when
3     that approval might be obtained?
4              MS. TEKEEI:  It is difficult to estimate an exact time
5     frame, your Honor.  We are very, very close; so close that we
6     were prepared to send over the protective order.  I don't want
7     to give an exact date.  It's hard to predict, you know, what,
8     if any, additional issues may crop up, but we would hope to
9     begin producing them as soon as possible, or the vast majority
10    of them as soon as possible.
11             THE COURT:  Okay.  Anything else?
12             MS. TEKEEI:  That is all, in terms of updates from us,
13    your Honor.
14             THE COURT:  Very well.  Ms. Shroff or Mr. Habib, have
15    you had an opportunity to review the proposed protective order?
16             MS. SHROFF:  I got the protective order last night,
17    your Honor.  I have not reviewed it.  I do plan to review it
18    and compare it to the protective order that was signed by Judge
19    Kaplan in *Ghailani*.  I plan to do that.  I inform the Court of
20    that only because I've been litigating the issues of protective
21    order in a case in the Eastern District, and we finally
22    culminated those negotiations by using the Judge Kaplan
23    protective order as a guide.  But I don't think we're going to
24    have that much of an issue with the protective order on the
25    CIPA.

1          The bigger issue that I'm having, really, is that I
2    don't really hear from government counsel an answer to the
3    Court's question.  Very close, very near, so far so good, I
4    don't know really what that translates to.  I do know that this
5    team has been before many another judge that has told them
6    either put out or move on.  Judge Rakoff has set deadlines for
7    them that they have all managed to meet.  Judge Kaplan has done
8    a similar situation.  Judge Rakoff simply told the government
9    whether they can control DOD or not is up to them.  He sets a
10   deadline, and then enforces that deadline.
11         I ask the Court to consider doing the same here, and I
12   say that for two reasons, your Honor.  The Rule 16 discovery
13   that Ms. Tekeei is talking about, that has now been fully
14   produced, it has rolled in since August of 2015.  Now, sitting
15   here today, the Court might think, August to February, it's not
16   that long a time, but they've known for quite some time that
17   this case is coming.  Right?
18         There are search warrants.  They've been tracking this
19   case for a while.  They have warrants that they issued on the
20   people in Turkey and in other countries, and they knew for a
21   while that they were anticipating an arrest of Mr. El Gammal.
22   It's kind of disingenuous to say, oh, he got arrested in
23   August, I'm producing the discovery, and I've done okay between
24   August and February.
25         Mr. El Gammal would like me to inform the Court that

1   he wants a fairly prompt trial date.  I would like to have some
2   time to make motions, in the event that we have motions to
3   make.
4              I understand that the Court can deem this a complex
5   case and deny my application, but I would ask the Court, at
6   this point, to set a firm deadline by which the government
7   completes its CIPA production or says, okay, you're out of
8   time; two, set a motion schedule now.  We'd like 60 days to
9   make our motion.
10             (Pause)
11             He wants 45 days to make a motion.  I need 45 days to
12  make a motion.  I don't know how long they want to reply, and I
13  just ask the Court to set some deadlines for them.
14             THE COURT:  I don't know that I can, at this point
15  based on the record that's before me, impose a strict deadline
16  on the government to produce the CIPA materials.  I'll go back
17  to them in a second.  But remind me when it was that Mr. El
18  Gammal first appeared here?
19             MS. SHROFF:  He first appeared here -- well, he first
20  appeared in Arizona on 8-20, and then he appeared here on 9-16.
21  He appeared here on 9-16.  He appeared in Arizona -- you don't
22  care when he appeared in Arizona, anyway, but he appeared here
23  on 9-16.
24             THE COURT: Correct. Okay.  I'm happy to set down a
25  motion schedule now.

1       MS. SHROFF:  Of course, the government was aware of

2  the fact that he appeared in August in Arizona because they

3  were in close ties with them, seeking to detain him there.  I

4  mean, I think there was correspondence between Mr. Quigley and

5  his counterpart there when he was trying to get bail.

6       THE COURT:  Can you give me an idea of the volume of

7  the discovery that's been produced to date for Rule 16?

8       MS. SHROFF:  Well, it's voluminous.  I agree it's

9  quite voluminous, but it's equally voluminous for us, and if we

10 manage to get through it, they should be able to get through

11 it.  It's problematic for me for a couple of reasons, and I'll

12 tell the Court why.

13      First of all, it's not produced in any orderly manner.

14 Okay?  The platform on which they've produced it is almost

15 unworkable.  So once we get the discovery from the government,

16 we've actually had to move it onto a separate platform, and

17 then review it in our office.  And then having Mr. El Gammal

18 have time and opportunity to review it is even more cumbersome

19 because the computers at the MCC simply they just don't read

20 the data in the way the government has presented.

21      THE COURT:  Has the government presented the digital

22 discovery to you in one platform or multiple platforms?

23      MS. SHROFF:  No, I think it's in one platform.

24      THE COURT:  Have you been able to translate it

25 effectively to your systems?

1         MS. SHROFF:  We've managed to buy a system to
2    translate it, but the problem for him, who's incarcerated, is
3    we have to put all of the discovery on disks because they won't
4    let me give him a hard drive.  I've tried to talk to Adam
5    Johnson in MCC, who's actually very responsive.  I'm not at all
6    criticizing him.  He's really tried to help us out.
7         But I think the only other recourse we may have is to
8    write to the Court and ask for Mr. El Gammal have discovery
9    hours on the third floor of legal.  I was going to submit a
10   letter later after today's appearance.
11        THE COURT:  So Mr. El Gammal is not under SAM,
12   correct?
13        MS. SHROFF:  No, he's not under SAM.  He's in general
14   population, but he only has two days in the law library, and
15   apparently he's getting some heat for hogging the computer.
16        THE DEFENDANT:  They complain.
17        MS. SHROFF:  Apparently, the other inmates also need
18   time.  Fairly so, because they want to view their own
19   discovery.  But his is so voluminous, like, for example, to go
20   through the Facebook and the e-mails that the government has
21   produced takes a long time.
22        THE COURT:  I understand.  If you want to make an
23   application concerning Mr. El Gammal's computer time at the
24   MCC, you go ahead and make that application.
25        Now, the government has represented, if I heard

1    Ms. Tekeei correctly, that they have turned over all of the
2    Rule 16 discovery, which they are at least currently aware, and
3    appear to have at least made the appropriate requests of the
4    appropriate agencies of the CIPA documents that they believe
5    are relevant.  So now, that's the state of the record before
6    me.
7              I'm happy to impose a deadline or impose a motion
8    schedule concerning the motions that you might make.  Are you
9    able to tell the Court, as you stand here today, Ms. Shroff,
10   what motions you would be making?
11             MS. SHROFF:  I am, but I'd rather not.
12             THE COURT:  Okay.  So you want 45 days, six weeks?
13             MS. SHROFF:  I do, but I just want to say one thing,
14   your Honor.  Even last night I got two more pages of discovery,
15   right?  If they're finished with Rule 16 discovery, they're
16   finished with Rule 16 discovery.  Either they are or they're
17   not.  There has to come a time when the Court says to them,
18   okay, this is it for Rule 16.  It shouldn't keep dribbling on
19   to us.  It's not fair.  He wants to go to trial.
20             THE COURT:  No, no, I understand, but I don't know
21   that it would be appropriate or feasible for me to tell the
22   government, you are no longer allowed to provide Rule 16
23   discovery if some unknown piece of discovery comes in.
24             MS. SHROFF:  Why not?  They have a deadline.  We have
25   deadlines.

1          THE COURT:  There could be a motion to preclude the
2     government's use of that evidence, but I think you would be
3     making a different type of application if they came across that
4     discovery and then didn't turn it over to you.
5          MS. SHROFF:  Only if it was Brady or Giglio, sure.
6     But if it is Rule 16, self-serving discovery, there has to be a
7     deadline, your Honor.  I'm asking the Court to impose that
8     deadline.  It's been since August.  August, September, October,
9     November, December, January, February, seven months to produce
10    discovery; that's enough.
11         THE COURT:  Let's see what comes in, and if anything
12    else comes in that you are made aware of and you want to make a
13    particular motion with respect to that, then you are,
14    obviously, free to do so.
15         So, Ms. Rivera, give us a date six weeks from today
16    for motions.
17         THE DEPUTY CLERK:  March 24, 2016.
18         THE COURT:  I'll give the government three weeks to
19    respond.
20         MS. SHROFF:  So, your Honor, I do believe that the
21    rules allow you to set a deadline for Rule 16 discovery, as
22    opposed to Gigglio and Brady, which is all throughout the case.
23    I'm just saying.  That's all I'm saying.
24         THE COURT:  I understand.  So let me turn to the
25    government.  Ms. Tekeei?

1         MS. TEKEEI:  Your Honor, with respect to the Rule 16
2    discovery, we have produced it as it has become available to
3    the government.  We have produced it in the manner in which we
4    received it and in which we are reviewing it.  Many of the most
5    recent productions were records that we were only recently able
6    to extract, for example, the forensic reports if the electronic
7    devices and also the actual images of the electronic devices.
8    And we've produced those to Ms. Shroff as soon as the forensic
9    analysts were able to get those to us.
10        THE COURT:  And those electronic devices, these are
11   cell phones, laptops, et cetera, were seized at or about the
12   time of Mr. El Gammal's arrest?
13        MS. TEKEEI:  Yes, your Honor.  There are multiple.
14   There are four cell phones, a tablet, on iPad, a laptop hard
15   drive, some CDs, thumb drive, a Go Pro camera data, and so it's
16   quite a large volume of information.
17        In addition, we have done supplemental search warrants
18   since his arrest, and we have been receiving those returns from
19   the providers on a rolling basis.  We have produced those to
20   defense counsel as we have received them, and again, in the
21   manner that we have received them.
22        We expect there may be additional items that we
23   receive in response to our search warrants, and we would be
24   producing those as soon as we obtain them.  And so, you know,
25   as your Honor makes the point, I'm sure Ms. Shroff would like

1  to see any additional documents that we obtain as this case
2  goes forward.
3      In addition, our investigation has not stopped.  Our
4  investigations are ongoing.  Ms. Shroff is aware of that, and
5  so to the extent any additional documents or records are
6  available, as the broader investigation continues, we will make
7  those available to Ms. Shroff as soon as possible.  As of this
8  moment, we have produced everything in our possession that we
9  are aware of that falls under Rule 16.
10      THE COURT:  Ms. Shroff?
11      MS. SHROFF:  Your Honor, several of the search
12  warrants that the government made to the Court, he was arrested
13  in August, right?  They have search warrants into November,
14  December.  They could have asked for those search warrants in
15  August, in September, in October.  They can't just say the
16  delay is all because we're waiting on information coming in.
17      Their application to this Court was in November.  You
18  can't just stand there and say, hey, listen, we're still
19  investigating, and as we keep investigating, we have an
20  absolute right to keep augmenting.  Under that scenario,
21  Mr. El Gammal could be in prison for quite some time with no
22  timetable at all.
23      We're not asking for something irrational.  We're
24  simply saying set a date by which they either produce or are
25  precluded.  At some point, we will make a motion to preclude if

1   this continues.  But if their Rule 16 discovery is complete
2   now, we're ready to move forward.  In 45 days we'll put in our
3   motions.
4           THE COURT:  Okay.  Again, based on the record that's
5   been made before me, this matter has only been before me once
6   or twice, and I don't believe that we had perhaps a single
7   substantive appearance.  I believe this is the first time,
8   Ms. Shroff, that the defense has made the application or has
9   complained about the lack of speed with which the government is
10  producing its documents, or has complained about the
11  government's continuing investigation.
12          I mean, it happens in all cases that the government is
13  able to continue to investigate even indicted matters, and
14  whether or not a particular defendant is prejudiced as a result
15  of that continuing investigation is a matter that has to be
16  addressed on a case-by-case basis.
17          We're not at that point yet with respect to Mr. El
18  Gammal, at the point where I tell the government, okay, that's
19  it, fish or cut bait.  You're going forward with the case that
20  you currently have, the case that you indicted.  But we may get
21  there, and I'm sure that I will look to you to tell me when
22  that matter has become unreasonable with respect to
23  Mr. El Gammal, but as I've indicated, we're not there yet.
24  Okay?
25          I would tell the government that we do now have a date

G2BPGAMC

1   by which the defense is going to be making motions.  I would
2   ask that you speak to your colleagues and counterparts in
3   Washington, or wherever else they might be, and let them know
4   that, you know, the Court is very concerned about getting those
5   classified documents, to the extent they are going to be made
6   available to defense, that they be made as soon as possible.
7   Okay?
8            MS. TEKEEI:  Thank you, your Honor.  We will do so.
9            THE COURT:  Okay.  Anything else, Ms. Tekeei?
10           MS. TEKEEI:  Not for the government, your Honor.
11           THE COURT:  Ms. Shroff?
12           MS. SHROFF:  Your Honor, may I just have one second?
13           THE COURT:  Certainly.
14           (Pause)
15           MS. SHROFF:  Your Honor, the Court is correct that we
16  have not raised the issue of delay with the Court.  But I just
17  want to be clear, we have urged the government and we've tried
18  to accommodate their schedule.  So this is the first time
19  because we were hopeful that we wouldn't get here, that we've
20  raised it now with the Court.
21           I just put on the record that Mr. El Gammal is still
22  waiting on the return of his family's property.  I'll take that
23  up with Ms. Surratt because, as I informed him, that, you know,
24  deadline has been a little bit more amorphous than the other
25  set here, but we have nothing further to ask of the Court now.

1     THE COURT:  Okay.  Ms. Tekeei?

2     MS. TEKEEI:  Your Honor, the government moves to
3  exclude time between now and the motions deadline that the
4  Court has set for defense counsel, so that defense counsel may
5  continue to review the discovery and prepare their motions.

6     THE COURT:  We're going to get the actual date in a
7  second.  Ms. Shroff?

8     MS. SHROFF:  Your Honor, I think the time is
9  automatically excluded under the Speedy Trial Act when there's
10 motion practice.

11    THE COURT:  But the motion has not yet been made.  I
12 can deem the motion made as of today, and the brief filed 45 or
13 six weeks hence.

14    MS. SHROFF:  Maybe I'm reading the Act wrong, but I
15 think it's excluded.  In any event, we don't have an objection
16 because we need to time to make the motion.

17    THE COURT:  There being no objection, I will exclude
18 the time between now and -- Ms. Riviera?

19    THE DEPUTY CLERK:  March 24th, 2016, the motion is
20 due, and the opposition is due April 14th, 2016.

21    THE COURT:  Okay.  So I'll exclude the time between
22 now and March 24 under the Speedy Trial Act.  I find that
23 Mr. El Gammal's interests in making this motion and reviewing
24 the necessary discovery in support thereof outweigh the
25 interests of the public in a speedy and public trial.

G2BPGAMC

1   Accordingly, that time will be excluded.
2             Unless there's anything else, we are adjourned.
3             MS. TEKEEI:  Thank you, your Honor.
4             (Adjourned)