G825gamC                      conference

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   UNITED STATES OF AMERICA,            New York, N.Y.

4              v.                        15 Cr. 588 (ER)

5   AHMED MOHAMMED EL GAMMAL,

6              Defendant.

7   ------------------------------x

8                                        August 2, 2016
                                         3:05 p.m.
9

10  Before:

11                  HON. EDGARDO RAMOS,

12                                       District Judge

13

14                      APPEARANCES

15
    PREET BHARARA
16      United States Attorney for the
        Southern District of New York
17  BY:  BRENDAN F. QUIGLEY
         NEGAR TEKEEI
18       Assistant United States Attorneys

19
    FEDERAL DEFENDERS OF NEW YORK
20      Attorneys for Defendant
    BY: SABRINA P. SHROFF
21       ANNALISA MIRÓN
         DANIEL G. HABIB
22

23

24

25

G825gamC                        conference

1          (Case called)

2          THE DEPUTY CLERK:  Counsel, please state your name for

3    the record.

4          MS. TEKEEI:  Good afternoon, your Honor.  Negar Tekeei

5    and Brendan Quigley on behalf of the United States.

6          THE COURT:  Good afternoon.

7          MS. SHROFF:  Good afternoon, your Honor.  Federal

8    Defenders of New York by Sabrina Shroff and Annalisa Miron and

9    Daniel Habib on behalf of Mr. El Gammal, who is seated to my

10   right.

11         THE COURT:  And good afternoon to you all.  This

12   matter is on for a status conference.  I believe, Ms. Shroff,

13   that your team has requested this conference; am I correct?

14         MS. SHROFF:  Sure.  We requested it.  That's right.

15         THE COURT:  Now, what is it that you want to discuss?

16         MS. SHROFF:  So, here is what we want to discuss with

17   the Court.

18         On July 13, the Government served upon us a notice of

19   intent to use FISA-related information.  When we received their

20   notice, obviously given the trial date that was set we had some

21   concerns and we weren't clear, one, why the notice had come so

22   late in the case.  I'm not a FISA expert or anything, but in

23   every other case that I have received such notice, the notice

24   comes at a relatively earlier period in time of the litigation.

25   I have another case with Government Counsel Quigley and of

1    course in that case the notice has come within two months of

2    the arraignment of the client.

3            So, we find ourselves in this somewhat unusual posture

4    of having received FISA intent notice late in the game, and

5    that throws the trial schedule into disarray and raises, for

6    us, issues that relate to briefing on that, on the notice that

7    the government has provided to defense counsel.

8            So, in effort to move this along we reached out to the

9    government, we informed the government that we would be

10   engaging in FISA motion practice.  We tried, and I think that

11   they -- I don't know, they just don't seem to have a -- I'm not

12   blaming anyone, I think that it is hard for them to tell us a

13   schedule or provide a firm schedule as to how much time they

14   will need because they have to go to Main Justice.

15           I know the Court has its own trial calendar.  We are

16   now five attorneys who have their own trial schedule and we

17   asked for a conference so that we could perhaps iron out some

18   of those issues.

19           So, that's why we asked for a status conference.

20           THE COURT:  Okay.  I, also, am not a FISA expert,

21   however I am happy to move things along as quickly as

22   reasonably necessary but, Mr. Quigley or Ms. Tekeei, let me

23   turn to the two of you and you tell me how we should be

24   proceeding from this point forward.

25           MS. TEKEEI:  Thank you, your Honor.

G825gamC                         conference

1          By way of background, the last conference in this case

2     was on May 10th.  Since then the government, as Ms. Shroff has

3     mentioned, provided FISA notice and has also addressed the

4     other issues that we said we would address during the

5     classified proceeding that occurred before that May 10th

6     conference.  We have also been focusing on preparing for trial

7     which was initially scheduled for September 26th and then, by

8     agreement of the parties, now scheduled for September 19th.

9          In terms of the pretrial scheduling, several weeks

10    ago, in fact on July 13th, the same day that we provided our

11    FISA notice, the defense proposed a schedule of filing

12    deadlines for the September 19th trial date.  In their proposed

13    schedule for the September 19th trial date, they listed August

14    5th, 2016 as when the government should provide notice of CIPA

15    evidence intended to be presented at trial -- Classified

16    Information Procedures Act evidence -- intended to be presented

17    at trial.  So, their schedule contemplated FISA notice being

18    filed on August 5th where we filed it on July 13th.

19         Now, the government responded to defense's proposed

20    pretrial scheduling dates and largely agreed with the dates

21    that they had proposed.  We understand that since the filing of

22    our FISA notice and since defense has been contemplating

23    responding and moving, they have elected not to file that

24    proposed schedule.

25         But, on the issue of the FISA scheduling, regardless

1   of whether the defendant's motion is a motion for discovery

2   under FISA or a motion to suppress, the applicable position

3   that governs our response to the defendant's motion, whatever

4   form it takes, and for the Court's review, is under the statute

5   50, United States Code, Sections 1825(g) and (h).  That

6   statutes provides that our response will require a declaration

7   from the Attorney General of the United States and likely one

8   or more declarations from other high-ranking officials.

9            As soon as we received defense counsel's letter

10  indicating that they would be filing a motion, in fact the very

11  same night, we notified the relevant people in Washington and

12  since then have been engaged in the process of preparing a

13  response to their motion notwithstanding that it has not yet

14  been filed.  But there is only so much that we can do without

15  seeing the actual motion.  And, we understand from speaking

16  with defense counsel yesterday and previously that they

17  intended to file that motion on August 5th.

18           We have told the folks in D.C. that we should not

19  expect the September 19th trial date to be adjourned and that

20  any response to a FISA motion would need to be filed in time to

21  allow the Court sufficient time to review that.

22           THE COURT:  So, Ms. Shroff?

23           MS. SHROFF:  Your Honor, here is the thing.  I don't

24  think you can confabulate the deadlines with CIPA with the

25  deadlines for FISA.  I think they are two separate issues and

1    two separate notices and two separate pieces of information.

2              So, let me also direct the Court to a letter filed by

3    government counsel on July 22nd, 2016.  That is what they gave

4    as CIPA notice.  On July 22nd they informed us they made a

5    classified ex parte submission to the Court under CIPA

6    Section 4.  I haven't even started briefing that issue.  That

7    is a wholly separate issue of whether or not we are entitled to

8    see the CIPA application in itself, the CIPA materials, and

9    whether or not we are allowed to come in.  And I think most

10   judges have at least compromised to that extent and allowed the

11   defense to come in and tell the Court what the theory of

12   defense is for the defendant and see if the documents that

13   would fall under the Section 4 litigation are such that they

14   should be disclosed to us.

15             So, I don't think anybody on this table contemplated

16   FISA and CIPA being the same thing when we put in the deadline.

17   Our notice of that deadline was because last time we were here

18   we asked the government if they were planning to use the

19   mountains of CIPA discovery that they have produced.  Their

20   position was that they were at that time not ready to say

21   whether they were or were not going to use CIPA material and

22   that is why we set that deadline.

23             This is not a -- we are having -- and Ms. Mirón is

24   going to address that in a minute, but we are in a very

25   problematic posture right now because the government gives

1    notice and kind of moves forward, right?  But the notice

2    triggers work for the defendant.  The notice triggers actually

3    motion practice.  I mean, okay.  They can call the Attorney

4    General and say you need to fill out your affidavit in 30 days

5    but we still have a motion to research, to write, and the

6    government continues in its ongoing rolling production of

7    discovery.  And we have an incarcerated defendant with whom

8    review of discovery is, at best, slow and tedious.  Okay?  We

9    still haven't received all of the translations of the Arabic

10   documents that the government wants to use and, again,

11   Ms. Mirón is going to get to that in a minute.  And, you know,

12   the government is well within its right to say, well, we don't

13   have any obligation to give it to you but if they're not being

14   asked to give it to us we will continuously have this delay and

15   Mr. El Gammal does not want further delay.  As his counsel it

16   is our obligation to make sure that we go to trial swiftly but

17   prepared and it is very hard to prepare when there is a

18   constant stream of information flowing our way.

19          THE COURT:  Okay.  So, I just want to make sure that

20   the sides are not talking past each other and that I am

21   understanding the respective positions.

22          So, there is a body of CIPA discovery that has been

23   provided to the defense, correct?

24          MS. SHROFF:  A body of CIPA discovery has been

25   provided.  I'm not sure if the July 22nd letter -- I can hand

G825gamC                        conference

1   up a copy if the Court wishes -- it states basically that

2   they've made an *ex parte* submission.  Now, I plan to write to

3   the Court and follow up on this particular notice that they

4   have given because I am not sure why the submission should be

5   *ex parte*, what material it covers and, yes, yes, I know from

6   the government that nobody has ever won this motion before but

7   we are litigating it now before Judge Broderick on another case

8   and we intend to litigate it here.  We don't only litigate

9   things we are going to win.  We litigate what the law allows us

10  to litigate and we have a right to litigate in a timely manner.

11          So, we are asking the Court to just set some

12  deadlines.  We asked for an earlier trial date, obviously,

13  because as Ms. Tekeei pointed out it was first set for the

14  26th, we moved it up to the 19th because of several

15  constraints, and we would frankly like to move forward and go

16  to trial but we can't when we are at the receiving end of

17  material.

18          So, FISA is one motion, CIPA is another motion,

19  ongoing discovery production is another issue, 404(b) and

20  translations are another issue.

21          THE COURT:  So, let's take those one at a time.  Do we

22  want to tackle CIPA first?

23          MS. SHROFF:  FISA first.

24          THE COURT:  FISA first.

25          MS. SHROFF:  Sure.

G825gamC                    conference

1        THE COURT:  So what do you want to do with respect to

2  FISA?

3        MS. SHROFF:  We are going to put in our motions by

4  August 5th.

5        THE COURT:  I'm sorry?

6        MS. SHROFF:  The defense will put in their motions by

7  August 5th.

8        THE COURT:  Okay.

9        MS. SHROFF:  And we need until August 5th because,

10  well, we needed until August 5th, we needed time to prepare

11  motions and that's not a very long time from July 13th to

12  August 5th.  We have two separate motions that we will be

13  making and we told the government as early as we could that

14  those are the motions we are going to make.

15        THE COURT:  Okay.  So, by Friday?

16        MS. SHROFF:  By Friday.

17        THE COURT:  What other, the CIPA motion, is that the

18  other motion you wish to make?

19        MS. SHROFF:  Yes.  The CIPA motion I would like to

20  make one week from today.

21        THE COURT:  By next Tuesday?

22        MS. SHROFF:  Yes.

23        THE COURT:  What date is that?

24        THE DEPUTY CLERK:  August 9.

25        THE COURT:  Any other motions that you wish to make?

1          MS. SHROFF:  No.  We have discovery-related issues

2     that we want to raise but no other motions, per se.

3          THE COURT:  And before we set down the final schedule

4     for these motions, is it your belief that we should keep the

5     September 19th date?

6          MS. SHROFF:  It is not viable.

7          THE COURT:  Have you spoken with the government

8     concerning potential dates?

9          MS. SHROFF:  We did, your Honor.  We spoke with them

10     and we reached out to the Court because the Court obviously has

11     its own schedule.  Anticipating that as of today we could set

12     some deadlines, 404(b) deadlines, translation deadlines,

13     exhibit lists, expert notice -- this is not a small case,

14     right?  We have a lot of stuff to handle.  This is not a felon

15     in possession trial with three witnesses, this is a lot of

16     material to get our hands around.  So, we could have early

17     dates, it is the only way to ensure a fair trial especially

18     with an incarcerated defendant.  It takes a long time to go

19     through stuff.

20          So, we are hoping you will be able to set some dates

21     that everybody can live with, some that will make them happy,

22     some that will make them unhappy; set it all out so that we all

23     know what is coming our way and then pick a trial date.  We

24     would like an end of November trial date or mid-November trial

25     date but, as I understand it, the Court has a civil trial.

G825gamC                        conference

                Mr. Quigley and I have another trial before Judge

Woods but I think we would both have to agree to adjourn that

one because this one is more on the road to trial.

                THE COURT:  Okay.

                MS. SHROFF:  So that's where we are.  Ms. Mirón would

like to be heard on the discovery issues.

                THE COURT:  Certainly.

                MS. MIRÓN:  So, our preference would be to set a

November trial date if the Court is able to move -- I think the

Court has a civil trial but assuming a late November trial

date, we have broached with the government several times a

deadline for which they provide to us translations of exhibits

that they would seek to introduce at trial because, as the

Court is aware, there are thousands and thousands of pages of

Facebook communications and other communications via other

media in Arabic.  Some are in English, some are in Arabic.  We

would ask the government to commit to telling us by when

they'll finish those translations.

                So, when we were anticipating a September 19th trial

date we would ask them to get final translations, maybe draft

translations, but essentially translations by August 15th and I

think they hesitated to do that.

                We want an idea of the universe of communications that

we will seek to introduce at trial, with whom, at what point,

how many pages of communications are they going to try to

G825gamC                    conference

1    introduce?  Are they all with alleged co-conspirators or some

2    not with co-conspirators?  Under what hearsay exception would

3    they seek to introduce them?  We are just receiving, bit by

4    bit, Arabic to English draft translations of Facebook

5    communications and we would like a firm deadline by which the

6    government would finish telling us which communications they

7    seek to introduce at trial.

8            THE COURT:  And I take it, Ms. Mirón, that you have

9    been having these conversations with the government, correct?

10           MS. MIRÓN:  We have tried very hard and I believe it

11   is their position that they're not going to commit to a

12   deadline and so we are asking the Court to set one, and we

13   think a September 9th deadline for translations is a fair

14   deadline, especially when we are considering going to trial 10

15   days later.

16           (Counsel conferring).

17           MS. MIRÓN:  So, the reason, of course, that we need

18   time with the draft translations, we want our own interpreter

19   to review them to see if we agree with their accuracy.  We

20   might want an expert to review them to see whether or not they

21   would support a potential expert's testimony.  We need them

22   well in advance because the communications on Facebook are

23   useless to the defense because we can't understand them and we

24   certainly can't hire someone to translate everything when half

25   of it will be irrelevant and the government will never even

1    seek to introduce them into trial.

2            THE COURT:  You mentioned experts.  Aside from

3    language experts, are there any experts that the defense

4    believes it will be calling if you are in a position to say so?

5            MS. MIRÓN:  We are not ready to say that just yet and

6    we think that the government -- there is a district

7    understanding that Rule 16 obligations are -- that there need

8    not be a written demand for all the Rule 16 obligations by the

9    defense but we have served the government with a written demand

10   that asks them for their experts.  So, for example, if they are

11   calling an expert to testify about ISIL or the meaning of

12   certain communications which they say are coded, we might want

13   our own expert to testify.  But, it is on them first.  So, we

14   think they need a deadline for their expert notice and ours

15   would follow shortly thereafter.  That's how the rule is

16   written.  We have requested it, really the obligation is on

17   them at this point to provide expert notice.

18            But, yes, besides language experts we are

19   contemplating a more substantive expert.  We are not prepared

20   to inform the government at this point of that.

21            THE COURT:  Okay.

22            So, Ms. Tekeei, tell me about the -- I take it there

23   is no more discovery that needs to be produced that is not

24   otherwise the subject of the FISA and CIPA motions, correct?

25            MS. TEKEEI:  That's correct, your Honor.

G825gamC                         conference

1              Prior to --

2              (Counsel conferring)

3              MS. MIRÓN:  Your Honor, may I be heard on that?  I

4    wasn't quite done with my own fleshing out of the issues.

5              THE COURT:  Okay.

6              MS. MIR N:  I think what is happening is that there is

7    a second layer of disclosure occurring.

8              So, there were thousands and thousands of pages of

9    Facebook communications and other forms of media and now we are

10   receiving embedded videos, some in Arabic, some in English,

11   that the government is I guess going through and may be

12   interested in seeking to introduce into trial.  So, while they

13   say, well, this was produced to you several months ago, there

14   are also thousands of videos in this production.  So, we would

15   not have any clue what the government thinks is relevant.  So,

16   now they're essentially going through and sending us a video at

17   a time.  As of this weekend we got four or five videos that

18   they may think is relevant, a video -- a parody of ISIS that

19   they may try to introduce at trial.

20             So, they may say Rule 16 discovery is complete but

21   they're finalizing the detail but really they're just

22   continuing to produce more and more evidence that they'll seek

23   to introduce at trial and we think the deadline should be set

24   for even that level of production.

25             THE COURT:  I'm sorry.  Can you further describe for

1    me -- so, these are Facebook messages that have previously

2    been -- that have already been provided to you?

3              MS. MIRÓN:  Well, the messages --

4              (Counsel conferring)

5              MS. MIRÓN:  Let me try to be specific because it is

6    not just Facebook, there is WhatsApp, Tango, other forms of

7    communications where there are links embedded.  So we will see

8    a series of letters or some numbers that would represent a

9    video and today I went back to see, well, can we actually get

10   the video without the government saying we are interested in

11   that video.  We have been able to obtain the actual video by,

12   say, copying and pasting the YouTube link.  Sometimes it is not

13   available on YouTube anymore.  So, since that link was

14   represented to us, yes; but the video was not available to us

15   until the government sent it to us.

16             So, it may be technically correct that it was sent but

17   the actual video was never identified, certainly never

18   translated if it is in Arabic, never disclosed in a meaningful

19   way to the defense until as recently as about a week ago.

20             THE COURT:  So, is the government making

21   representations about those videos that they are producing to

22   you?  Are they saying this was part of what has already been

23   produced in case you didn't see it and we intend to use it at

24   trial -- or we may use it at trial.

25             MS. MIRÓN:  For example, they produced about three or

1    four videos.  We asked for more specificity about where the

2    videos came from, who sent them, what device, in what platform,

3    and then I guess Friday of last week they wrote a letter

4    specifying, well, this is embedded in a phone report, this is

5    embedded in --

6              THE COURT:  I'm sorry.  In a what report?

7              MS. MIRÓN:  Phone extraction report, cell phone.  So,

8    yes, you can verify that there is a reference to it in a

9    particular communication but there is so many videos that until

10   they tell us they are interested in it -- and, frankly, I don't

11   even know if they've specified they're seeking to introduce it

12   but they found it significant enough to send to us last

13   weekend.

14             So, once we pushed back asking for more information,

15   yes, they're complying saying we gave this to you in January

16   and then we check and, yes, the link is there but the YouTube

17   video isn't available on YouTube anymore.  So, we need a

18   deadline for that type of discovery exposure as well.  And an

19   exhibit list deadline -- maybe -- at this point that we can

20   move in limine to exclude some of this as irrelevant or

21   prejudicial or representing 404(b).

22             But, it is that form of notice that we are seeking to

23   set early enough in trial so that we can make significant

24   decisions about our strategies.

25             (Counsel conferring)

G825gamC                      conference

1          MS. MIRÓN:  I understand the government may want to

2     adjust their exhibits.  We are not asking for the Court to set

3     a final, final deadline two months in advance, but if they know

4     that they're going to seek to introduce something as an exhibit

5     at this point, that should be told to the defense so that we

6     can make a motion *in limine*.  Some of these communications

7     don't involve the alleged co-conspirators and some of them may

8     have a prejudicial effect, they involve representations of

9     children talking about ISIS.  What that has to do with this

10    case I don't know.

11         So, it's that level of trial preparation that they're

12    engaging in but we are in a very different posture trying to

13    prepare for this trial but getting Rule 16 details drip by

14    drip.

15         THE COURT:  Okay.

16         Now, I take it, Ms. Tekeei, that the government would

17    have been prepared to go to trial on September 19th?

18         MS. TEKEEI:  Absolutely, your Honor.  And in

19    preparation for that, focusing on the September 19th trial

20    date, as I mentioned earlier, the defense proposed and the

21    government agreed to certain deadlines in advance of that

22    trial.  Now that the defense is contemplating a late November

23    trial date and a date that we had discussed yesterday with

24    defense counsel was November 28th, the government is prepared

25    to set an analogous deadline or schedule related to that trial

G825gamC                    conference

1    date and, specifically, as proposed by defense counsel and as

2    largely agreed to by the government, we would agree to provide

3    both parties' expert notices six weeks in advance of trial.

4    Also six weeks in advance of trial the government's 404(b)

5    notice.  Five weeks in advance of trial we are prepared for

6    both parties to file motions *in limine* and proposed voir dire

7    questions.  We understand that the defense wants to propose a

8    jury questionnaire -- the government will be objecting to

9    that -- but they proposed filing that five weeks in advance of

10   trial.  Three weeks in advance of trial both parties'

11   opposition for motions *in limine* and the proposed voir dire

12   questions, as well as the government's opposition to the

13   defense's proposed jury questionnaire.  We agreed two weeks in

14   advance of trial to have a conference on the motions *in limine*,

15   the voir dire, and the jury questionnaire, and one week in

16   advance of trial to have a final pretrial conference.

17           On the issue of the government exhibits and the 3500,

18   as the Court is aware the general practice in this district is

19   for the government to provide 3500 material and exhibits

20   approximately one week in advance of trial.  In this case we

21   are amenable to providing those materials 10 to 14 days in

22   advance of trial.  To the extent that they are voluminous, we

23   will endeavor to provide those materials even earlier than that

24   and we think that that's reasonable.

25           THE COURT:  Well, look.  Let's talk about that because

1  that appears to be the sticking point.  Right?  I mean, I know

2  what the normal practice is but I guess this case is different

3  in several significant respects.  I guess, first and foremost,

4  is the fact that a substantial amount of these communications

5  are in a foreign language which the defense obviously needs

6  help with the translations.  It is also voluminous in a number

7  of regards and it also, from what Ms. Mirón was describing, the

8  type of discovery that has discovery embedded that they are, I

9  guess at least, in some cases if not a significant number of

10  cases, unable to discern whether or not there is anything there

11  and whether or not you intend to use it and whether or not it's

12  relevant or significant in any event.

13       So, I guess their point when they say we need to know

14  better in this case than perhaps others, what it is that you

15  intend to use and therefore I think that certainly 14 days

16  prior to trial is not going to do it with respect to this case

17  and the challenges that it poses for defense counsel and so

18  what can you do.

19       First of all, are you able to say whether or not you

20  have translations of all of the videos or communications that

21  you intend to use at trial?

22       MS. TEKEEI:  So, your Honor, we can provide the

23  defense with a draft government exhibit list approximately a

24  month in advance of trial noting that it may change or

25  additions may be made to it at the two-week time period.

1          In terms of focusing specifically on the translations

2     that we have been providing, as we have been preparing for the

3     September 19th trial, we have been obtaining verbatim

4     translations of certain Arabic language conversations, almost

5     all of which involve the defendant, for use at trial.  We have

6     been producing drafts of those translations to the defense as

7     we receive them from the translation company, and it is worth

8     emphasizing and noting that non-verbatim summaries of many of

9     these same conversations were previously produced to the

10    defense and to the defendant in September and October of last

11    year.

12         We have been, as I said earlier, working with a

13    translation service.  A member of that translation service is

14    going to be maybe an expert -- an Arabic linguist expert at our

15    trial.  It is very difficult for us to provide a drop-dead

16    deadline for when those translations will become complete as we

17    will be working with the expert to finalize them.

18         But, as I said before, we can provide defense counsel

19    a month in advance of trial with a draft list of our

20    government's exhibits and we have been providing them with the

21    line by line translations as we have been receiving them from

22    the translation service.

23         On the issue of the embedded files, what defense

24    counsel is describing are the defendant's own communications

25    with co-conspirators and with other individuals in which he

1    sends or receives links to YouTube videos or other media.  All

2    of this was produced many, many months ago and what we have

3    been doing is specifically pulling out certain of those videos

4    and saving them and producing them to defense counsel separate

5    from the links that were produced in the context of the

6    communications previously, precisely because we want them to be

7    on notice that we may be using these particular videos or these

8    particular links at trial and these would, again, be subject to

9    the same draft exhibit list that we proposed providing to

10   defense counsel approximately one month in advance of trial.

11            THE COURT:  But, if I understood Ms. Mirón correctly,

12   you may have produced these communications with the embedded

13   links but they are unable now to click on those links, if you

14   will, and see the video; or if they're able to put that link in

15   a separate YouTube, try to pull it up on YouTube directly, it

16   may no longer be available.

17            So, they are, it appears to me with respect to that

18   type of evidence -- I don't know how significant it is in the

19   universe of exhibits that you will want to introduce at

20   trial -- but at least with respect to that universe of

21   evidence, at a distinct disadvantage.

22            MS. TEKEEI:  Many of those links, your Honor, are

23   still live on YouTube, and so copying and pasting them into a

24   web browser leads you to the same video that we have been

25   producing.  Some of them, however, have been removed from

G825gamC                          conference

1  YouTube based on their content.

2          (Counsel conferring)

3          MS. TEKEEI:  And anything we have produced we have

4  been able to get by copying and pasting them into the web

5  browser.

6          THE COURT:  Okay.

7          MS. MIRÓN:  Let me just add to the record about I

8  believe that there are hundreds, if not possibly thousands of

9  YouTube -- maybe a thousand YouTube video links in the various

10  communications that have been disclosed over the past year and

11  some of which are in Arabic.  So, it makes a lot more sense for

12  the government to decide where they want to focus their

13  attention and if our motions *in limine* are due five weeks

14  before trial, the government's exhibit lists should be due

15  earlier than that because I imagine significant part of the

16  motions *in limine* will be moving to preclude videos about ISIS

17  that are unduly prejudicial, irrelevant, have nothing to do

18  with this allegation.  I mean, there are lots of political

19  communications on the discovery that was disclosed over the

20  past year and not much of it has to do with this alleged

21  offense.

22          So, whatever the government is focused on should be

23  what the defense can then focus on and they should be required

24  to tell us.  If they were going to go to trial September 19th,

25  somehow it was going to get done before then.  It should still

 1   be on that schedule.  I don't think it is necessary for the

 2   government to say, okay, well now we can take our time and the

 3   defense will then scramble four weeks before trial to prepare

 4   our motions in limine.

 5        THE COURT:  Let me ask this of the government.  Are

 6   you looking to make a 404(b) motion in this case?

 7        MS. TEKEEI:  We have not yet decided that, your Honor.

 8   We are considering it.

 9        Your Honor, if I may just address one point?

10        Whenever defense has asked us whether we intend to use

11   a piece of evidence at trial, we have answered that question to

12   them and we will continue to do that.  So, to the extent they

13   have questions about specific discovery that we have produced,

14   we have answered that to date and we will continue to answer

15   that going forward, especially as it relates to helping the

16   parties prepare for motions *in limine*.

17        MS. SHROFF:  Your Honor, look.  Here is the thing.

18   They have answered.  It is true.  We asked them, *So, are you*

19   *going to use this?* and they say, *We don't know.*  That is an

20   answer.  It is not an answer that helps us, it doesn't help us

21   prepare.  In some instances, of course, sometimes I jokingly

22   ask them if they're going to introduce a certain snippet that

23   they have in their complaint and in their indictment and they

24   say Yes.  Well, I know that.  That's not what we are talking

25   about.  There is the obvious things that we know they are going

1    to introduce, and there is the obvious things that they're

2    going to try introduce that we know we are definitively going

3    to move to keep out.  Then there is this whole middle ground

4    and it is very impossible to litigate.  If they were to go back

5    and -- you know, we can go back and write a letter, if the

6    Court wants.

7               You can look at the trial of Raj Rajaratnam, if you

8    want.  The man was out, they had deadlines far in advance of

9    deadlines we offered here.  He had gazillions millions of

10   dollars worth of defense lawyers working around the clock to

11   prepare for trial.  I mean, we are excellent but we don't have

12   a gazillion people to put it on because, you know -- this is

13   it.  This is the team.  And we want to make sure we get it done

14   correctly.

15              So, if it is no skin off the government's back, what's

16   the problem?  That's what I really don't understand, what is

17   the prejudice to the government by giving us the exhibit list

18   earlier so that Mr. Habib and Ms. Mirón and I can divide up the

19   motions, write them out, send them to you, you can review, you

20   can rule, and then we can know how to write an opening.

21              It just makes logical sense.  It should be trial by

22   preparation, not trial by fire, right?  I mean, it is a trial.

23   All we are asking is look, whatever you can tell us, earlier

24   rather than later and you, as the Judge, can order them to tell

25   us earlier rather than later; it would be best because it would

1   allow us to prepare.

2             THE COURT:  Okay.  Are you asking to start the trial

3   on November 28?  Which, by the way, is the week after

4   Thanksgiving.

5             MS. SHROFF:  Honestly, I think unless the Court has a

6   different schedule, that's what we could fathom with having

7   spoken to opposing counsel and Ms. Rivera.  If the Court wants

8   to suggest alternative days we can confer and see if those are

9   better.

10             THE COURT:  I am prepared to adjust my schedule to

11   accommodate you all because what I have prior is a civil matter

12   and I would want to give Mr. El Gammal priority.

13             MS. SHROFF:  Your Honor, could we just have a second?

14             THE COURT:  Sure.

15             MS. SHROFF:  Thank you.

16             (Defendant and counsel conferring)

17             MS. SHROFF:  Your, November 28 or December 7th;

18   whichever.  I think November 28th is fine with us.

19             We do want government counsel to kind of hear our

20   concern.  Jury selection, without a jury questionnaire, will be

21   unnecessarily long.  We don't plan to propose a complicated

22   jury questionnaire, we plan to keep it simple.  We are not

23   talking about one of those 30-odd-page long questionnaires.  We

24   can work with them if they could not object and see if we

25   can -- just to make the whole process simpler because Judge

G825gamC                      conference

1    Garaufis picked a jury, it took days and days and days even

2    though he had a questionnaire.

3              That's the reason we proposed the questionnaire, so

4    that we can make it a little bit cleaner and smoother.

5              THE COURT:  And it will be further complicated by the

6    fact that it is the holidays and people have vacation plans and

7    concerns about the length.  And I take it we are still looking

8    at three weeks for this trial?

9              MS. TEKEEI:  We estimate two weeks, your Honor, for

10   the government's case.

11             THE COURT:  Okay.

12             And the government has no objection to November 28?

13             MS. TEKEEI:  No, your Honor.  And again, the parties

14   previously largely agreed upon a schedule in terms of deadlines

15   that I laid out for the Court; the government is amenable to

16   that.

17             THE COURT:  So, we go back six weeks from November 28

18   for expert discovery and motions and 404(b) --

19             MS. MIRÓN:  Your Honor, I think Rule 16 requires that

20   the government disclose expert notice in advance.  In fact, the

21   obligation has been triggered.  So, if they wait too long we

22   can move to preclude it but we have demanded it and then ours

23   should follow that.

24             The compressed schedule that we proposed via e-mail

25   was because September 19th was coming up, so we talked amongst

G825gamC                    conference

1    ourselves and said let's reach out to the government, see if we

2    can get all of these things done.  But now that we have

3    November 28, it should flow in orderly fashion.  The government

4    should disclose their expert notice, we will then review it,

5    consult with an expert to see whether we have our own expert on

6    the topics disclosed, but their notice should be required to be

7    given earlier.

8         THE COURT:  Okay.  And I take it you have no objection

9    to that, Ms. Tekeei or Mr. Quigley?

10        (Counsel conferring)

11        MS. TEKEEI:  Your Honor, we think that six weeks is

12   more than sufficient time in advance of trial and if they want

13   to file theirs, if they want to take a week, contemplate our

14   notice and file theirs afterward, we are amenable to that.

15        Currently, we contemplate four categories of experts.

16   The first is an expert on ISIL; the second is an expert on

17   historical cell site data; the third is an expert on electronic

18   devices and extracting data from electronic devices; and the

19   fourth is the Arabic linguist that we discussed before.

20        That is what we currently contemplate and we can

21   detail, to the extent that it is provided for under Rule 16 and

22   the case law, further, the testimony and the particular experts

23   that we intend to call six weeks in advance of trial which we

24   think is sufficient.

25        THE COURT:  Have you discussed those at least

1    categories of expert with the defense?  I would think that

2    there would be some of these categories as to which there might

3    be a stipulation.

4         MS. TEKEEI:  We have flagged some, if not all of these

5    categories of experts to defense.  One potential area for our

6    stipulations would be the Arabic translations and we can

7    continue to discuss that with the defense.

8         MS. SHROFF:  You know, I think we are having

9    communication problems because we don't know of these four

10   categories of experts.  If they are implied experts, that is

11   true, one could obviously infer that are you going to have an

12   Arabic interpreter because you have Arabic translations.  One

13   could infer there is an extraction expert because there are

14   phones involved.  One could infer that because there is cell

15   fight information there is going to be a cell site expert.

16   But, honestly, if you have the experts, if you know who they

17   are and what their testimony is going to be, if you gave it to

18   us earlier than the six weeks, the Court is right, we could

19   have our experts look at it, work with it, and perhaps come to

20   a stipulation or let the Court know that these are the areas

21   where we will in fact have testimony.

22        I don't understand.  You see, the problem is we don't

23   have an expert right now.  If we had an expert we would tell

24   them that this is our expert.  The experts we call are really

25   dependent on the experts they call.  So, if they weren't going

G825gamC                        conference

1    to call a cell site expert, I wouldn't ever have to think about

2    cell site information.

3          So, tell us who they are so we can move it along.  And

4    especially if you have thought of these categories and you are

5    the government, right?  It is not like you change your experts

6    all the time, you know which expert you are going to use.

7          THE COURT:  Okay.

8          So, let me ask this.  Here is how I am leaning.  This

9    matter was scheduled to go to trial on September 19.  The

10   government has represented here today rather strenuously that

11   if we had kept that date they would have been ready on that

12   date and therefore one would think that the government is

13   fairly close to making a final determination as to what

14   exhibits they will be using, what experts they will be calling,

15   what motions *in limine* they will be making.  Therefore, given

16   the substantial complications of this case that I mentioned

17   earlier, the voluminous discovery, the fact that it is, a lot

18   of it, in the Arabic language, and that the defense has not

19   received translations of much of what it appears maybe the

20   government is going to be using at trial, that some

21   substantially larger lead time is necessary for the defense to

22   be able to prepare.  Accordingly, now that we have a November

23   28 trial date, I would think that the government ought to

24   provide some categories of information eight weeks before trial

25   including experts, including draft exhibit lists and make

G825gamC                      conference

1    404(b) motions, etc.

2            So, we will work with eight weeks prior to trial in

3    terms ever turning over those types of documents including

4    motions in limine, jury questionnaire motion if it is going to

5    be made, proposed jury charge, proposed verdict sheet.

6            Now, we can sit here and draft the particular schedule

7    or I can leave it to the parties with those guidelines and I

8    can ask you to do it and submit a joint proposed pretrial

9    schedule.  I think under the circumstances that that is the

10   best way to proceed; that way Mr. El Gammal and his lawyers

11   have as much time necessary to wrap their arms around what will

12   unlikely be a substantial proffer of evidence by the government

13   at trial.

14           So, we will take it from there.  Let's finalize the

15   schedule on the FISA and CIPA motions.  The defendant has

16   prosed that they make their FISA motion by this Friday and

17   their CIPA motion next Tuesday.  So, with respect to the FISA

18   motion, when can the government respond?

19           MS. TEKEEI:  Your Honor, if the Court could provide us

20   with a target date we can communicate that to the folks in D.C.

21   and perhaps in the scheduling letter that we discuss with

22   defense counsel indicate and convey to the Court whether we

23   think that is possible given the schedules that are involved,

24   in particular that any response to that motion would require a

25   declaration by the Attorney General, for example.

G825gamC                    conference

|  |  |
|---|---|
| 1 | THE COURT:  I would, in the ordinary course, direct |
| 2 | the government to respond within three weeks from those two |
| 3 | dates. |
| 4 | MS. TEKEEI:  So, your Honor, we will provide that |
| 5 | guidance to the folks in D.C. and get back to the Court on |
| 6 | that. |
| 7 | THE COURT:  So, it would be August 26th on the FISA |
| 8 | motion and August 30 on the CIPA motion. |
| 9 | MS. TEKEEI:  We will notify the appropriate people. |
| 10 | THE COURT:  To reply, if you want to reply? |
| 11 | MS. SHROFF:  Your Honor, I think we just need one week |
| 12 | on CIPA but two weeks on FISA. |
| 13 | THE COURT:  Okay.  So then those replies will be on |
| 14 | the same -- slightly different dates. |
| 15 | Do you have those dates, Ms. Rivera. |
| 16 | MS. SHROFF:  Your Honor, we can work out the dates if |
| 17 | you want and send them to the Court. |
| 18 | THE COURT:  Okay. |
| 19 | MS. SHROFF:  Is that easier for you? |
| 20 | THE COURT:  Yes.  There is a lot of dates and I don't |
| 21 | want to get it wrong. |
| 22 | MS. SHROFF:  That's fine. |
| 23 | THE COURT:  Okay? |
| 24 | MS. SHROFF:  Okay. |
| 25 | THE COURT:  Okay. |

G825gamC                    conference

1          So, I think we have covered everything.

2          MS. SHROFF:  We think so.

3          THE COURT:  Subject to some discussions among counsel

4     of figuring out final dates, and I do want to keep final

5     pretrial for one week prior at which point we will discuss the

6     motions, etc.

7          THE DEPUTY CLERK:  November 23 at 2:00 p.m.

8          MS. MIRÓN:  That is the Wednesday before Thanksgiving.

9     Is there any chance we can do it Monday or Tuesday of that

10    week?  Not that we won't all be preparing, which we will.

11         THE COURT:  Let's do it the Monday.

12         MS. MIRÓN:  Great.

13         THE COURT:  In the afternoon.

14         THE DEPUTY CLERK:  So, Monday, November 21, at 2:30

15    p.m.

16         THE COURT:  Okay.

17         Is there anything else that we need to do?  Before we

18    adjourn, I would like to see the government, if I may, in the

19    robing room concerning your motion.

20         MS. TEKEEI:  Certainly, your Honor.  I think the only

21    thing left to do is to exclude time between now and the date of

22    trial for the stated purposes of preparing for motions,

23    preparing for trial.

24         THE COURT:  Okay.

25         Any objection to waiver of speedy trial?

G825gamC                          conference

1          MS. SHROFF:  No, that's fine, your Honor.

2          THE COURT:  I will waive speedy trial between now and

3    November 28 for the reasons set forth on the record by the

4    government's attorney.

5          Anything else?

6          MS. SHROFF:  No, your Honor.

7          MS. TEKEEI:  Not for the government, your Honor.

8          THE COURT:  Okay.  We are adjourned.

9                              o0o

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25