

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

---

The Silvio J. Mollo Building
One Saint Andrew's Plaza
New York, New York 10007

October 27, 2016

**BY ECF AND BY HAND**

The Honorable Edgardo Ramos
United States District Judge
Southern District of New York
40 Foley Square
New York, New York 10007

Re:    United States v. Ahmed Mohammed El Gammal, 15 Cr. 588 (ER)

Dear Judge Ramos:

 The Government writes in response to the defendant's October 17, 2016 letter regarding his (a) objections to the Government's expert notices, (b) motion to preclude the testimony of the Government's experts or to order the Government to supplement its disclosures, and (c) request for additional time to provide his expert notice.  (Def. Ltr. at 1).  Under the Court's scheduling Order, the Government's opposition to the defendant's motions is not due until Monday, October 31, 2016.  Notwithstanding that, in the hope of making tomorrow's conference as productive as possible, the Government submits this letter today without prejudice to its right to file a supplemental response (if necessary) on October 31 consistent with the Court's scheduling Order.

 For the reasons set forth below, the Government's expert notices, which were provided more than two months before trial, are more than sufficient under the Federal Rules of Criminal Procedure and the defendant has not identified any basis—much less a compelling basis—for the Court to impose a sanction so severe as precluding the Government's expert testimony. Furthermore, the Government has no objection to a reasonable extension of the defendant's expert notice deadline.

**I.    Applicable Law**

 Under Federal Rule of Criminal Procedure 16(a)(1)(G), the Government "must give to the defendant a written summary of any testimony that the government intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence during its case-in-chief at trial. . . . The summary provided under this subparagraph must describe the witness's opinions, the bases and reasons for those opinions, and the witness's qualifications."

The Honorable Edgardo Ramos                                                    2
October 27, 2016

## II.      The Government's Expert Notices

### A.  Aaron Y. Zelin: Militant Jihadist Groups

The Government's expert disclosures with respect to Aaron Zelin comply fully with Rule
16.  The Government's disclosures consist of its October 3, 2016 letter, which included Mr.
Zelin's recent trial testimony in *United States* v. *Pugh*, 15 Cr. 116 (E.D.N.Y. 2016) ("Pugh Tr.")
and his 12-page curriculum vita, as well as a brief, one-page supplemental expert disclosure,
made on October 17, 2016.

These materials adequately disclose Mr. Zelin's opinions and the bases for those
opinions.[1]

First, the Government's disclosures identify the bases and reasons for Mr. Zelin's
opinions.  For example, Mr. Zelin regularly reviews Arabic and English-language material
"coming directly from . . . [the] Islamic State, al-Qaeda[, and] the various affiliates"; reviews
information in the "local Arabic press in a particular country, western media, and  . . . possibly
public court information"; reviews, on a daily basis, social media, put out by ISIL and other
militant jihadist groups, and has conducted interviews with individuals who support the militant
jihadist groups he studies.  Pugh Tr. 847-48.[2]

Second, the Government's disclosures, including the transcript of Mr. Zelin's testimony
in the *Pugh* case, give a more-than-adequate summary of Mr. Zelin's opinions regarding militant
jihadist groups, in particular ISIL.  For example, the materials disclosed to date reveal Mr.
Zelin's opinions that:

- The organization now known as ISIL was founded in Afghanistan by Abu Musab
  al Zarqawi.  After the 9/11 attacks, Zarqawi and his organization relocated to Iraq,
  where they began conducted terrorist attacks and insurgent activities beginning in
  2003.  By 2009, U.S. and Iraqi forces had tactically defeated the organization.
  The organization then "laid low for a while."  Pugh Tr. 854-56.

- A number of factors, including grievances by the Sunni community in Iraq and
  the Syrian Civil War led to ISIL's resurgence. Pugh Tr. 857.

- In early 2011, a number of protests took place through the Arab world, including
  in Syria and Egypt.  Pugh Tr. 857.

---

[1] The defendant does not appear to contend that the Government has failed to adequately disclose
Mr. Zelin's qualifications as an expert.

[2] In addition, Mr. Zelin has reviewed publicly disclosed questionnaires that ISIL recruits fill out
when they enter ISIL territory.

The Honorable Edgardo Ramos                                              3
October 27, 2016

- As a result of the protests in Egypt, the sitting government in Egypt was overthrown, and later, a new government was elected.  The president in the new government was Mohammed Morsi, a member of the Muslim Brotherhood.  In 2013, Morsi's government was overthrown.  Supporters of the Muslim Brotherhood rallied in a place in Cairo known as Rabba Square.  On August 14, 2013, the Egyptian military attacked the protestors, killing approximately 800 people.  Gov't 10/17/16 Supplemental Disclosure; *see also* Pugh Tr. 89.

- In Syria, the regime of Bashar al Assad attacked the civilian protestors, leading to a civil war and the creation of the Free Syrian Army in around June/July 2011.  Pugh Tr. 857.

- ISIL sent a group to Syria, which later became known as Jabhat al-Nusra.  ISIL's leader, Abu Bakr al-Baghdadi, later announced that Jabhat al-Nusra was part of ISIL, but Jabhat al-Nusra's leadership rejected Baghdadi's announcement.  Pugh Tr. 858-60.

- Some members of Jabhat al-Nusra decided to stay with ISIL, however, and this helped ISIL build up its power in Syria and access additional resources.  As a result, in the first half of 2014, ISIL was able to seize the cities of Ramadi, Fallujah, and Mosul in Iraq.  Pugh Tr. 860-61.

- In late June 2014, ISIL formally declared itself a caliphate.  A caliphate is a type of historic Islamic government, which had not existed since the abolition of the Ottoman caliphate in 1924.  In early July, al Baghdadi made an important, widely publicized speech in Mosul, Iraq regarding the formation of the caliphate.  Pugh Tr. 861-63. No other group had announced its intention to form a caliphate around this time.  Pugh Tr. 869-70.

- During mid-2014 through 2015, ISIL had "dual capitals" in Mosul, Iraq and Raqqah, Syria.  From the fall of 2014, through early 2015, ISIL began consolidating its governing apparatus, and a large flow of foreign fighters began entering ISIL territory.  In addition, after the U.S. began conducting air strikes on ISIL, ISIL began a highly public beheading campaign of journalists and humanitarian workers.  Pugh Tr. 863, 868-69, 916-17.[3]

- Although centered in Iraq and Syria, ISIL maintains affiliates, or wilayts, in Libya, Egypt, and other locations.  Pugh Tr. 977-83.

---

[3] The Government also expects that Mr. Zelin will testify that this video campaign continued into 2015, when ISIL publicly released a number of execution videos, including one showing the immolation of a Jordanian pilot and another showing the execution of Christians on a beach in Libya.

The Honorable Edgardo Ramos                                                    4
October 27, 2016

- ISIL maintains a number of print and video media outlets, and a sophisticated social media presence. Tr. 872-74. ISIL's official English-language publication is called Dabiq magazine. Pugh Tr. 956.

- ISIL's goals focus on taking over territory, recruiting members, defending against attacks, and defeating al Qaeda, which they perceive to be a rival jihadist movement. Pugh Tr. 865. ISIL achieves its goals both through "ultra-violence," including beheadings, drownings, and other forms of execution, as well as by providing basic social services to the areas they are controlling.

- ISIL is a Sunni Muslim organization, which views Shiite Muslims (i.e., the other major sect of Islam) as enemies. Pugh Tr. 866; *see also id.* 885-86. In addition, ISIL views Israel and the West, including the United States, as enemies. Pugh Tr. 874.

- ISIL's flag is a black flag, with the sayings "There is no God but God" and "Mohammed is the prophet of God" on it. Pugh Tr. 867-68 (also describing the significance of ISIL's flag as a symbol used to show strength and marking control over a particular territory).

- Also in 2014 and 2015, the recruitment of foreign fighters (i.e., individuals from countries outside of ISIL-controlled territories) was an important part of ISIL's strategy. ISIL's efforts to recruit foreign fighters were unprecedented. Pugh Tr. 870-72. Foreign fighters generally reached ISIL by traveling through Turkey, initially flying into Istanbul and then traveling to Turkish towns like Gaziantep, Urfa, and Reyhanli, near the Turkey-Syria border. Pugh Tr. 874-880.

- In advance of the June 2015 Turkish elections, Turkey began increasing efforts to stem the flow of foreign fighters through its territory. Pugh Tr. 1040.

- Kobani and Jarabulus are cities on the Syrian side of the Turkey-Syria border that ISIL has controlled at various times. Pugh Tr. 877.[4]

- Once in ISIL-controlled territory, new recruits undergo ideological training, followed by military training. Pugh Tr. 881.[5]

---

[4] In addition, based on additional conversations with Mr. Zelin since the time of the defendant's motion, the Government expects to elicit testimony that ISIL sustained losses in the area around Kobani, Syria in 2015, which represented the first significant territorial setbacks for ISIL since it began to seize territory in Iraq and Syria.

[5] In addition, based on continued preparation with Mr. Zelin, the Government anticipates that Mr. Zelin will testify that, upon entering ISIL territory, new recruits fill out forms containing

The Honorable Edgardo Ramos                                                      5
October 27, 2016

- Other names for ISIL include ISIS or the Islamic State of Iraq and al-Sham, Daesh, and Dawla al Islamiya.  Pugh Tr. 853.

- The term "mujahedeen" or "mujahid" means "one who struggles," though, in context, it can mean "holy warrior."  Pugh Tr. 855-56, 888-89.

- The term "Sham" refers to greater Syria, including Syria, Lebanon, Jordan, Israel, and Palestine.  Pugh Tr. 851.

- The term "dawla" means "State" in Arabic and is used by ISIL supporters and members.  Pugh Tr. 851.

- "Jihad" means "to struggle or to strive."  The "lesser jihad" is a term that can be used in the context of military action.  Pugh Tr. 888.

- "Jenna" (or Jannah) reers to "paradise or heaven."  Pugh Tr. 889.

- "Ummah" means the Islamic nation.  Pugh Tr. 889.

- "Died with shahada" means that one died as a martyr.  Pugh Tr. 889-90

- "Bayah" means "oath of allegiance."  Tr. 890-91.

- "Kuffar" or "kaffir" mean infidel.  Pugh Tr. 890.

- "Hadiths" are a corpus of stories about the Prophet Mohammad.  Pugh Tr. 890.

- Anwar al-Awlaki was an important English-language speaker within the militant jihadist movement.  Although al-Awlaki was killed in 2011, his works remain influential to the jihadist community.  Pugh Tr. 894-95.

- "Sharia" refers to Islamic law, and ISIL has attempted to implement "sharia" in their territories. Pugh Tr. 898.

The above bullet points set forth the substance of the expert testimony that the Government anticipates Mr. Zelin will offer at trial in this case.  The Government's disclosures regarding Mr. Zelin's anticipated testimony are more than sufficient to comply with the Government's Rule 16 obligations.  Moreover, the vast majority of the information disclosed above was provided to the defense on October 3, more than two months before trial.  As such, any concerns the defense has about being unprepared to meet the anticipated expert testimony by Mr. Zelin in this case are, at best, specious.

---

biographical and similar information, including a point of contact which is used in the event the recruit is killed while fighting with ISIL.

The Honorable Edgardo Ramos                                                                6
October 27, 2016

### B.  Special Agent Eric Perry: Historical Cellsite

The Government's expert disclosures with respect to Special Agent Perry also comply with Rule 16.  On October 20, 2016, the Government produced Special Agent Perry's draft expert report regarding, among other things, cellular location data obtained for the time period in October 2014 when the defendant traveled to New York to meet with an individual identified in the Indictment as co-conspirator ("CC-1").  As demonstrated in Special Agent Perry's report, he will be asked to testify concerning data and demonstratives reflecting the locations and call activity of cellular phones used by the defendant and CC-1 during this time period.  The records and data underlying Special Agent Perry's report were produced to the defendant on March 21, 2016.  Thus, the Government has provided a written summary of the testimony it intends to elicit from Special Agent Perry, Special Agent Perry's draft expert report, the bases and reasons for those opinions (including the data underlying those opinions), as well as Special Agent Perry's qualifications.  These disclosures are more than sufficient to comply with the Government's Rule 16 obligations with respect to Special Agent Perry's anticipated testimony.

### C.  Laila Sabara (Arabic Language), and Craig Roth and Mary Horvath (Forensic Analyses of Electronic Devices)

Rule 16 does not require that all experts be treated in the same way.  When Rule 16 was amended to require expert-witness disclosures, the Advisory Committee noted that "[i]n some instances, a generic description of the likely witness and that witness's qualifications may be sufficient, *e.g.*, where a DEA laboratory chemist will testify, but it is not clear which particular chemist will be available."  Fed. R. Crim. P. 16 advisory committee's note to 1993 Amendment.  Thus, more generic disclosures suffice for certain kinds of expert witnesses offering relatively straightforward testimony, such as the linguist testimony that will be provided by Ms. Sabara and testimony regarding forensic analyses performed on electronic devices that will be provided by Mr. Roth and Ms. Horvath.

The defendant's chief complaint with respect to the Government's disclosures regarding Ms. Sabara is that the Government has not produced final translations of the Arabic-language material it intends to offer at trial.  As discussed in the Government's October 23, 2016 opposition to the defendant's motion *in limine* regarding final translations, the defense has drafts of substantially all of the translations listed on the Government's Draft Exhibit List, and Ms. Sabara is currently in the process of certifying the draft transcripts the Government has provided to the defense by reviewing them and putting them into final form.  The Government anticipates that process will be completed well in advance of trial and with more than sufficient time for defense counsel to review both the source foreign-language material (which they have had for more than a year) and the translations in order to lodge their challenges, if any.  To the extent defense counsel has identified portions of the draft translations with which they currently disagree, the Government previously requested, during a meet and confer call with defense counsel on October 14, 2016, that defense counsel identify those portions to the Government to permit the Government to consider and, if necessary, to address those disagreements prior to

The Honorable Edgardo Ramos                                           7
October 27, 2016

finalizing the transcripts.  Defense counsel has yet to provide the Government with its objections to any of the draft translations the Government has already provided, many of which were produced several months ago.

The defendant's objections to the Government's notice regarding its forensic experts are similarly unavailing.  The Government produced forensic images and reports of the contents of the electronic devices seized from the defendant's residence on January 12 and February 2, 2016, and included three forensic extraction reports prepared by Mr. Roth.  The Government provided an additional forensic image of an iPad seized from the defendant on April 29, and Ms. Horvath's report of how that data was extracted on September 22, 2016.  In addition, the Government's Draft Exhibit List identifies the electronic devices and reports from those devices that it will be seeking to offer at trial.  The defense does not reference these prior disclosures in its October 17, 2016 letter.  The Government's generic description of Mr. Roth's and Ms. Horvath's testimony and their qualifications, combined with the previously produced forensic images and reports of the defendant's electronic devices, provides more than sufficient disclosure under Rule 16(a)(1)(G).

## III.    Conclusion

For the foregoing reasons, the Government respectfully submits that the defendant's objections to the Government's expert notices are unfounded, and his motion to preclude the testimony of the Government's experts or for an order directing the Government to supplement its disclosures should be denied.

Respectfully submitted,

PREET BHARARA
United States Attorney

By:    ___/s/_____
Andrew J. DeFilippis
Brendan F. Quigley
Negar Tekeei
Assistant United States Attorneys
One St. Andrew's Plaza
New York, New York 10007
Tel. No.: (212) 637-2231/2190/2482

cc:    Sabrina P. Shroff/Annalisa Mirón/Daniel Habib (by ECF)
       *Counsel for Ahmed Mohammed El Gammal*