UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - x
UNITED STATES OF AMERICA :
:
- v - :
: **15 Cr. 588 (ER)**
**AHMED MOHAMMED EL GAMMAL,** :
Defendant. :
- - - - - - - - - - - - - - - - x

**DEFENDANT AHMED MOHAMMED EL GAMMAL'S SECOND MOTIONS IN LIMINE**

Federal Defenders of New York
Daniel Habib
Annalisa Miron
Sabrina Shroff
Attorneys for Defendant
**Ahmed Mohammed El Gammal**
52 Duane Street - 10th Floor
New York, NY 10007
Tel.: (212) 417-8769

TO: PREET BHARARA, ESQ.
United States Attorney
Southern District of New York
1 St. Andrew's Plaza
New York, NY 10007

Attn: **Andrew DeFilippis**
**Brendan Quigley**
**Negar Tekeei**
Assistant United States Attorneys

Pursuant to Fed. R. Evid. 103(a), Ahmed Mohammed El Gammal submits this second set of motions in limine. We respectfully reserve the right to make further evidentiary objections, whether by motion in limine or at trial, as needed, but submit these motions now to facilitate efficient trial preparation for the parties and the Court.

Specifically, we move this Court to exclude the following:

**1. Videos From A Toshiba Laptop Seized From El Gammal's Home During The Execution Of A Search Warrant.**

The government seeks to introduce five videos from a laptop seized during the execution of a search warrant at El Gammal's home. GX-1-B-N and GX-1-BT-NT. The videos comprise:

- A New York Times report entitled "Surviving an ISIS Massacre," which contains video of ISIS militants executing bound prisoners by shooting them in their heads, as well as an interview with an Iraqi soldier who survived the massacre.
- A video depicting an armed man in fatigues, flanked by other armed men in fatigues with an ISIS flag behind him, addressing a group of people on a city street, in Arabic, and discussing God giving "victory" to "the Mujahideen who worship him." A title card indicates that the video comes from "The Information Office of the State of Aleppo."
- A video depicting armed men in fatigues guarding and striking prisoners in civilian clothes, accompanied by a voice-over audio track, in Arabic, that includes such statements as "God, grant us martyrdom," and "God be with our oppressed Muslim brothers in Syria."
- A television news broadcast, apparently from Al-Jazeera, of a monologue by a masked man, wearing what appears to be a Hamas headband, discussing in Arabic "the unique, important, and efficient role played by the Palestinian journalist" in "the Palestinian Resistance."

- An Arabic-language monologue, delivered over a still image of the ISIS flag, purporting to describe ISIS's political and military practices.

All of these videos should be excluded on relevance grounds. There is no evidence that El Gammal watched these videos -- as opposed to, say, clicking on links to them and then closing them -- so they prove nothing about his mental state (the only conceivable relevance theory). The government has not served notice that any computer forensics expert will testify as to when El Gammal watched these videos (if he did), whether he downloaded or saved them, distributed them, or took any action to suggest his familiarity with their contents.

Even if the government can establish that El Gammal watched these videos, the first and fourth (the New York Times report and the Al-Jazeera broadcast) should be excluded on relevance grounds. As to the New York Times report, watching a mainstream newspaper report about ISIS, a topic of great public concern, does not imply that the viewer supports ISIS's ideology, especially where, as here, the report is largely unflattering. Millions of well-informed people -- in particular Arabs and Muslims -- consume news about ISIS without supporting the organization. All this video proves is that El Gammal keeps up with current events. As to the Al-Jazeera broadcast, this is not a case about the Intifada, Palestinian journalists, or providing material support to Hamas. El Gammal is not alleged

to have done anything with any connection to the Palestinian Territories or Hamas. This video also risks confusing the jury, see Rule 403, by substituting one foreign terrorist organization for another. Hamas and ISIS are not interchangeable, and the government cannot substitute proof of interest in one (Hamas) for proof of support for the other (ISIS). See, e.g., Samar Batrawi, What ISIS Talks About When It Talks About Palestine, Foreign Affairs (Oct. 28, 2015) (discussing ISIS video that refers to Hamas as "apostates"), http://fam.ag/1HdFapz.

Finally, the first and third videos (the New York Times report depicting summary gunshot executions and the video of militants abusing prisoners) should be excluded as unfairly prejudicial under Rule 403. The Times video itself says that it contains "scenes of graphic violence," namely, gunshot murders, that would needlessly inflame the jury, and the third video depicts militants whose affiliation isn't even clear mistreating prisoners. Absent any evidence that these militants even belong to ISIS, their treatment of the prisoners proves nothing and would only arouse the jury's anger.

**2. Facebook Messages Between El Gammal And [REDACTED] In Which El Gammal Advises [REDACTED] On Securing Residency In The U.S.**

In an April 2014 Facebook exchange, El Gammal and [REDACTED] [REDACTED] discuss the possibility that the latter could try to immigrate to the United States by obtaining a tourist visa then

claiming asylum. GX-100-E-T, pp. 127-39. El Gammal makes a number of statements that could be construed as encouraging [redacted] to mislead U.S. immigration officials during that process. For example, El Gammal tells [redacted] that "the important thing" is to persuade the consular official issuing a visa "that you are a young man who is coming for tourism and after you enter it will be a different story." Id. p. 132. And El Gammal suggests: "the moment you go in the US tell them you want to claim asylum, and if I go back to Egypt they will put me in prison, torture me, and burn my house. Then you will guarantee the right to political asylum and get a work permit after one month." Id. p. 136.

El Gammal's statements should be excluded as irrelevant under Rules 401 and 402, unfairly prejudicial under Rule 403, uncharged prior bad acts under Rule 404, and barred by Rule 608(b). Obviously, neither El Gammal's knowledge of the U.S. immigration system nor his advice to others about how to navigate it is pertinent to any issue in this case. However, the suggestion that El Gammal urged [redacted] to lie in order to immigrate illegally would inflame the jury and prejudice the defense. Rule 404 prevents admission of this evidence because the government has not given notice, nor do these statements fit any of the purposes allowed by Rule 404(b). Finally, to the extent that the government seeks to use the statements as

probative of El Gammal's character for truthfulness -- which it could attempt to do only if El Gammal were to testify -- Rule 608(b) bars the use of this extrinsic evidence of conduct.

**3. Facebook Messages Between El Gammal And [REDACTED] In Which El Gammal Discusses Smuggling Weapons And Ammunition Into Egypt.**

In a July 2014 Facebook exchange, El Gammal and [REDACTED] discuss smuggling weapons and ammunition into Egypt, how merchants within Egypt procure ammunition, and the process of assembling AK-47 rifles. GX-100-J-T, pp. 9-14. For example, El Gammal asks, "how can you bring weapons into Egypt ... or even bullets," and says that "here we put the bullets in a regular travel suitcase in the cargo." Id. at 9-10. [REDACTED] advises El Gammal "never try to even do that" and not to "think of doing such a thing" because "you can only do this by smuggling through the land borders and not the entry points." Id. at 10-11. El Gammal asks about "empty magazines" and [REDACTED] again rejects the suggestion: "anything related to weapons will send you immediately to detention." Id. at 12-13. El Gammal then speculates that it is "easy" to "manufacture an AK 47" and "I just need a lather who has a lathing machine," before acknowledging that he has never manually assembled one. Id. at 13-14.

This exchange should be excluded as irrelevant under Rules 401 and 402, and unfairly prejudicial and confusing under Rule

403. El Gammal is not charged with providing or conspiring to provide material support in the form of ordnance, and the government has not alleged that he supplied any person or organization with weapons or ammunition. Indeed, there is no evidence that El Gammal ever attempted to transport weapons or ammunition into Egypt, and he says himself that he has never actually assembled an AK-47. But depicting El Gammal as an arms smuggler is false and will unfairly prejudice him. And, in the context of a material support prosecution where the government has proposed a jury instruction defining "material support" to include "weapons" (Dkt. No. 73, Request to Charge No. 5) -- even though there's no evidence that anyone in the charged conspiracy provided weapons to ISIS -- this evidence risks confusing the jury as to the government's actual allegations and the relevant evidence.

**4. Facebook Post By [REDACTED] Reproducing Hadith About A "Caliphate."**

On July 5, 2014, [REDACTED] posted an image and an ancient hadith (a saying attributed to the Prophet Muhammad) concerning a "caliphate." GX-100-L-T. The hadith says:

> [T]he Prophet, peace be upon him, said: "The prophecy in you will be according to God's will, then if he wishes he will raise it, then it becomes a Caliphate according to the prophecy, then it will be according to God's will, then if he wishes he will raise it, then it becomes a mordacious rule, then it will be according to God's will, then if he wishes he will raise it, then it becomes a forceful rule, then it will be according to God's will, then if he wishes

> he will raise it, then it becomes a Caliphate according to the path of the Prophet, then he became silent."

[REDACTED] "tagged" the post with El Gammal's Facebook ID. That is, he created a link within the image to El Gammal's Facebook profile. See, e.g., Bouveng v. NYG Capital LLC, 2015 U.S. Dist. LEXIS 70976, at *9 n.2 (S.D.N.Y. June 2, 2015) (explaining tagging). When [REDACTED] tagged the post with El Gammal's ID, the post appeared in El Gammal's "timeline" -- the feed of all his Facebook activity, visible to other users -- where the government retrieved it. To be clear, El Gammal did not create the post. By way of rough analogy, it is as though [REDACTED] printed a flyer and put El Gammal's name on it.

The government has argued that, because the date of this post coincides with ISIL's declaration of a caliphate and a "widely publicized speech" by ISIL's leader, Abu Bakr al-Baghdadi, "the timing and content of the defendant's post are highly probative to his knowledge and intent to provide material support to ISIL." Dkt. No. 91, at 10. The flaw in the government's argument is that El Gammal did not post this. [REDACTED] [REDACTED] did. As such, the evidence is irrelevant because it is not probative of El Gammal's mental state at all. Moreover, it is hearsay because it is an out-of-court declaration by [REDACTED] [REDACTED] offered for its truth (on the government's account, an

endorsement of ISIL) and not admissible under any of the hearsay exceptions. See Rules 801, 802, and 803.

**5. Facebook Profile Picture Of Hamas Solider.**

In July 2014, El Gammal briefly used, as his Facebook profile picture, an image of a masked solider emerging from water and pointing a rifle. GX-100-N, p.12. A reverse image search reveals that this is a commonly reproduced photo of a fighter from Hamas's al-Qassam brigades. See goo.gl/lNvnjj. As discussed above (§ 1), with respect to video featuring a member of Hamas, this material is not relevant and risks confusing the jury. El Gammal is not charged with providing material support to Hamas and there is no allegation that he had any relationship with Hamas or its members. This exhibit should be excluded.

**6. Facebook Communications Between Attia Aboualala and [redacted]**

We believe that the government intends to introduce Facebook communications between Attia Aboualala ("CC-2") and [redacted] GX-122-A-T. The defense objects to this entire exhibit on hearsay grounds. In particular, the defense objects to communications that took place in September 2015, after the defendant's arrest, including the following statements by Aboualala: "it is just when the guy knew that he was traveling to Turkey ... he told me that if he needed help with lodging and transportation to help him." GX-122-A-T, p.51. As

explained in detail in other filings (Dkt. No. 83, at 15-17; Dkt. No. 92, at 8-14), to come within the co-conspirator exception to the hearsay rules, see Rule 801(d)(2)(E), a statement must have been made during and in furtherance of the conspiracy. Obviously, [REDACTED] was not part of the conspiracy. Moreover, this conspiracy had ended, and Aboualala's statement narrating past events did not advance the conspiracy in any way. See, e.g., United States v. Lieberman, 637 F.2d 95, 102 (2d Cir. 1980). To the extent that the government argues that Aboualala was furthering the conspiracy by concealing its true nature, it is well settled that "statements made during the 'concealment phase' of a conspiracy are not 'in furtherance of' the conspiracy within the meaning of Fed. R. Evid. 801(d)(2)(E)." United States v. Stratton, 770 F.2d 820, 829 n.8 (citing Krulewitch v. United States, 336 U.S. 440, 443-44 (1949)).

**7. Facebook Communications Between Aboualala and [REDACTED]**

The government intends to introduce April 2015 Facebook messages between Aboualala and [REDACTED] GX-122-G-T. The defense objects to this entire exhibit on hearsay grounds. In particular, we object to an April 8, 2015 message in which Aboualala says: "Brother Ahmed is one of the good brothers but he is of the Daesh Brotherhood; do not follow him." Id. p.1. This statement is inadmissible hearsay that does not fall within

any of the exceptions. In addition, it is not even clear that Aboualala is referring to El Gammal. Nothing in the context of the exhibit so indicates, and on the same page, Aboualala refers to a different "Ahmed" -- [REDACTED] Id. If Aboualala does not mean El Gammal, then the statement has no relevance. As a prerequisite to admissibility, this Court should require the government to make a preliminary showing that, by "Ahmed," Aboualala means El Gammal. See Rule 104(b).

**8. Email From Samy El-Goarany To [REDACTED]**

The government intends to introduce an August 1, 2015 email from El-Goarany to [REDACTED] with the subject line "Abu Murad" (El-Goarany's Twitter handle). GX-202-D. After greeting [REDACTED] El-Goarany writes:

> I'd like to get in touch one of these days now that I'm freer, inshaAllah I hope everything is going well with you and your new job.
>
> Here's my number to reach on WhatsApp: [REDACTED]
>
> Please contact me on there. Hope to hear from you soon, JazakAllah Khair.

This email should be excluded on relevance and hearsay grounds. It is irrelevant because it does not appear to pertain to any of the charged offenses and there is no indication who [REDACTED] is. It is also hearsay that does not fit within any of the exceptions.

Dated: New York, New York
December 9, 2016

Respectfully submitted,
Federal Defenders of New York

/s/
Daniel Habib
Annalisa Miron
Sabrina Shroff
Attorneys for Defendant
**Ahmed Mohammed El Gammal**
52 Duane Street - 10th Floor
New York, NY 10007
Tel.: (212) 417-8769