UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

- v. -

AHMED MOHAMMED EL GAMMAL,
   a/k/a "Jammie Gammal,"

Defendant.

15 Cr. 588 (ER)

# MEMORANDUM OF LAW IN SUPPORT OF THE GOVERNMENT'S DECEMBER 9, 2016 MOTIONS *IN LIMINE*

PREET BHARARA
United States Attorney for the
Southern District of New York
One St. Andrew's Plaza
New York, New York 10007
*Attorney for the United States of
   America*

Andrew J. DeFilippis
Brendan F. Quigley
Negar Tekeei
Assistant United States Attorneys
   *Of Counsel*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

- v. -

AHMED MOHAMMED EL GAMMAL,
a/k/a "Jammie Gammal,"

Defendant.

15 Cr. 588 (ER)

**MEMORANDUM OF LAW IN SUPPORT OF
THE GOVERNMENT'S DECEMBER 9, 2016 MOTIONS *IN LIMINE***

**PRELIMINARY STATEMENT**

The Government respectfully submits this memorandum of law in support of motions *in limine* requesting that the Court: (i) preclude the defense from cross-examining Government witnesses about, or otherwise making arguments or offering evidence concerning, Foreign Intelligence Surveillance Act ("FISA") searches or surveillance in this case; (ii) preclude the defense from offering self-serving statements of the defendant; and (iii) take judicial notice of the designation of the Islamic State of Iraq and the Levant ("ISIL") as a designated foreign terrorist organization.  The Government also respectfully submits this memorandum in further support of the Government's previous motion *in limine* to admit a letter written by CC-1 before his death.

1

# DISCUSSION

## I.  The Court Should Preclude Evidence or Argument Regarding the Use of FISA Searches and Surveillance in this Case

### A.  Background

In the opposition to the Government's first motions *in limine*, filed November 4, 2016, the defense asserts that they "intend to elicit that the government employed the extraordinary technique of a FISA search but did not find various forms of incuplatory evidence that might have been expected if [the defendant] were guilty as charged." Def.'s Opp'n to Govt's Mot. in Limine ("Def.'s 11/4/16 Opp'n") at 1.  The defense goes on to claim that the fact that "the government found no discussions of a terrorist attack or domestic terrorist activity, no evidence of the existence of a domestic terrorist cell, and no references to members of [sic] leaders of ISIL, among other omissions," is exculpatory of El Gammal in this case. *Id.*

### B.  Discussion

The Court should preclude from the defense from eliciting that the Government used FISA searches or surveillance in this case and, more generally, from arguing that El Gammal's purported lack of involvement in uncharged terrorist activity is exculpatory as to the charged crimes.

#### 1. The Evidence is Not Admissible Under the Federal Rules of Evidence

*First*, such evidence is simply not relevant under Federal Rule of Evidence 401 and it is inadmissible under Rule 404(b).  Here, the defendant is charged with assisting CC-1 in traveling to Syria so CC-1 could provide material support to, and receive military-type training from, ISIL. Even assuming *arguendo* that FISA techniques—or for that matter, any aspect of the Government's investigation—did not yield evidence concerning "a terrorist attack," "domestic

2

terrorist activity," or "the existence of a domestic terrorist cell," or obtain communications referring to ISIL's leadership, *id.*, evidence of such "prior good acts" is inadmissible under established case law and the Federal Rules of Evidence.

Generally, "[a] defendant may not seek to establish his innocence . . . through proof of the absence of criminal acts on specific occasions." *United States* v. *Scarpa*, 913 F.2d 993, 1011 (2d Cir. 1990). "Evidence of a defendant's past 'good acts' is only relevant where 'a defendant is alleged to have always or continually committed bad acts or where the evidence of good acts would undermine the underlying theory of a criminal prosecution." *United States* v. *Balboa*, No. 12 Cr. 196 (PAC), 2013 WL 6196606, at *3 (S.D.N.Y. Nov. 27, 2013) (quoting *United States v. Damti,* 109 Fed. App'x 454, 455–56 (2d Cir. 2004)).

In *Scarpa*, for example, the defendants were charged with various racketeering offenses. *Id.* at 997-98. The Government alleged that the defendants frequently congregated with each other at a location known as the "Wimpy Boys Social Club." *Id.* at 1010. During the prosecution, the Government learned that state law enforcement authorities had installed an eavesdropping device in the Social Club for a period of time but had intercepted only "innocuous" conversations by the defendants or conversations relating to other uncharged criminal conduct. *Id.* The defense sought to obtain these "innocuous" tapes from the Government in order to introduce them into evidence, arguing that "the very innocuousness of the [defendants'] statements renders them relevant as they are probative of the defendants' innocence." *Id.*

The Second Circuit affirmed the district court's decision to exclude evidence, "by way or testimony or stipulation, of the existence of the bug and the absence of relevant intercepted

3

conversations by the defendants." *Id.* at 1011.  The Second Circuit quoted the district court's statement that defendants in criminal cases "cannot hope to use a process of elimination to defend themselves by presenting evidence of their noncriminal activities." *Id.*  "[P]roof of the absence of criminal acts on specific occasions" is inadmissible. *Id.*; *accord United States* v. *Gotti*, 784 F. Supp. 1013, 1011 (E.D.N.Y. 1992) ("[A] defendant cannot establish that he did not commit a crime as to A because he did not commit a crime as to B.").[1]

More recently, in *United States* v. *Al Kassar*, 660 F.3d 108 (2d Cir. 2011), the Second Circuit affirmed the district court's exclusion of classified similar "prior good act" evidence under Federal Rule of Evidence 404, which restricts the use of character evidence.  In *Kassar*, defendants were convicted of various offenses stemming from a scheme to supply a foreign terrorist organization with surface-to-air missiles.  At trial, the district court rejected the defendants' attempt to offer classified evidence regarding their contacts with Spanish intelligence officials, through which the defendants sought to show they lacked the intent to join the scheme at issue.  660 F.3d at 122-23.  The Second Circuit affirmed the exclusion of the evidence, concluding, among other things, that the evidence was "prior act evidence used to 'prove the character of a person in order to show action in conformity therewith,'" and therefore, not admissible. *Id.* at 123 (quoting Fed. R. Evid. 404(a)).

---

[1] *See also United States* v. *Williams*, 205 F.3d 23, 34 (2d Cir. 2000) (rejecting defense argument that "evidence of innocent travel [to Jamaica] was necessary to rebut the government's allegation that [the defendant] had been involved in other cocaine importations from Jamaica"); *United States* v. *Walker*, 191 F.3d 326, 336 (2d Cir. 1999) (affirming, in case involving fraudulent asylum applications, exclusion of evidence that defendant had "prepared other, non-fraudulent applications" because evidence "was simply irrelevant to whether the applications charged as false statements were fraudulent").

4

Here, any evidence—whether derived from FISA or not—that the defendant did not engage terrorist activity unrelated to the charged offenses is inadmissible under the principles outlined in *Scarpa* and *Kassar*. The Government has not alleged that El Gammal engaged in a pattern of "ceaseless" criminal conduct but instead that, during 2014 and 2015, he facilitated CC-1's travel to Syria so CC-1 could train and fight with ISIL. As such, like the evidence of the "innocuous" conversations at the social club in *Scarpa*, evidence suggesting that El Gammal did not plot terrorist attacks or that he was not a member of a "domestic terrorist cell" is not exculpatory, and it is therefore irrelevant. Similarly, the evidence is also inadmissible under Rule 404(a), because the defendant seeks to use his supposed prior good acts to argue that because he did not engage in other terrorist activities, he did not engage in the activity charged in the Indictment. *Kassar*, 660 F.3d at 122-23.

The cases cited by the defendant are distinguishable because the involved exculpatory evidence of the *charged* conduct. *Jackson* v. *Conway*, 763 F.3d 115, 141 (2d Cir. 2014) involved a lack of physical evidence tying the defendant to the victim of the charged rape, and not, for example, evidence that the defendant did not commit rape on other occasions or that the defendant was not, as a general matter, a rapist. *See also Birenbaum* v. *Graham*, 607 F.3d 36, 53 (2d Cir. 2010) (noting that "[a] strong piece of the defense case was the fact that there was no physical evidence to link Bierenbaum to the [charged] crime").

Finally, as discussed in the Government's first motions *in limine* filed on October 17, 2016, evidence that the Government used FISA searches or surveillance in this case should be precluded as carrying a substantial risk of unfair prejudice to either the Government or the defendant. *See* Fed. R. Evid. 403; Gov't Memo. of Law In Support Of Motions *In Limine*, Dkt.

5

80, at 12-13).  Whether evidence was or was not derived from FISA-authorized searches is not probative and would be offered only to confuse the jury and unfairly prejudice the Government and the defendant by suggesting that the jury should question entirely lawful methods used to obtain evidence or otherwise consider matters outside of their purview as the finders of fact in this trial.

Accordingly, the evidence is not admissible both because it is irrelevant, prohibited character evidence, and carries a substantial risk of unfair prejudice either to the Government or the defendant.

## II. The Court Should Preclude the Defendant from Offering Self-Serving Statements

The Government anticipates its proof at trial will consist, in significant measure, of the defendant's own statements via social media and other electronic communications.  These statements of the defendant are admissible when offered by the Government because, pursuant to Federal Rule of Evidence 801(d)(2), "[a] statement that meets the following conditions is not hearsay: . . . [t]he statement is offered against an opposing party and . . . was made by the party in an individual or representative capacity. . . ."  Fed. R. Evid. 801(d)(2)(A).

However, "[w]hen the defendant seeks to introduce his own prior statement for the truth of the matter asserted, it is hearsay, and it is not admissible."  *United States* v. *Marin*, 669 F.2d 73, 84 (2d Cir. 1982); *see also United States* v. *Kadir*, 718 F.3d 115, 124 (2d Cir. 2013) ("A defendant may not introduce his own prior out-of-court statements because they are hearsay, and . . . not admissible." (internal quotation marks omitted)).

Further, as a general matter, the so-called rule of completeness, i.e., Federal Rule of Evidence 106, "does not render admissible evidence that is otherwise inadmissible."  *United States* v. *Terry*, 702 F.2d 299, 314 (2d Cir. 1983).  Instead, the rule of completeness requires admission

6

of a hearsay statement only when the statement is "*necessary* to explain the admitted portion, to place the admitted portion in context, to avoid misleading the jury, or to ensure fair and impartial understanding of the admitted portion." *United States* v. *Johnson*, 507 F.3d 793, 796 (2d Cir. 2007) (emphasis added) (quoting *United States* v. *Castro*, 813 F.2d 571, 575-76 (2d Cir. 1987)).[2]

Accordingly, courts have routinely precluded defendants from offering their own self-serving statements, including attempting to offer their own statements through cross-examination of the Government's witnesses. *United States v. Jackson*, 180 F.3d 55, 73 (2d Cir. 1999) (no abuse of discretion to preclude portion of tape that included defendant's "own self-serving statements"); *United States* v. *Bumagin*, 136 F. Supp. 3d 361, 375 (E.D.N.Y. 2015) ("Defendant is precluded from cross-examining the Government's witnesses in an effort to elicit exculpatory statements made by Defendant because such statements are inadmissible hearsay"); *United States* v. *Black*, No. 13 Cr. 316, 2014 WL 5783067, at *1 (E.D.N.Y. Nov. 5, 2014) (granting government's motion *in limine* to preclude defendant from eliciting self-serving statements from law enforcement on grounds that "[w]hen the defendant seeks to introduce his own prior statement for the truth of the matter asserted, it is hearsay, and it is not admissible"); *United States* v. *Wilkerson*, 84 F.3d 692, 695 (4th Cir. 1996) (noting that during direct examination, the government "could have introduced inculpatory statements made by [the defendant]" but also recognizing that the Federal Rules of

---

[2] Moreover, the defendant bears the burden of showing that the portions of the statement he seeks to offer are necessary to clarify or explain the portions offered by the Government. *See United States* v. *Glover*, 101 F.3d 1183, 1190 (7th Cir. 1996) ("[T]he proponent of the additional evidence sought to be admitted must demonstrate its relevance to the issues in the case, and must show that it clarifies or explains the portion offered by the opponent.").

7

Evidence "do not provide an exception for self-serving, exculpatory statements made by a party which are being sought for admission by that same party").

Under this well-settled law, the defendant should be precluded from eliciting any self-serving exculpatory statements to the extent they would not otherwise be admissible pursuant to a hearsay exception.

### III. The Court Should Take Judicial Notice of ISIL's Designation as a Foreign Terrorist Organization

The Government also respectfully request that the Court take judicial notice at trial of the designation of the Islamic State of Iraq and the Levant ("ISIL") as a foreign terrorist organization ("FTO"), effective October 15, 2004. ISIL's designation as an FTO is an element of the charged offenses. *See* 18 U.S.C. §§ 2339B(a)(1), § 2339(a); *see also* Gov't Request to Charge, Requests Nos. 6, 21.[3]

#### A. Applicable Law

Federal Rule of Evidence 201(b)(1) allows a Court to take judicial notice of adjudicative facts—such as whether ISIL is, in fact, a designated FTO—when those facts "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(1). Federal courts are required to judicially notice items published in the Federal Register. *See* 44 U.S.C. § 1507 ("The contents of the Federal Register shall be judicially noticed

---

[3] The Government will work with defense to craft a stipulation concerning ISIL's FTO designation along the lines of the proposed judicial notice. If those discussions lead to a mutually-acceptable stipulation, obviating the need for the relief sought herein, the Government will promptly advise the Court.

8

. . ."); *United States* v. *Wood,* 335 F.3d 993, 1001 (9th Cir. 2003) (holding that the district court complied with federal law by judicially noticing a rule published in the Federal Register).

    **B. Application**

As to ISIL, the relevant provisions of the Federal Register set forth the following:

- On October 15, 2004, the United States Secretary of State designated al-Qa'ida in Iraq ("AQI"), then known as Jam'at al Tawhid wa'al-Jihad, as a Foreign Terrorist Organization ("FTO") under Section 219 of the Immigration and Nationality Act and as a Specially Designated Global Terrorist under section 1(b) of Executive Order 13224. *See* 69 Fed. Reg. 61292 (October 15, 2014), attached hereto as Exhibit A.

- The United States Secretary of State amended the October 2004 designation to add several aliases for Jam'at al Tawhit wa'al-Jihad, including AQI, on December 17, 2004. *See* 69 Fed. Reg. 75587 (December 15, 2004), attached hereto as Exhibit B.

- On May 15, 2014, the Secretary of State amended the designation of AQI as an FTO to add the alias Islamic State of Iraq and the Levant ("ISIL") as its primary name. *See* 79 Fed. Reg. 27972 (May 15, 2014), attached hereto as Exhibit C. The Secretary also added the following aliases to the ISIL listing: the Islamic State of Iraq and al-Sham ("ISIS"), the Islamic State of Iraq and Syria ("ISIS"), ad-Dawla al Islamiyya fi al-'Iraq wa'sh'Sham, Daesh, Dawla al Islamiya, and Al-Furqan Establishment for Media Production. *Id.*

- On September 21, 2015, the Secretary added the following aliases to the ISIL listing: Islamic State, ISIL, and ISIS. *See* 80 Fed. Reg. 58804 (September 30, 2014), attached hereto as Exhibit D.

To date, ISIL remains a designated FTO. *See* U.S. Dep't of State, Foreign Terrorist Organizations, http://www.state.gov/j/ct/rls/other/des/123085.htm (last visited Dec. 9, 2016).

    Based on the foregoing reasons and pursuant to 44 U.S.C. § 1507, as well as Federal Rule of Evidence 201, the Government respectfully requests that the Court take judicial notice of the fact that ISIL—including its aliases the Islamic State of Iraq and al-Sham, the Islamic State of Iraq and Syria, ad-Dawla al-Islamiyya fi al-'Iraq wa-sh-Sham, Daesh, Dawla al Islamiya, Al-Furqan Establishment for Media Production, Islamic State, ISIL, and ISIS—is a designated a

9

foreign terrorist organization, as determined by the U.S. Secretary of State and published in the Federal Register.   A proposed order is attached.

## IV. GX-1000 Is Admissible

The Government previously argued that GX-1000, a letter CC-1 wrote to his family, which was to be delivered in the event that he was killed "in battle," is admissible.  *See* Govt.'s Oct. 17, 2016 Motions *in Limine* at 22-24; Govt.'s Oct. 31, 2016 Opp'n to Def.'s Motions *in Limine* at 33-35.

In response, the defense asserted that the letter could not be a declaration against interest because "courts have refused to apply Rule 804 to declarants who, like [CC-1], expect to die before their words expose them to any harm" and cited to cases involving suicide notes.

However, in *Linde* v. *Arab Bank, PLC*, 97 F. Supp. 3d 287, 341–42 (E.D.N.Y. 2015), Judge Cogan allowed the admission of "video wills" of Palestinian suicide bombers who planned to conduct attacks in Israel as declarations against interest.  He noted that the videos exposed the declarant "to significant criminal liability"—because "if the video fell into Israel's hands before the declarant was able to carry out his attack, Israel would make great efforts to capture or kill the declarant before he could do so." *Id.* at 341.  The court rejected the precise argument that he defendant raises here—that the statements in the videos "cannot conceivably imply any fear of post-suicide prosecution" because, "at the time the videos were recorded, a declarant did face severe penal consequences if Israeli authorities obtained the video prior to his carrying out the attack." *Id.* at 341-42.

So too here.  As the Government previously argued, the letter exposed CC-1 to criminal liability because it would have been significant evidence at any trial of CC-1 if U.S. or coalition authorities had obtained the letter before CC-1's death.  Indeed the potential exposure is even

10

higher here than in *Linde* because, in *Linde*, the suicide bomber-declarants presumably expected to die in the near future. In contrast, while CC-1 bore the risk of death by fighting "in battle," there is no evidence he willed his own death on behalf of ISIL.[4]

Accordingly, for the reasons for set forth above, and in the Government's previous submissions, the Government respectfully requests an *in limine* ruling that GX 1000 is admissible.

---

[4] Further, the statement, in a footnote, in *United States* v. *Lemonakis*, 485 F.2d 941, 957 n.24 (D.C. Cir. 1973) that penal interest is "of no moment to a dead man," is dicta. The court found that the statement was not against penal interest because of a lack of corroborating circumstances. 485 F.2d at 957 n.24. Similarly, the court in *United States* v. *Angleton*, 269 F. Supp. 2d 878 (S.D. Tex. 2003), also cited by the defendant, ultimately found the suicide notes at issue were not declarations against interest because of a lack of corroborating circumstances. 269 F. Supp. 2d at 890 ("[T]here are no factors that support the trustworthiness of the exculpatory statements in the jail notes, as necessary under Rule 804(b)(3)."). Finally, *Commonwealth* v. *Pope*, 491 N.E.2d 240, 243 (Mass. 1986) is also distinguishable, because it involved a suicide note from next to the declarant's body, indicating that the statement had been made "just before death." 491 N.E.2d at 244. Here, it is reasonable to infer that the letter was written in connection with CC-1's fighting on behalf of ISIL, and not in immediate proximity to CC-1's death on the battlefield, thus increasing the chances that the letter could expose CC-1 to a risk of criminal liability.

**CONCLUSION**

For the reasons set forth above and in the accompanying classified submission, the Government respectfully requests that the Court (i) preclude the defense from cross-examining Government witnesses about, or otherwise making arguments or offering evidence concerning, FISA searches or surveillance in this case and, more generally, from arguing that the defendant's purported lack of involvement in uncharged terrorist activity is exculpatory of the charged conduct; (ii) preclude the defense from offering self-serving statements of the defendant; (iii) take judicial notice of the designation of the ISIL as designated foreign terrorist organization, and (iv) admit the letter written by CC-1 before his death.

Dated: New York, New York
December 9, 2016

Respectfully submitted,

PREET BHARARA
United States Attorney for the
Southern District of New York

By:  ___/S/_____
Andrew J. DeFilippis
Brendan F. Quigley
Negar Tekeei
Assistant United States Attorneys
Tel.: 212-637-2231/2190/2482

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

- v. -

AHMED MOHAMMED EL GAMMAL,
a/k/a "Jammie Gammal,"

Defendant.

**ORDER**

15 Cr. 588 (ER)

EDGARDO RAMOS, District Judge:

WHEREAS the United States of America, by Preet Bharara, United States Attorney for the Southern District of New York, Andrew J. DeFilippis, Brendan F. Quigley and Negar Tekeei, Assistant United States Attorneys, of counsel, have requested that the Court take judicial notice at trial of the designation of the Islamic State of Iraq and the Levant—including its aliases the Islamic State of Iraq and al-Sham, the Islamic State of Iraq and Syria, ad-Dawla al-Islamiyya fi al-'Iraq wa-sh-Sham, Daesh, Dawla al Islamiya, Al-Furqan Establishment for Media Production, Islamic State, ISIL, and ISIS—as a foreign terrorist organization;

THEREFORE, the Government's motion is GRANTED, and the Court hereby takes judicial notice that the Islamic State of Iraq and the Levant—including its aliases the Islamic State of Iraq and al-Sham, the Islamic State of Iraq and Syria, ad-Dawla al-Islamiyya fi al-'Iraq wa-sh-Sham, Daesh, Dawla al Islamiya, Al-Furqan Establishment for Media Production, Islamic State, ISIL, and ISIS—is a designated foreign terrorist organization.

SO ORDERED:

_____         _____
HONORABLE EDGARDO RAMOS                             Date
UNITED STATES DISTRICT JUDGE