UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - -  x
UNITED STATES OF AMERICA          :
                                  :
      - v -                       :
                                  :        **15 Cr. 588 (ER)**
**AHMED MOHAMMED EL GAMMAL,**      :
           Defendant.             :
- - - - - - - - - - - - - - - -  x


### DEFENDANT AHMED MOHAMMED EL GAMMAL'S OPPOSITION

### TO THE GOVERNMENT'S SECOND MOTIONS IN LIMINE


                          Federal Defenders of New York
                          Daniel Habib, Esq.
                          Annalisa Mirón, Esq.
                          Sabrina Shroff, Esq.
                          Attorneys for Defendant
                              **Ahmed Mohammed El Gammal**
                          52 Duane Street - 10th Floor
                          New York, NY 10007
                          Tel.: (212) 417-8700


TO:     PREET BHARARA, ESQ.
        United States Attorney
        Southern District of New York
        1 St. Andrew's Plaza
        New York, NY 10007

Attn:   **Andrew DeFilippis, Esq.,**
        **Brendan Quigley, Esq.,**
        **Negar Tekeei, Esq.**
        Assistant United States Attorneys

The defense submits this memorandum of law in opposition to the government's second set of motions in limine ("Gov't Second MILs"), Dkt. No. 105.

**1.    This Court Should Permit The Defense To Elicit The Fact That The Government's FISA Search Did Not Yield Various Types Of Inculpatory Evidence.**

The government moves to preclude the defense "from eliciting that the Government used FISA searches or surveillance in this case and, more generally, from arguing that El Gammal's purported lack of involvement in uncharged terrorist activity is exculpatory as to the charged crimes."  Gov't Second MILs 2. The motion should be denied.

Evidence that various investigative techniques, including the extraordinary tool of a FISA search, did not yield various types of inculpatory evidence -- including, but not limited to, "discussions of a terrorist attack or domestic terrorist activity," Dkt. No. 92, at 1 -- is indeed relevant.  Rule 401 provides: "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action."  That "very broad" definition sets a "very low standard" for relevance, and thus, under Rule 402, admissibility.  United States v. Litvak, 808 F.3d 160, 180 (2d Cir. 2015) (citations omitted).  Evidence that the government's

1

searches did not disclose inculpatory evidence that the government itself expected to find makes less probable the proposition that El Gammal knowingly and intentionally facilitated Samy El-Goarany's efforts to join ISIL.

The government's own filings prove the point.  In applying for various Rule 41 search warrants, the government contended that each of the categories the defense has identified would constitute evidence of the charged offenses.  For example, in an application for a warrant to search El Gammal's home, an investigator with the U.S. Attorney's Office swore that he expected to find evidence of material support in the form of "[e]vidence of potential terrorist attacks in the United States."  15 Mag. 2692 (Aug. 21, 2015), Attachment A, at II(A)(2)(b).  And in an application for a warrant to search El Gammal's Facebook account, an FBI special agent swore that the account was "likely to contain information regarding individuals" other than El-Goarany "who similar[ly] aspire to support and receive training from ISIL, and with whom El Gammal was in contact."  15 Mag. 1607 (May 11, 2015), ¶ 22.  The agent also swore that El Gammal's account was "likely to contain" "correspondence" with other "potential ISIL recruits."  Id. ¶ 23.  If, as the government has argued, the presence of such evidence tends to prove El Gammal's commission of the charged offenses, its absence tends to prove the converse.  At the very

2

least, its absence makes El Gammal's commission of the charged offenses less likely, which is all that Rule 401 requires.

The government will elicit from its agents that the searches executed in this case (of physical locations, of digital accounts, etc.) yielded inculpatory evidence.  Indeed, that figures to be the bulk of the government's case.  It would be unbalanced and misleading to allow the government to introduce that evidence, while at the same time preventing the defense from completing the picture by proving what the government expected to find, but didn't.

United States v. Scarpa, 913 F.2d 993, 1010-11 (2d Cir. 1990) and United States v. Al Kassar, 660 F.3d 108, 122-24 (2d Cir. 2011) (both cited at Gov't Second MILs 3-5) are doubly distinguishable.  In those cases, the defense did not propose to elicit, as El Gammal does, evidence that pertained to the investigative techniques used to generate inculpatory evidence in those very cases.  For example, in Scarpa, the government did not offer evidence derived from the surveillance of the "Wimpy Boys Social Club" in its case-in-chief.  913 F.2d at 1010.  And in Al Kassar, the exculpatory material did not arise from an investigative event at all.  660 F.3d at 122.  Moreover, in both cases, the defense sought to offer affirmative proof of prior good acts: in Scarpa, of innocuous conversations; in Al Kassar, of dealings with Spanish intelligence officials.  Here, the

3

defense is not proffering evidence of what El Gammal did. Rather, we intend to elicit of what he didn't do. As a result, Rule 404, which concerns prior acts, is inapplicable.

As to prejudice, the government's fear that the jury will "question entirely lawful methods used to obtain evidence," Gov't Second MILs 6, can be mitigated with an instruction. Indeed, if the defense crosses on FISA, we will not object to an instruction that any FISA-derived evidence was "'properly admitted' and that jurors should consider such evidence '[w]hether you approve or disapprove of how it was obtained.'" Dkt. No. 80, at 12 (quoting United States v. Ogando, 90 Cr. 469 (PNL) (S.D.N.Y. 1991)).

Finally, as El Gammal has explained (Dkt. No. 92, at 3), his Fifth Amendment right to hold the government to its burden of proving guilt beyond a reasonable doubt, and his Sixth Amendment right to present a complete defense, compel the introduction of this exculpatory evidence.

**2. This Court Should Deny The Government's Motion To Preclude The Defense From Offering "Self-Serving" Statements.**

The government moves to preclude the defense "from eliciting any self-serving exculpatory statements to the extent they would not otherwise be admissible pursuant to a hearsay exception." Gov't Second MILs 8. The motion should be denied.

4

At the threshold, the motion lacks the requisite specificity because the government has failed to identify any particular objectionable statements.  The defense made a similar application to preclude El Gammal's statements, generally.  See Dkt. No. 83, at 8-10.  This Court rejected that application, ruling: "The Court denies defendant's broad objection to the admissibility of all statements made by him.  The Court will not categorically exclude all statements made by the defendant, but must look instead to the specific statement and relevant context for any evidentiary ruling."  12/19/16 Tr. 55.  The same analysis applies to, and resolves, the government's motion.

In any case, the motion is by its terms inapplicable to statements that do fall within a hearsay exception, and many of El Gammal's statements will.  For example, as the own government's authorities recognize, a defendant may introduce his own statements if they satisfy Rule 803(3), which exempts from the hearsay rule "[a] statement of the declarant's then-existing state of mind (such as motive, intent, or plan) or emotional, sensory, or physical condition (such as mental feeling, pain, or bodily health)."  See, e.g., United States v. Terry, 702 F.2d 299, 314 (2d Cir. 1983); United States v. Kadir, 718 F.3d 115, 124 (2d Cir. 2013) (both cited at Gov't Second MILs 6).  Indeed, "relevant declarations which fall within the parameters of Rule 803(3) are categorically admissible, even if

5

they are self-serving and made under circumstances which undermine their trustworthiness.  The truth or falsity of such declarations is for the jury to determine, and their 'self-serving nature' goes only to their weight." United States v. Lawal, 736 F.2d 5, 8 (2d Cir. 1984) (citing United States v. DiMaria, 727 F.2d 265, 271 (2d Cir. 1983) (Friendly, J.)).

The government's motion is likewise inapplicable to those statements by El Gammal that the defense will not offer for their truth (and thus do not constitute hearsay, see Rule 801(c)), but rather for some permissible non-hearsay purpose. See 5 Weinstein's Fed. Evid. § 801.11[2]–[6] (LexisNexis 2016) (listing common types of non-hearsay statements, including questions, imperatives, verbal acts, statements showing state of mind, and statements showing acquaintance or connection).

As to the rule of completeness, Rule 106, (discussed at Gov't Second MILs 6-8), the government's objection is again premature.  Under Rule 106, the defense agrees that "even though a statement may be hearsay, an 'omitted portion of [the] statement must be placed in evidence if necessary to explain the admitted portion, to place the admitted portion in context, to avoid misleading the jury, or to ensure fair and impartial understanding of the admitted portion.'" United States v. Johnson, (quoting United States v. Castro, 813 F.2d 571, 575-76 (2d Cir. 1987)) (cited at Gov't Second MILs 7).  But this Court

can't conduct the Rule 106 analysis "in the abstract." United States v. Schlussel, 2009 WL 413605, at *4 (S.D.N.Y. Feb. 11, 2009).  In order to undertake an informed exercise of its discretion, this Court must await the government's introduction of a particular statement and the defense's proffer of surrounding context.

As a result, it matters little that the government has identified cases (Gov't Second MILs 7-8) that, on their unique facts, excluded what those cases called "self-serving" portions of defendants' statements notwithstanding Rule 106.  The defense can cite cases going the other way on different facts.  See, e.g., United States v. Walia, 2014 WL 3734522, at *7-8 (E.D.N.Y. July 24, 2015) ("[T]o the extent the government is seeking to introduce statements made by Defendant to law enforcement admitting his involvement in, or knowledge of, drug trafficking, Defendant's statements to law enforcement during the same interview denying any knowledge and involvement in drug trafficking are admissible."); United States v. Harper, 2009 WL 140125, at *7 (W.D.N.Y. Jan. 20, 2009) (admitting exculpatory portion of post-arrest statement that was "necessary to explain, or to ensure a fair and impartial understanding of," inculpatory portions of statement).  Indeed, El Gammal's position with respect to his Facebook communications is even stronger.  Walia and Harper, who were being interviewed by law enforcement

officers, had obvious motive to fabricate "self-serving" statements to get themselves out of trouble.  El Gammal had no similar motive when communicating with friends on Facebook before his arrest.

Finally, to permit the government to place in evidence inculpatory Facebook communications, while excluding innocuous, explanatory, or exculpatory messages, would mislead the jury into believing that all of El Gammal's Facebook activity was illicit.  As the government well knows from its thorough review of El Gammal's Facebook account, the vast majority of his communications were innocent.  To be sure, the government is entitled to present an unbalanced portrait in its case-in-chief if it so chooses, but fairness requires that the defense be entitled to correct the distortion.

**3.    This Court Should Withdraw Its Ruling Admitting Evidence Of El Gammal's Discussion With Aboualala Regarding An "AK47" And Reserve Decision Pending The Government's New Translation.**

This Court has ruled admissible evidence of El Gammal's discussion with Aboualala regarding an "AK47," Aboualala's travel to Turkey, and El Gammal's statement that Aboualala was "a Daesh gigolo."  12/19/16 Tr. 61-62.  The defense has told the government that we believe the "Daesh gigolo" translation to be inaccurate.  Specifically, a court-certified interpreter retained by the defense has translated El Gammal's statement as:

"You're too wimpy to be Daesh." Because this Court's ruling depends on the premise that the conversation evinces Aboualala's "support for ISIL," 12/19/16 Tr. 62 -- a premise that is questionable if the defense's translation is correct -- we request that this Court withdraw its ruling and reserve decision pending the government's new translation.[1]

## Conclusion

For the foregoing reasons, the government's second set of motions in limine should be denied.

Dated:      New York, New York
            December 23, 2016

                            Respectfully submitted,
                            Federal Defenders of New York

                            /s/
                            Daniel Habib, Esq.
                            Annalisa Mirón, Esq.
                            Sabrina Shroff, Esq.
                            Attorneys for Defendant
                               **Ahmed Mohammed El Gammal**
                            52 Duane Street - 10th Floor
                            New York, NY 10007
                            Tel.: (212) 417-8700

---

[1] The defense expects that the parties will be able to agree on a stipulation concerning ISIL's designation as a foreign terrorist organization.

9