UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

- v. -

AHMED MOHAMMED EL GAMMAL,
a/k/a "Jammie Gammal,"

Defendant.

15 Cr. 588 (ER)

# **MEMORANDUM OF LAW IN SUPPORT OF THE GOVERNMENT'S MOTIONS *IN LIMINE***

PREET BHARARA
United States Attorney for the
Southern District of New York
One St. Andrew's Plaza
New York, New York 10007
*Attorney for the United States of America*

Andrew J. DeFilippis
Brendan F. Quigley
Negar Tekeei
Assistant United States Attorneys
*Of Counsel*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

- v. -

AHMED MOHAMMED EL GAMMAL,
a/k/a "Jammie Gammal,"

Defendant.

15 Cr. 588 (ER)

**MEMORANDUM OF LAW IN SUPPORT OF THE GOVERNMMENT'S MOTIONS *IN LIMINE***

The Government respectfully submits this memorandum of law in support of its motions to preclude certain exhibits produced by the defendant on December 12, 2016.[1] Specifically, the Government moves to preclude statements, offered by the defendant, (a) made by the defendant in the course of communications with third parties, and marked as DX 100-BB, DX 100-CC, DX 100-DD, and DX 2-AA; (b) made by CC-2 in the course of communications with third parties and marked as DX 122-AA, DX 122-BB, DX 122 CC, DX 122-DD, DX 122-EE, DX 122-FF, DX 123-AA, and (c) made by [redacted] and marked as DX 100-DD (collectively the "Defense Exhibits"), as well as the corresponding draft Arabic-English translations of those exhibits, as inadmissible under Federal Rules of Evidence 401 and 403 and/or as inadmissible hearsay.[2]

---

[1] Notably, despite repeated requests by the Government for reciprocal discovery dating back to the Government's initial discovery production in this case, on September 16, 2015, the defense produced the exhibits just after the December 9 motion *in limine* deadline.

[2] The Government is providing copies of these exhibits to the Court on a disk.

The Government also moves to preclude the testimony of Ashkan Soltani, a witness noticed by the defense on December 19, 2016 as a purported expert on "Facebook and other social media platforms." In the alternative, the Court should require the defense to provide disclosures that comply with Rule 16(b)(1)(C) by Thursday, December 29, 2016.

Finally, the Government respectfully submits that, notwithstanding a revised translation of the defendant's July 11, 2014 communications with CC-2, the Court should not alter its December 19, 2016 ruling admitting evidence of the defendant's statement to CC-2 regarding his desire to be in Egypt with an AK-47 and four magazines.

## I. The Defense Exhibits Are Inadmissible Hearsay and/or Irrelevant

### A. Generally Applicable Law

"Generally, a statement made by a person while not testifying at the current trial, offered by that person to prove the truth of the matter asserted in his statement, is hearsay." *United States* v. *Gupta*, 747 F.3d 111, 131 (2d Cir. 2014) (citing Fed. R. Evid. 801(a)-(c)). "Hearsay generally is inadmissible if it does not fall within an exception provided by Rule 803 or 804." *Id*. (citing Fed. R. Evid. 802).

As noted in the Government's December 9 motions *in limine*, "[w]hen the defendant seeks to introduce his own prior statement for the truth of the matter asserted, it is hearsay, and it is not admissible." *United States* v. *Marin*, 669 F.2d 73, 84 (2d Cir. 1982). Federal Rule of Evidence 803, however, provides an exception for "[a] statement of the declarant's then-existing state of mind (such as motive, intent, or plan) or emotional, sensory, or physical condition (such as mental feeling, pain, or bodily health), but not including a statement of memory or belief to prove the fact remembered or believed . . . ." Fed. R. Evid. 803(3). Thus, in order to be

admissible under Rule 803(3), a statement must be (a) an expression of, and (b) contemporaneous with, the declarant's *then*-existing state of mind.

The requirement that the state-of-mind statement be contemporaneous with the declarant's then-existing mental state reduces the declarant's chance for reflection and, therefore, misrepresentation. *See United States* v. *Cardascia*, 951 F.2d 474, 488 (2d Cir. 1991) ("[T]he reasons for the state of mind exception focus on the contemporaneity of the statement and the unlikelihood of deliberate or conscious misrepresentation."); *United States* v. *Farhane*, 634 F.3d 127, 171 (2d Cir. 2011) (Raggi, *J.*, concurring) ("[T]he statement must evidence the declarant's '*then* existing state of mind,' a circumstance presumed to reduce a declarant's chance for reflection and, therefore, misrepresentation." (emphasis in original)); *United States* v. *Naiden*, 424 F.3d 718, 722 (8th Cir. 2005); *United States v. Macey*, 8 F.3d 462, 467 (7th Cir. 1993).

Even if a statement falls within Rule 803(3), "the fact that a statement falls within an exception to the hearsay rule does not mean that the statement is not to be classified as hearsay; nor does it mean that the statement is automatically admissible. It means simply that the statement—assuming that the criteria specified in the exception are met—is 'not excluded by the rule against hearsay.'" *Gupta*, 747 F.3d at 131 (quoting Fed. R. Evid. 803, 804(b)). "The court retains its normal discretion to exclude the evidence on other grounds such as lack of relevance, *see* Fed. R. Evid. 402, improper purpose, *see, e.g.*, Fed. R. Evid. 404, or undue prejudice, *see* Fed. R. Evid. 403." *Gupta*, 747 F.3d at 131 (internal quotation marks omitted).

**B. Discussion**

**1. Statements of the Defendant: DX-2-AA, DX 100-BB, DX 100-CC**

The defendant seeks to offer the following exhibits containing his statements with other individuals:

- DX 2-AA:[3] An August 2015 WhatsApp exchange, obtained from the defendant's cellphone, between the defendant and CC-2. In the exchange, the defendant and CC-2 discuss the shutdown of a television station and the purchase of an electronic device.

This exchange is inadmissible, first, because it is hearsay and no exception to the hearsay bar applies. Second, this exchange has no apparent relevance to the issues in this case and should be excluded. To the extent that the relationship between CC-1 and CC-2 included non-criminal aspects, that is not exculpatory. *United States* v. *Scarpa*, 913 F.2d 993, 1011 (2d Cir. 1990) ("A defendant may not seek to establish his innocence . . . through proof of the absence of criminal acts on specific occasions."); *United States* v. *Gambino*, 838 F. Supp. 744, 748 (S.D.N.Y. 1993) ("A defendant cannot introduce evidence of innocent behavior on other occasions to prove his innocence.").

- DX 100-BB: A January 18, 2014 exchange between the defendant and [redacted] during which the defendant and [redacted] iscuss engage in a general discussion regarding Egypt, Naguib Onsi Sawiris, an Egyptian billionaire businessman, and America, during which the defendant makes statements such as "Infidelity in Egypt is worse than that of Americans!" and "average Americans are good people."

The Court should similarly preclude this exchange on hearsay and relevance grounds. The only potential relevance of the exchange is the defendant's statement that "Infidelity in Egypt is worse than that of Americans!" and "average Americans are good people." To the extent that the defendant argues the statements do not constitute hearsay because they are probative of his then-existing state of mind under Rule 803(3), his state of mind in January 2014 is of minimal relevance to his state of mind later in 2014, when he began voicing his support for

---

[3] All summaries of defense exhibits herein are based on the draft translations produced by the defendant on December 12, 2016.

ISIL[4] and assisting CC-1's travel to Turkey and onto Syria. Moreover, the defendant is charged with supporting ISIL, not hating or even disliking the United States, and the exchange is thus irrelevant and its admission risks confusion of the issues under Rule 403.

- DX 100-CC: A July 2, 2014 exchange between the defendant and during which the defendant generally discusses Egyptians who have left Egypt for Turkey, makes statements such as, among others, "All Egyptians are in Turkey now," and "It's easy to find Egyptian roommates there. There's a lot of them and they work for the new (TV) channels." During the discussion, the defendant also states "In Europe you remain a servant but America makes you feel at home from day 1" and "Nobody asks you were you're from or says your English is this or that. They think you're an American and treat you as such from day 1. No discrimination."

This exchange should be precluded as well. For one, the statement includes hearsay within hearsay, because there is no indication the defendant has personal, first-hand knowledge that "All Egyptians are in Turkey," that "it's easy to find Egyptian roommates" in Turkey, or that many Egyptians work for Turkish television stations. *See* Fed. R. Evid. 805. Further, even the defendant's own statements on this issue are not admissible under the state-of-mind exception. The exception explicitly does not allow for the admission of "a statement of . . . belief to prove the fact . . . believed." Fed. R. Evid. 803(3); *accord* Fed. R. Evid. 803(3) advisory committee note 1972 Proposed Rules ("'The exclusion of statements of memory or belief to prove the fact remembered or believed' is necessary to avoid the virtual destruction of the hearsay rule which would otherwise result from allowing state of mind, provable by a hearsay statement, to serve as the basis for an inference of the happening of the event which produced the state of mind.").

---

[4] The Government does intend to offer evidence of the defendant's statements of support for ISIL from before approximately April of 2014.

Thus, the defendant's beliefs regarding the presence of Egyptians in Turkey are not admissible to prove "the fact[s] . . . believed," and should not be admitted.

Finally, the defendant's statements from July 2, 2014 regarding "feel[ing] at home in America" and a lack of "discrimination" in this country are not relevant at all to the issues at trial, specifically whether he later provided material support to ISIL by facilitating CC-1's travel to Turkey and then to Syria, and their admission would also risk confusion of the issues under Rule 403.

**2. Statements of CC-2**

The defendant also seeks to offer following exhibits containing statements exchanged between CC-2 and third parties. These statements, as described below, are irrelevant and inadmissible hearsay.

First, the defendant seeks to offer several Facebook exchanges from late 2015 and early 2016, after the defendant's arrest, in which CC-2 comments about events allegedly involving ISIL:

1. DX 100-CC October 2015 messages between CC-2 and [redacted] discussing ISIL's taking responsibility for the crash of a Russian aircraft that killed more than 220 people. During this exchange, CC-2 states, among other things, "That's a disaster . . . Russia will send aircrafts to bombard Sinai."

2. DX 122-BB: A series of messages in March 2016 between CC-2 and [redacted] during which CC-2 appears to be asking [redacted] or an opinion on statements CC-2 is preparing regarding his position on certain terrorist acts and political issues. CC-2 states the following, among other things:

> I renounce and condemn severely what Turkey incurs from treacherous terroristic onslaught amid reticence, disregard, and support from some members of international committee that we witnessed rush to support France against the Paris attacks in a high protest Worth noting in this last explosion that left behind more than a 120 victim between injured or killed that the American embassy had published on its website a warning to its nationals

> from possible explosions the morning of the day of the explosion according to A.H.A agency suggesting that Turkey faces a conspiracy and a real war that targets its safety and will . . . An Egyptian reporter who lives in Istanbul
>
> . . .
>
> [redacted] an Egyptian reporter living in Istanbul - What Turkey incurs from treacherous terroristic attacks amid reticence, disregard, and support from some members of international committee that we witnessed rush to support France against the Paris attacks.
>
> [redacted]dded to statements made to "Masr Al Arbia" that there is an international conspiracy against Turkey confirmed by the fact that the American embassy had published on its website a warning to its nationals from potential explosions the morning of the day of the explosion according to A.H.A agency which is mistrustful and raises suspicion

Again, the only potential basis for admissibility of these statements is they arguably reflect, in the case of DX 100-CC, concern about the fallout in Egypt from ISIL's downing of a Russian airliner in the Sinai, and, in the case of DX 122-BB, an opposition to terrorist attacks in Turkey. However, once again, Rule 803(3) allows for only for admission of statements of the declarant's "*then* existing state of mind." CC-2's state of mind in October 2015 and March 2016 is of no relevance to his state of mind in late 2014 and early 2015, when he was involved in assisting CC-1's travel from the United States to Syria via Turkey. *See Cardascia*, 951 F.2d at 487–89 ("To admit statements of one's state of mind with regard to conduct that occurred eight months earlier as in this case would significantly erode the intended breadth of [the state-of-mind exception in Rule 803(3)]."); *accord United States* v. *Jackson*, 780 F.2d 1305, 1315 (7th Cir. 1986) ("[T]he defendants' criminal intent or lack thereof in January 1983, when the statements were made, was

not an issue at their trial; rather, the issue at trial was whether the defendants had been involved in a fuel-stealing scheme two years earlier.”).

Moreover, at the time the statements were made, CC-2 was aware that he was suspected of facilitating CC-1’s travel to ISIL. On September 6, 2015, after being told by a mutual associate of the defendant’s arrest, and that a news story stated “that Elgammal made a friend of his in Turkey help [CC-1],” CC-2 responded “I am the one meant.” GX 122-A-T. Thereafter, as discussed in previous motion *in limine* briefing in this case, CC-2 persuaded CC-1 to make a video in which CC-1 purported to exculpate the defendant. CC-2 continued to monitor the case. In February 2016, he sent an associate a copy of the indictment and told a mutual associate of his and the defendant’s that he had been “summoned three times because of this issue.”[5] Thus, in addition to being inadmissible hearsay and irrelevant, DX 100-CC and DX 122-BB should be excluded under Rule 403, because their admission would create a danger of confusing the issues, by necessitating the presentation of additional evidence by the Government to fairly explain the context in which CC-2 made the statements

Second, the defendant seeks to offer CC-2’s conversations with different individuals, about various topics including moving to Turkey.

3. DX 122-DD: December 2014 through June 2015 messages between CC-2 and [redacted] [redacted] iscussing a variety of topics, including Abdel Fattah al-Sisi, the Egyptian President; the Muslim Brotherhood; and [redacted] search for employment, including the possibility of moving to Turkey.

---

[5] The Government does not currently intend to offer this communication into evidence at trial. However, it reserves the right to do so, depending on whether DX 100-BB, DX-100-CC, or similar communications (to the extent any exist) are admitted.

4. DX 122-AA: A series of messages in July 2015 between CC-2 and [redacted] during which CC-2 and [redacted] discuss how CC-2 could purchase computer equipment and how a news outlet had stolen [redacted]s "work."

5. DX 122-EE: February 26, 2016 messages between CC-2 and [redacted]garding [redacted] desire to move to Turkey.

6. DX 122-FF: November 2, 2014 messages between CC-2 and [redacted] during which they discuss [redacted] moving to Turkey, advice from CC-2 about potential job opportunities, and the coup in Egypt. At the end of the exchange, [redacted] asks CC-2 to delete the conversation, and CC-2 responds "Ok."

These exchanges contain numerous pieces of inadmissible hearsay. Further, it is irrelevant that CC-2 may have helped other people, in addition to CC-1, get to Turkey and that those individuals went to Turkey for apparently non-nefarious purposes. *See United States* v. *Walker*, 191 F.3d 326, 336 (2d Cir. 1999) (affirming, in case involving fraudulent asylum applications, exclusion of evidence that defendant had "prepared other, non-fraudulent applications" because evidence "was simply irrelevant to whether the applications charged as false statements were fraudulent"); *United States* v. *Williams*, 205 F.3d 23, 34 (2d Cir. 2000) (rejecting defense argument that "evidence of innocent travel [to Jamaica] was necessary to rebut the government's allegation that [the defendant] had been involved in other cocaine importations from Jamaica"). Accordingly, the Court should exclude DX-122-DD, DX-122-AA, DX-122-EE, and DX-122-FF.

Finally, the defendant seeks to offer DX 123-AA, a June through September 2015 exchange between CC-2 and a relative of CC-1's ("Relative-1"). During this exchange, Relative-1 implores CC-2 to try to get CC-1 (who was in Syria at the time) to travel to Turkey and asks whether CC-2 is able to provide any "reassurance" about CC-1. Relative-1 also asks

CC-2 if CC-2 is "going to join too," and CC-2 responded, "Of course not." Relative-1 also sent a photograph of CC-1 to CC-2.

Again, this exchange lacks any apparent relevance and contains significant portions of inadmissible hearsay. The fact that CC-2 made a statement that he was not interested in trying to Syria himself hardly has any relevance to whether the defendant and CC-2 facilitated the travel of CC-1 to Syria to join and fight with ISIL. Accordingly, DX-123-AA-TT should be excluded.

**3. The Court Should Preclude the Defendant from Offering Statement Regarding his Arrival in Malaysia**

The defense is also seeking to offer DX 100-DD, a June 28, 2014 message from to the defendant in which states: "Peace be on you, may you be well every year. We arrived to Malaysia thank God. You introduced me to a wonderful man in Jakarta may God reward you all goodness." This statement bears no apparent relevance to any of the facts at issue at trial and constitutes inadmissible hearsay.

## II. The Court Should Preclude the Testimony of Ashkan Soltani

On December 19, 2016, more than two months after the deadline set by the Court for defense expert disclosures, the defense sent the Government an e-mail providing the resume "of our expert who is qualified to testify about Facebook and other social media platforms." The attachment contained the resume of Mr. Ashkan Soltani. Ex. A. The untimely notice contained no other information regarding Mr. Soltani's opinions or the bases for those opinions. The Court should preclude testimony from Mr. Soltani, in light of the defendant's untimely and insufficient notice or, in the alternative, require the defense to provide more fulsome disclosures by Thursday, December 29, 2016.

*First*, the defendant's disclosure is untimely. On August 3, 2016, the Court so-ordered a pre-trial schedule in which defense expert notice was due October 17, 2016. *See* ECF No. 54. The defendant did not purport to file any expert notice until over two months past that deadline, despite repeated the Government's repeated requests for reciprocal discovery and expert disclosures.

*Second*, the disclosure is insufficient. Rule 16(b)(1)(C) requires the defendant to "give to the government a written summary of any testimony that the defendant intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence as evidence at trial." Fed. R. Crim. P. 16(b)(1)(C). "This summary must describe the witness's opinions, the bases and reasons for those opinions, and the witness's qualifications." *Id*.

Here, nothing in the defendant's disclosure gives any clue as to the "witness's opinions" or the "bases and reasons for those opinions." *Id.* The defendant's claim that the Government has not provided "notice regarding what you intend to elicit and argue about certain social media records," *see* Ex. A, does not excuse the defendant from the requirements of Rule 16(b)(1)(C). The Government currently does not intend to elicit any expert testimony regarding Facebook or social media *per se*,[6] and defendant has cited no other basis for the Government to provide notice

[6] The Government does intend to call custodians from social media providers to testify as fact witnesses, about, among other things, the services that the social media provider offers; the records provided to the Government in this case; the meaning of various fields in the records; the date that the records were provided to the Government; and the effect on the records when a user deletes particular communications. Further, as noted in its own expert notice, the Government anticipates that its expert on militant jihadist groups will offer testimony about "the meaning of certain jargon used by the defendant and his co-conspirators or jargon that appears in the materials on social media accounts used by the defendant and/or his co-conspirators, including the terms 'daesh,' 'the State,' 'caliphate,' 'Sham,' and 'mujahedeen.'"

about the testimony it intends to elicit from fact witnesses or the arguments it intends to make to the jury. Moreover, allowing the defendant to wait to serve expert notice on the eve of, or during, trial would obviate the purpose of Rule 16(b)(1)(C)—"to minimize surprise that often results from unexpected expert testimony, reduce the need for continuances, and to provide the opponent with a fair opportunity to test the merit of the expert's testimony through focused cross-examination." Fed. R. Crim. P. 16 advisory committee's note.

*Finally*, without proper sufficient notice, it is impossible to determine whether Mr. Soltani's testimony would comply with Federal Rule of Evidence 702 or whether it is relevant at all. Rule 702 outlines the district court's gatekeeping function with respect to expert testimony:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

The party that proffers expert testimony bears the burden of showing that it is admissible. *See Bourjaily* v. *United States*, 483 U.S. 171, 172-73 (1987).

The trial court must also find that proposed expert testimony is both relevant and reliable prior to admitting it into evidence. *Daubert* v. *Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589-90 (1993); *see also Kumho Tire Company, Inc.* v. *Carmichael*, 526 U.S. 137 (1999). Specifically, in *Daubert*, the Court held that the Federal Rules of Evidence "assign to the trial judge the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." 509 U.S. at 597. "*Daubert* applies to both defense and government experts." *United States* v. *Yousef*, 327 F.3d 56, 148 (2d Cir. 2003).

Further, Federal Rule of Evidence 403 applies with special force to expert testimony: "Expert evidence can be both powerful and quite misleading because of the difficulty in evaluating it. Because of this risk, the judge in weighing possible prejudice against probative force under Rule 403 . . . exercises more control over experts than over lay witnesses." *Daubert*, 509 U.S. at 595 (internal citations omitted).

Here, the defendant's barebones disclosure that Mr. Soltani may provide testimony "about Facebook and other social media platforms," coupled with his resume, provides no basis to determine whether the requirements of Rules 702, 401, and 403 are met in this case. Moreover, based on Mr. Soltani's resume, it appears his experience relates largely to do with areas—including National Security Agency surveillance programs, "artificial intelligence," "big data," online privacy, consumer protection, price discrimination, and network security—that have nothing to do with this matter.

In sum, the defendant's disclosure is untimely and insufficient. Without further specificity as to Mr. Soltani's opinions and the bases for those opinions, the Government is not in a position to substantively challenge any testimony under Rule 702, 401, or 403, or to consider retaining (at this late stage) its own expert to counter or rebut Mr. Soltani's potential testimony, and the purpose of Rule 16(b)(1) is seriously undermined. Accordingly, the Court should preclude Mr. Soltani's testimony or require the defense to provide disclosures that comply with Rule 16(b)(1)(C) by Thursday, December 29, 2016.

**III. This Court's Should Not Alter its Ruling Admitting Evidence of the Defendant's Statement to CC-2 Regarding his Desire to be in Egypt with an AK-47 and Four Magazines**

On December 19, 2016 this Court ruled admissible (a) the defendant's July 1, 2014 statements to CC-2 regarding his desire to bring an AK-47 and four magazines to Egypt, and (b) the messages between CC-2 and the defendant regarding CC-2's desire to travel to Turkey, including the defendant's statement that CC-2 was a "Daesh gigolo," as "direct evidence of the charged conspiracy because they demonstrate defendant's familiarity with military weapons, CC-2's support for ISIL, and Turkey's status as a destination for those who want to join ISIL." Dec. 19, 2016 Tr. at 61-62. In his opposition to the Government's December 9, 2016 Motions *in Limine*, the defendant asks that the Court withdraw its ruling because the Arabic to English translation of the defendant's statement "You are a Daesh gigolo" is more accurately translated as "You're too wimpy to be Daesh." Def.'s Opp. to Gov't Second Motions *in Limine*, at 9-10. The Arabic translator retained by the Government has reviewed this communication and revised the translation as follows:

| | |
|---|---|
| The defendant: | All of us are in deep sadness. I wish I could be in Egypt and have a Kalsh [abbreviation for Kalshnikov / AK-47] and four magazines[.] |
| CC-2: | May God ke [sic]. May God be with us. I am traveling. |
| The defendant: | Good. To where? Iran or Daesh? |
| CC-2: | Hahahaha[.] [Sending the defendant an image of a tourism visa, in his name, to Turkey valid from June 10, 2014 through August 7, 2014] Turkey |
| The defendant: | You are too sissy for Daesh. Congratulations. I am coming to visit you, man. It's a must. |

CC-2: Man, where is Daesh[?] [slang sarcasm] Are you coming to Turkey?

Gammal: Hush hush. Yeah. To visit you and show you around. We will go to Kusadasi . . . a city over there.

GX 120-A-T at 44-45. The Government respectfully submits that this revised translation should not alter the Court's prior ruling. First, the statements still "demonstrate the defendant's familiarity with military weapons[.]" Dec. 19, 2016 Tr. at 62. In addition, the statements still demonstrate "CC-2's support for ISIL," particularly given that, when the defendant learns CC-2 is "traveling," his first response is to ask whether CC-2 is going to "Iran or Daesh." *Id.* Finally, given CC-2's apparently sarcastic "Man where is Daesh," response to the defendant, the exchange still can be read to demonstrate the defendant's and CC-2's familiarity with Turkey as a destination for those who want to join ISIL. *Id.* As such, the Court should not change its prior ruling.

**CONCLUSION**

For the reasons set forth above, the Government respectfully requests that the Court preclude statements, offered by the defendant, (a) made by the defendant in the course of communications with third parties, and marked as DX 100-BB, DX 100-CC, DX 100-DD, and DX 2-AA; (b) made by CC-2 in the course of communications with third parties and marked as DX 122-AA, DX 122-BB, DX 122 CC, DX 122-DD, DX 122-EE, DX 122-FF, DX 123-AA, and (c) made by a third party, [redacted] and marked as DX 100-DD. In addition, the Court should preclude Ashkan Soltani's testimony or require the defense to provide disclosures that comply with Rule 16(b)(1)(C) by Thursday, December 29, 2016. Finally, the Court should not alter its ruling admitting evidence of the defendant's discussion with CC-2 regarding his desire to be in Egypt with an AK-47 and four magazines.

Dated: New York, New York
December 27, 2016

Respectfully submitted,

PREET BHARARA
United States Attorney for the
Southern District of New York

By: ______________________________

Andrew J. DeFilippis
Brendan F. Quigley
Negar Tekeei
Assistant United States Attorneys
Tel.: 212-637-2231/2190/2482