```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - -    x
UNITED STATES OF AMERICA            :
                                    :
       - v -                        :       MOTION IN LIMINE
                                    :       15 Cr. 588 (ER)
AHMED MOHAMMED EL GAMMAL,           :
         Defendant.                 :
- - - - - - - - - - - - - - - -    x
```

The defense respectfully moves that this Court allow Josiah Roloff, a proposed defense expert in digital forensics, to testify via live videoconference.

**Background**

A word of background is necessary to appreciate the defense's request.  On October 3, 2016, the government produced a draft exhibit list that included El Gammal's "Toshiba Laptop," unspecified "Videos from Toshiba Laptop," and "Translations of Videos" (which were not provided).  GX-1, 1-B-N, and 1-BT-NT.  The draft exhibit list also included El Gammal's "Apple Ipad" and an accompanying "Report."  GX-3 and 3-A.  At the same time, the government also served notice that it intended to present expert testimony from FBI Computer Forensic Examiner Craig M. Roth and FBI Senior Digital Forensic Examiner Mary F. Horvath regarding "forensic analysis of electronic devices, including computers, cellphones, and hard drives."

The defense objected to the adequacy of this notice.  Dkt. No. 81, at 6.  During the October 28 status conference, we sought clarification regarding what evidence, specifically, the government intended to introduce from El Gammal's various "electronic devices," in order to facilitate efficient trial preparation and cost-effective expert consultation.  With respect to the Toshiba laptop, the government said that it

1

planned to introduce "at most ... two to three of those videos," and promised to provide translations by November 5.  10/28/16 Tr. 3-4.  With respect to the iPad, the government said that it planned to introduce evidence of the IP addresses associated with various communications, Internet searches for a map of Syria, and El Gammal's use of social media accounts, including Facebook.  10/28/16 Tr. 11-12.

On November 13 (not November 5), the government produced final translations of five videos (not three) from El Gammal's Toshiba laptop computer that it proposed to introduce at trial.  GX-11-T to GX-15-T.  (It has since produced a sixth, GX-16-T.)  In general, as the Court knows from the parties' motions in limine, the videos depict atrocities (e.g., abuse and killings of prisoners) and propaganda statements by members of ISIS.  In early December, the defense began communicating with Roloff.  On December 8, we retained him as a consulting expert to examine the forensic image of El Gammal's laptop and the initial extraction report on the iPad.  We selected Roloff because he has provided affordable and timely consultation to our office in past cases.  Roloff reported to us his opinion that it was possible for the videos to have appeared in the laptop's cache without El Gammal having intentionally clicked on them or downloaded them.  Moreover, Roloff noted that the videos were not fully downloaded, indicating that El Gammal did not view them in their entirety.  On December 9, the defense moved in limine to preclude these videos.  At that juncture, with our motion outstanding, we were not certain that we would need a testifying expert because we were not certain what Roth or Horvath would say.  (And as the Court can no doubt appreciate, the Federal Defenders lack unlimited funds to retain multiple experts who may prove unnecessary.)

2

On December 23, the government produced a PowerPoint presentation detailing Roth's proposed trial testimony (GX-5), which reflects that the government plans to elicit Roth's opinion as to the dates and times at which El Gammal accessed these videos.  But it is unclear from the Roth's presentation whether he would agree with Roloff's opinion regarding the videos' provenance and whether El Gammal had watched them in full.  With a deficient disclosure for Roth (and none for Horvath), we objected again, pointing out that it was now too late for us to retain a testifying expert.  Dkt. No. 123, at 3.  On December 28, the government provided a revised extraction report concerning El Gammal's iPad (GX-3A), as well as a PowerPoint presentation reflecting Horvath's anticipated trial testimony (GX-6).  The PowerPoint presentation indicated, for the first time, that the government now planned to elicit evidence that El Gammal's iPad contained an app called "Telegram."  Such testimony would be significant because, as has been reported in the mainstream media, the app is favored by ISIS.  See, e.g., Engel, Inside the App That's Become ISIS' Biggest Propaganda Machine, Business Insider (Nov. 21, 2015), http://read.bi/1TaVfOo.  We therefore asked Roloff to examine the revised iPad extraction report.  He concluded that there is no evidence that El Gammal used the Telegram app.  (Based on the government's late disclosure and that lack of evidence, we intend to object separately to testimony regarding Telegram.)

During the December 29 status conference, this Court ruled that four of the videos were admissible from the Toshiba laptop were admissible.  In light of that confluence of events -- the belated Roth and Horvath disclosures, and this Court's in limine ruling -- we determined that a testifying witness was necessary and asked Roloff.  He is able to testify for the defense as detailed above, but is not available to appear in court in New

3

York during the anticipated dates of the defense case because he is committed to a capital trial in Georgia.  We served the government with expert notice on Roloff on January 1, 2017, adding that we intended to seek video testimony in light of his unavailability to testify in person.

### Argument

As the government itself has observed, "[i]t is long-standing law in this Circuit that in circumstances in which an individual with material information is unavailable to physically appear as an in-court trial witness, live trial testimony of that witness, appearing via close[d]-circuit television ('CCTV'), is permissible."  Gov't Motion To Offer The Testimony of a Witness Via Live Closed-Circuit Television at 6, United States v. Mostafa, 04 Cr. 356 (KBF) (S.D.N.Y. Jan. 29, 2014), Dkt. No. 238 (citing United States v. Gigante, 166 F.3d 75 (2d Cir. 1999)).  As the Second Circuit confirmed in Gigante, this Court has the inherent authority, pursuant to Fed. R. Crim. P. 2 and 57, to permit Roloff to testify as proposed.

In Gigante, the Second Circuit upheld the introduction of testimony "via two-way, closed-circuit television testimony from a remote location," 166 F.3d at 79, over the defendant's Confrontation Clause challenge.  There, the witness, a government informant in the Federal Witness Protection Program, was unable to testify in court for health reasons.  Id. at 80.  Instead, he testified via CCTV and "was visible on video screens in the courtroom to the jury, defense counsel, Judge Weinstein and Gigante.  [He] could see and hear defense counsel and other courtroom participants on a video screen at his remote location."  Id.  While cautioning that "[c]losed-circuit television should not be considered a commonplace substitute for in-court testimony by a witness," the Circuit held: "[u]pon a

4

finding of exceptional circumstances, ... a trial court may allow a witness to testify via two-way closed-circuit television when this furthers the interest of justice." Id. at 81. "Exceptional circumstances," Gigante explained, has the same meaning as in the context of a Fed. R. Crim. P. 15 deposition: the "witness's testimony is material to the case and ... the witness is unavailable to appear at trial." Id. (quoting United States v. Johnpoll, 739 F.2d 702, 708 (2d Cir. 1984)).

Courts have followed Gigante. See, e.g., United States v. Mostafa, 14 F. Supp. 3d 515 (S.D.N.Y. 2014) (Forrest, J.); United States v. Abu Ghayth, 2014 WL 144653 (S.D.N.Y. Jan. 15, 2014) (Kaplan, J.). Indeed, El Gammal's argument is stronger. In Gigante, Mostafa, and Abu Ghayth, the government introduced the videoconference testimony, implicating the defendants' Confrontation rights. Here, the government has no corresponding constitutional interest in requiring in-court testimony, but denying this motion would impinge on El Gammal's constitutional right to present a complete defense.[1]

In this case, the defense meets the Gigante standard. Roloff's testimony is "material" because it negates the inference of guilty knowledge that the government will ask the

---

[1] Neither United States v. Banki, 2010 WL 1063453 (S.D.N.Y. March 23, 2010), nor United States v. Pham, 2015 WL 7871348 (S.D.N.Y. Dec. 4, 2015) compels a contrary result. In Banki, the witnesses resided in Iran and could not be extradited to face perjury charges if they lied. Under those circumstances, the court feared that the oath would not ensure the witnesses' candor or the testimony's reliability. Id. at *2. Roloff is a U.S. citizen subject to domestic criminal prosecution. And in Pham, the court deemed most of the proffered testimony immaterial, id. at *2-4, before rejecting the argument that a final witness was unavailable because the defense had made only "speculative" assertions that her work obligations would prevent her from testifying. By contrast, Roloff's testimony is material and he has a firm conflict.

jury to draw from his possession of the Toshiba laptop videos and the Telegram app.  (Having described the videos as "highly probative" of El Gammal's mental state, Dkt. No. 121, at 10, the government cannot now dispute the materiality of evidence rebutting its preferred inference.)  Specifically, if El Gammal did not intentionally click on the videos or did not watch them in full, that weakens the government's argument that the videos prove his knowledge of ISIS's terrorist activities or his motive and intent.  See Dkt. No. 121, at 6-10.  Indeed, in admitting the videos, this Court reasoned that El Gammal may make this argument to the jury, which may consider the point in determining the weight these videos are due.  Having so ruled, this Court should not deprive the defense of tools necessary to substantiate the argument.

    Second, Roloff is "unavailable" because he is obliged to be present in another judicial proceeding at the same time.  "'Unavailability is to be determined according to the practical standard of whether under the circumstances the [party] has made a good-faith effort to produce the witness to testify at trial.'"  Mostafa, 15 F. Supp. 3d at 519 (quoting Johnpoll, 739 F.2d at 709).  The defense, which would prefer to present Roloff in court, has acted in good faith and with diligence.  We retained him soon after receiving translations of the videos that the government planned to introduce from the Toshiba laptop and determined to seek his testimony days after receiving: (1) Roth's trial PowerPoint reflecting proposed testimony regarding the dates and times on which El Gammal accessed the videos (December 23); (2) Horvath's trial PowerPoint reflecting proposed testimony about the Telegram app on El Gammal's iPad (December 28); and (3) this Court's in limine ruling admitting the videos (December 29).  The defense can take no additional step to procure Roloff's attendance at trial.  See, e.g., Fed.

6

R. Evid. 804(a)(5) (witness unavailable if he "is absent from the trial or hearing and the statement's proponent has not been able, by process or other reasonable means, to procure" his attendance). Roloff is committed to a different trial and he cannot be in two places at once.

## Conclusion

For the foregoing reasons, this Court should allow Roloff to testify via live videoconference.

Dated:     New York, New York
           January 2, 2017
                                    Respectfully submitted,
                                    Federal Defenders of New York

                                    /s/
                                    Daniel Habib, Esq.
                                    Annalisa Miron, Esq.
                                    Sabrina Shroff, Esq.
                                    Attorneys for Defendant
                                        **Ahmed Mohammed El Gammal**
                                    52 Duane Street – 10th Floor
                                    New York, NY 10007
                                    Tel.: (212) 417-8769

TO:        PREET BHARARA, ESQ.
           United States Attorney
           Southern District of New York
           1 St. Andrew's Plaza
           New York, NY 10007

Attn:      **Andrew De Filippis, Esq.**
           **Brendan Quigley, Esq.**
           **Negar Tekeei, Esq.**
           Assistant United States Attorneys