```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - -  x
UNITED STATES OF AMERICA           :
                                   :
        - v -                      :
                                   :    15 Cr. 588 (ER)
AHMED MOHAMMED EL GAMMAL,          :
           Defendant.              :
- - - - - - - - - - - - - - - - -  x
```

**DEFENDANT AHMED MOHAMMED EL GAMMAL'S OPPOSITION**

**TO THE GOVERNMENT'S THIRD MOTIONS IN LIMINE**

 

                                        Federal Defenders of New York
                                        Daniel Habib, Esq.
                                        Annalisa Mirón, Esq.
                                        Sabrina Shroff, Esq.
                                        Attorneys for Defendant
                                               **Ahmed Mohammed El Gammal**
                                        52 Duane Street - 10th Floor
                                        New York, NY 10007
                                        Tel.: (212) 417-8700

```
TO:      PREET BHARARA, ESQ.
         United States Attorney
         Southern District of New York
         1 St. Andrew's Plaza
         New York, NY 10007

Attn:    Andrew DeFilippis, Esq.,
         Brendan Quigley, Esq.,
         Negar Tekeei, Esq.
         Assistant United States Attorneys
```

The defense submits this memorandum of law in opposition to the government's third set of motions in limine ("Gov't Third MILs"), Dkt. No. 122 (Dec. 27, 2016).

**1.   El Gammal's Statements Are Admissible.**

The government has objected to the introduction of three sets of El Gammal's statements on hearsay and relevance grounds. Gov't MILs 2-6.  Each is admissible and relevant.

<u>**DX-2-AA-T**</u>: In August 2015, just before his arrest, El Gammal discussed with Attia Aboualala the shutdown of a Turkish television station run by Egyptian exiles affiliated with the Muslim Brotherhood.  The station appears to have been called "Al Thawra" ("The Revolution") or "Rabia" (the Cairo square where Egyptian troops loyal to Abdel Fattah el-Sisi's military government killed hundreds of protestors backing the deposed Brotherhood-aligned President Mohammed Morsi).

This exchange is not hearsay because it is not offered for its truth, i.e., to prove that an Egyptian television station in Turkey called "Al Thawra" shut down for lack of funds.  Rather, Aboualala's statements are offered to show their effect on the listener, El Gammal, and the knowledge informing his actions. <u>See</u> <u>Smith v. City of New York</u>, 2016 WL 5793410, at *4 (S.D.N.Y. Sept. 30, 2016) ("A statement is admissible non-hearsay when it is offered as evidence of the effect of a statement on the

listener, the knowledge motivating his actions, or his state of mind at the relevant point in time." (citing United States v. Puzzo, 928 F.2d 1356, 1365 (2d Cir. 1991)). Specifically, Aboualala's statements show El Gammal's awareness that Aboualala worked in and was familiar with the television journalism industry in Turkey, in particular Egyptian-run television stations supportive of Morsi and the Brotherhood. That knowledge is relevant because it supports El Gammal's belief that Aboualala had a licit, non-ISIS-related, purpose in Turkey: lawful employment with a Brotherhood television station. In his post-arrest statement a few days later, El Gammal described Aboualala as a journalist working for an "anti-coup channel." The government will no doubt characterize El Gammal's post-arrest statement as false, but he is entitled to rebut that view. Moreover, the government itself plans to introduce similar statements. See GX-120-A-T, at 48-49 (May 2015 exchange between El Gammal and Aboualala about shutdown of "Rabea Channel").

El Gammal's half of the exchange, even if hearsay, is admissible under Rule 106 for completeness. See, e.g., United States v. Johnson, 507 F.3d 793, 796 (2d Cir. 2007). In the alternative, El Gammal's statements serve the non-hearsay purpose of showing his knowledge of anti-Sisi media activity among Egyptians in Turkey (e.g., "I hear about Rabia, Egypt Now,

2

Al Sharq, and Mekammeleen"); as well as his state of mind in reacting to Sisi's criticism of the Brotherhood ("Sisi's dogs say that the Brotherhood guys have this much money and equipment"). Moreover, Rule 803(3) allows the admission of El Gammal's statements to prove his state of mind. Rule 803(3) permits a defendant to introduce his own statements. United States v. Terry, 702 F.2d 299, 314 (2d Cir. 1983); United States v. Kadir, 718 F.3d 115, 124 (2d Cir. 2013). Indeed, "relevant declarations which fall within the parameters of Rule 803(3) are categorically admissible, even if they are self-serving and made under circumstances which undermine their trustworthiness. The truth or falsity of such declarations is for the jury to determine, and their 'self-serving nature' goes only to their weight." United States v. Lawal, 736 F.2d 5, 8 (2d Cir. 1984).

El Gammal's knowledge of anti-Sisi activity in Turkey and his reaction to Sisi's criticism of the Brotherhood is relevant evidence of El Gammal's interest in Egyptian politics and the anti-Sisi movement. That evidence, in turn, will offer the jury important context for appreciating beliefs that the government will call radical. The government plans to saturate the jury with evidence that, it contends, shows El Gammal's militarist and violent attitude regarding Egypt. For example, the government will argue that El Gammal wanted "the State" to "conquer Egypt" (GX-100-J-T, at 6); that he would "celebrate if

3

anyone captures some Egyptian pilots" (GX-100-K-T, at 13); that "[i]f Daesh gets to Egypt, I will go join them so I can torture the Egyptians" (GX-100-O-T, at 3); and that he wished to "be in Egypt" with an AK-47 and "four magazines" (GX-120-A-T, at 33-34). To defend against the government's case, the defense must demonstrate the historical and political context for such hyperbole, namely, El Gammal's intense (and understandable) antipathy for Sisi's regime.

**DX-100-BB-T**: In January 2014, El Gammal discussed with Facebook user ▇▇▇▇▇▇ various topics, including El Gammal's negative opinion of Egyptian billionaire Naguib Onsi Sawiris (whom El Gammal associates with the Sisi military and blames for economic troubles -- a "dollar shortage" -- that undermined Morsi); El Gammal's opinions on Americans ("It's true that Americans are infidels but at least they have ethics and principles ... Average Americans are good people"); and his distaste for Sisi and his backers ("To me a prostitute here is a million times more honorable than those women wearing Hijab who dance for El Sisi").

These statements are admissible non-hearsay because they represent opinions, not factual assertions tendered for their truth. "Words or conduct offered as circumstantial evidence of an actor's beliefs or thoughts do not constitute statements under the rule against hearsay. Thus, the rule against hearsay

4

does not bar evidence introduced to show a party's viewpoint or attitudes." 5 Weinstein's Fed. Evid. § 801.11[5][c] (LexisNexis 2016). Cf. Rule 803(3) (barring statement of "belief" only if offered "to prove the fact ... believed"). El Gammal's statements are not falsifiable. It is impossible to disprove such quintessential opinions as the view that an American prostitute is more "honorable" than a pro-Sisi Muslim. Consequently, such statements do not implicate the hearsay rule's "central concern" -- the "reliability" of a non-testifying declarant's assertions of fact. United States v. Kaiser, 609 F.3d 556, 576 (2d Cir. 2010).

In any case, even if hearsay, these statements fall within Rule 803(3), as the government appears to acknowledge (Gov't Third MILs 4-5). Indeed, these statements, in addition to showing El Gammal's state of mind regarding Egyptian politics (relevant for the reasons just given with respect to DX-2-AA-T), also reflect an affinity for America and Americans inconsistent with his alleged support for ISIS. Hatred of America is an ISIS article of faith. (A recent article in ISIS's propaganda magazine Dabiq entitled "Why We Hate You and Why We Fight You" is but the most direct expression of the point. Dabiq Issue 15, at 30, http://bit.ly/2atJoNE.) Hence the error of the government's contention that the evidence is "irrelevant" and "risks confusion" because El Gammal "is charged with supporting

5

ISIL, not hating or even disliking the United States." Gov't Third MILs 5. Evidence of beliefs inconsistent with -- in fact, antithetical to -- the mental state required to commit the charged offenses is far from irrelevant or confusing. On the contrary, it is powerful and essential to a complete defense.

The government's objection that the evidence has only "minimal relevance" because it dates to January 2014, as opposed to "later in 2014," when El Gammal "began voicing his support for ISIL," Gov't Third MILs 4-5, is not well taken. The government will offer of statements by El Gammal at the same time or earlier. See, e.g., GX-100-S-T and GX-120-A-T (Facebook exchanges with Aboualala beginning in September 2013); GX-100-E-T (Facebook exchanges with ▓▓▓▓ beginning in August 2013); GX-110-B (Facebook exchanges with Samy El-Goarany beginning in March 2013). And a centerpiece of the government's case figures to be an April 2014 exchange with ▓▓▓▓ concerning El Gammal's purported support of ISIS. The government may urge the jury to discount evidence of what El Gammal believed and said less than three months earlier, but that argument goes to weight, not admissibility.

**DX-100-CC-T**: In July 2014, El Gammal discussed with ▓▓▓▓ the latter's efforts to leave Egypt. Among other things, El Gammal said: "All Egyptians are in Turkey now," and "It's easy to find Egyptian roommates there. There's a lot of them

6

and they work for the new (TV) channels." El Gammal also commented on the benefits of immigrating to America instead of Europe: "In Europe you remain a servant but America makes you feel at home from day 1. ... Nobody asks you w[h]ere you're from or says your English is this or that. They think you're an American and treat you as such from day 1. No discrimination."

The government's hearsay objection (Gov't Third MILs 5-6) is misplaced. The defense will not offer these statements to prove the truth of the matters asserted, viz., the presence or professions of Egyptian exiles in Turkey, and the defense does not oppose a limiting instruction to that effect. Rather, these statements reflect El Gammal's understanding that this was true, and so tend to support the defense argument that El Gammal would have perceived nothing illicit or unusual about Egyptians (such as Aboualala or El-Goarany) traveling to Turkey. That is, the statements buttress El Gammal's belief that an Egyptian would have reasons to travel to Turkey other than using Turkey as a way station for transit to Syria.

The government's objection to the relevance of El Gammal's favorable statements regarding America (Gov't MILs 6) is half-hearted, for good reason. As explained above with respect to DX-100-BB-T, such non-hearsay opinion statements undermine the charge that El Gammal intentionally assisted an anti-American foreign terrorist organization.

7

**2.   Aboualala's Statements Are Admissible.**

The government objects to the introduction of various statements by Aboualala on hearsay and relevance grounds.  Gov't Third MILs 6-10.  Each is admissible and relevant.

**DX-122-BB-T and 122-CC-T**: In these communications, Aboualala voices disagreement with ISIS's terrorist activities in Turkey (DX-122-BB-T, which dates to March 2016) and in downing a Russian aircraft (DX-122-CC-T, October 2015).  First, these statements are not hearsay because the defense offers them not to prove their truth (i.e., that "Russia will send aircrafts to bombard Sinai," DX-122-CC-T, at 4) but to show Aboualala's attitudes, viewpoints, and beliefs.  See 5 Weinstein's Fed. Evid. § 801.11[5][c].  Similarly, these statements prove Aboualala's state of mind under Rule 803(3).  The government appears to recognize as much, but contends that these statements lack relevance because they postdate the conspiracy and lack credibility because Aboualala was motivated to exculpate himself.  Gov't Third MILs 7-8.

The latter objection answers itself.  "[T]he likelihood that the declarant is misrepresenting his state of mind is not an additional qualification to the admissibility of state of mind hearsay statements." United States v. Cardascia, 951 F.2d 474, 487 (2d Cir. 1991).  See Lawal, 736 F.2d at 8 ("[R]elevant declarations which fall within the parameters of Rule 803(3) are

8

categorically admissible, even if they are self-serving and made under circumstances which undermine their trustworthiness."). And the government's protest that introduction of this statement will "create a danger of confusing the issues ... by necessitating the presentation of additional evidence ... to fairly explain the context" rings hollow. The government has already secured the admission of evidence that Aboualala orchestrated the creation of El-Goarany's false exculpatory video (GX-143). As a result, the jury will have ample "context" to assess Aboualala's statements and whether their disagreement with ISIS is merely "self-serving." Cardascia, 951 F.2d at 487.

As to the former objection, as discussed with respect to DX-100-BB-T above, any time lag between the statements and the conspiracy goes to weight, not admissibility. Moreover, the government is now shifting positions as to the temporal scope of the conspiracy (and thus, the relevant time period for evaluating Aboualala's state of mind). In urging the admission of the El-Goarany false exculpatory video, the government insisted that this conspiracy "was still very much ongoing" in September 2015. Dkt. No. 91, at 26. Indeed, the government went further, contending that "the conspiracy was ongoing and continued ... through [El-Goarany's] death in November 2015." Dkt. No. 91, at 21. See also 12/19/16 Tr. 46 (rejecting the defense's argument that the conspiracy ended when El-Goarany

9

joined ISIS).  Indeed, the government seeks to introduce co-conspirator statements made as late as December 2015.  GX-113-A-T, at 24 (Aboualala message to El-Goarany).

Having persuaded this Court to accept its view of the conspiracy's broad scope, the government now reverses course, maintaining that the critical time is limited to "late 2014 and early 2015."  Gov't MILs 7.  But "judicial estoppel 'generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase.'"  Chevron Corp. v. Donziger, 833 F.3d 74, 127 (2d Cir. 2016) (quoting New Hampshire v. Maine, 532 U.S. 742, 749 (2001)).  So too here.  The government has told this Court that the conspiracy lasted until at least November 2015.  Consequently, Aboualala's October 2015 statement (DX-122-CC-T), made during the conspiracy, is relevant.  His March 2016 statement (DX-122-BB-T), made four months later -- a far cry from the eight months rejected in Cardascia or the two years rejected in United States v. Jackson, 780 F.2d 1305 (7th Cir. 1986) (both cited at Gov't Third MILs 7-8) -- is, too.

Finally, both statements may be admitted pursuant to Rule 806, which provides: "When a hearsay statement -- or a statement described in Rule 801(d)(2)(C), (D), or (E) -- has been admitted in evidence, the declarant's credibility may be attacked, and then supported, by any evidence that would be admissible for

10

those purposes if the declarant had testified as a witness.  The court may admit evidence of the declarant's inconsistent statement or conduct, regardless of when it occurred or whether the declarant had an opportunity to explain or deny it."

The government will offer numerous statements by Aboualala pursuant to the co-conspirator exception, Rule 801(d)(2)(E), including some supportive of ISIS.  Specifically, the government will show that in June 2014, Aboualala posted on Facebook: "Whom among us does not dream of the day when the Caliphate will be established according to the Prophecy's approach?"  GX-122-E-T, at 6.  And in September 2014, he wrote to El Gammal on Facebook: "There is a probability I will join the State."  GX-120-A-T, at 39.  Rule 806 subjects these hearsay declarations to impeachment with inconsistent statements critical of ISIS.  "[F]or two statements to be inconsistent, they 'need not be diametrically opposed.'"  United States v. Trzaska, 111 F.3d 1019, 1024 (2d Cir. 1997) (quoting United States v. Agajanian, 852 F.2d 56, 58 (2d Cir. 1988)).  Rather, "statements are inconsistent if there is any variance between the statement and the testimony that has a reasonable bearing on credibility.  The test should be, could the jury reasonably find that a witness who believed the truth of the facts testified to would have been unlikely to make a ... statement of this tenor?"  Id. at 1025 (internal quotation marks and citations omitted).  Here, a jury could reasonably discredit

11

the government's evidence of Aboualala's support for ISIS based on his subsequent criticism of ISIS.

**DX-122-AA-T**: In July 2015, Aboualala and Facebook user ▆▆▆▆▆▆▆▆ discussed Aboualala's purchase of an Apple laptop for use in video editing projects. Aboualala's statements in this exchange are admissible because they are mostly non-hearsay questions, see United States v. Oguns, 921 F.2d 442, 449 (2d Cir. 1990), or statements of future intent exempted by Rule 803(3), see United States v. Badalamenti, 794 F.2d 821, 826 (2d Cir. 1986). ▆▆▆▆▆▆▆▆ statements are admissible for their effect on Aboualala or for completeness under Rule 106. The exchange is relevant because the government intends to offer evidence that, two days later, Aboualala told El Gammal: "I need a laptop. ... Apple ... because I will join the State and this is their condition." GX-102-A-T, at 2. That latter statement is a joke, as El Gammal's responsive laughter makes clear. But Aboualala's exchange with ▆▆▆▆▆▆▆▆" about buying an Apple laptop for professional use (in which Aboualala sent the same photo comparing three Macbooks side-by-side as he sent El Gammal) is necessary so to confirm. Limiting the evidence to the government's version would mislead the jury.

**DX-122-DD-T, DX-122-EE-T, and DX-122-FF-T**: In light of the government's revised exhibit list (which was produced December 30, 2016), the defense is still considering whether to introduce

these exhibits. Accordingly, we ask this Court to defer ruling on the government's objection at this juncture.

**DX-123-AA-T**: In June 2015, Mohamed El-Goarany, Samy's father, asked Aboualala via Facebook message: "Are you going to join too?" Aboualala responded: "Of course not." This exchange is admissible. El-Goarany's question is non-hearsay and Aboualala's answer is a statement of future intent. See Oguns, 921 F.2d at 449; Badalamenti, 794 F.2d at 826. Notwithstanding the government's dismissive contention that Aboualala's answer "hardly has any relevance" to the charged conspiracy (Gov't Third MILs 10), evidence of Aboualala's firm refusal to join ISIS makes the fact of his participation in a conspiracy to join ISIS less likely. That is all that's necessary for relevance. Independently, Aboualala's statement is admissible under Rule 806 to impeach his September 2014 and July 2015 statements to El Gammal that he plans to join ISIS. See GX-120-A-T, at 39; GX-102-A-T, at 2.

3. ▮▮▮▮▮▮▮▮▮▮ **Statement About Malaysia Is Admissible.**

In June 2014, Facebook user ▮▮▮▮▮▮▮▮▮▮ wrote to El Gammal: "We arrived to Malaysia thank God. You introduced me to a wonderful man in Jakarta may God reward you all goodness." DX-100-DD-T. This statement is admissible under Rule 106 because it provides necessary context to GX-100-U-T, which is also a Facebook conversation between ▮▮▮▮▮▮▮▮▮▮ and El

13

Gammal. In the government's exhibit, which dates to January 2015, ▓▓▓▓▓▓▓▓ tells El Gammal that he is still in Malaysia (hence the incongruity of the government's contention that DX-100-DD-T, which reflects the same information, is irrelevant) but is "trying to arrange for a trip to Turkey." El Gammal responds that "Turkey is a must," mentions that Aboualala is there, and promises to visit ▓▓▓▓▓▓▓▓ there. The defense anticipates that the government will use GX-100-U-T to insinuate that El Gammal was helping ▓▓▓▓▓▓▓▓ to travel to Syria via Turkey, just as he is alleged to have helped El-Goarany. DX-100-DD-T clarifies that El Gammal did help ▓▓▓▓▓▓▓▓ travel by introducing him to "a man in Jakarta" -- but to Malaysia, not Syria.

4. **El Gammal's Conversation With Aboualala Regarding The Latter's Travel To Turkey Is Inadmissible.**

The defense has explained why the correct translation of El Gammal's statement ("You're too wimpy to be Daesh") counsels exclusion of this exchange. Dkt. No. 120, at 8-9. The government now concedes the accuracy of the defense's translation. Contrary to the government's initial contention, El Gammal did not tell Aboualala: "You are a Daesh gigolo." Rather, El Gammal said: "You're too wimpy to be Daesh" or "You are too sissy for Daesh." Gov't Third MILs 14.

14

This Court admitted the exchange on the ground that "the statements, taken together, are direct evidence of the charged conspiracy because they demonstrate the defendant's familiarity with military weapons, [Aboualala]'s support for ISIL, and Turkey's status as a destination for those who want to join ISIL."  12/19/16 Tr. 62.  The defense acknowledges that the revised translation does not affect this Court's ruling concerning El Gammal's "familiarity with military weapons" (or his "wish" to "be in Egypt" with an AK-47 and "four magazines").  But the revision negates any inference that the conversation reflects Aboualala's "support for ISIL" and, by extension, Turkey's status as a "destination" for ISIS partisans.  Rather, it is now clear that the entire exchange is tongue-in-cheek.  When El Gammal asks whether Aboualala is traveling to "Iran or Daesh," Aboualala responds with laughter and an image of a Turkish tourist visa.  That prompts El Gammal to continue the joke: "You are too sissy for Daesh."  Aboualala's response ("Man where is Daesh") -- which the government's translator has opined is "slang sarcasm" -- is opaque.  (The defense is at a loss to grasp the government's assertion that this last rejoinder proves the speakers' "familiarity with Turkey as a destination for those who want to join ISIL."  Gov't Third MILs 15.)

This Court's ruling was premised on the belief that El Gammal had called Aboualala a member of Daesh.  In fact, El

15

Gammal said the opposite -- that Aboualala could not be a member because he was too "wimpy." As a result, the exchange is irrelevant under Rules 401 and 402, risks confusion and prejudice under Rule 403, and should be excluded.

## Conclusion

For the foregoing reasons, the government's third set of motions in limine should be denied.

Dated:     New York, New York
           January 2, 2017

                                    Respectfully submitted,
                                    Federal Defenders of New York

                                    /s/
                                    Daniel Habib, Esq.
                                    Annalisa Mirón, Esq.
                                    Sabrina Shroff, Esq.
                                    Attorneys for Defendant
                                         **Ahmed Mohammed El Gammal**
                                    52 Duane Street - 10th Floor
                                    New York, NY 10007
                                    Tel.: (212) 417-8700