

U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

January 5, 2017

The Honorable Edgardo Ramos
United States District Judge
Southern District of New York
Thurgood Marshall U.S. Courthouse
40 Foley Square, Room 2102
New York, New York 10007

      Re:    **United States v. Ahmed Mohamed El Gammal,**
             15 Cr. 588 (ER)

Dear Judge Ramos:

      The Government respectfully moves to preclude the testimony of Josiah Roloff, whom the defense has "noticed" as an expert to testify regarding forensic evidence located on a Toshiba laptop and Apple iPad seized from the defendant's residence. As explained in further detail below, the defendant has provided untimely and insufficient notice of Roloff's testimony just days before trial.

      Moreover, in the event the Court permits Roloff to testify, the Government respectfully requests that the Court deny the defendant's request to permit Roloff to appear remotely via CCTV, as no proper showing has been made pursuant to Federal Rule of Criminal Procedure 15 to warrant such relief.

      **I.**    **The Court Should Preclude the Defense from Offering Testimony from Josiah Roloff**

      On January 1, 2017, the defense provided belated and insufficient notice of its intent to call Josiah Roloff as an expert to offer an opinion as to forensic evidence located on a Toshiba Laptop and Apple iPad seized from the defendant in this matter. The relevant evidence on which the defense expects Roloff to opine consists of: (1) four videos containing militant or ISIS-related content that were located the Toshiba laptop,[1] and (2) a section of a forensic extraction report indicating that the messaging application Telegram was installed on the defendant's Appile iPad. The Court should preclude such testimony because the notice provided by the defense was untimely under this Court's scheduling Order, and the substance of its notice insufficient under Rule 16 of the Federal Rules of Criminal Procedure and 701 of the Federal Rules of Evidence.

---

[1] Although the Government initially identified five videos that it intended to offer from the defendant's Toshiba laptop, it now only intends to offer four of those videos.

Honorable Edgardo Ramos
January 5, 2017
Page 2 of 8

### A. The Defendant's Notice is Untimely

As an initial matter, the defendant's notice was untimely. Under the Court's pretrial scheduling Order, any defense expert notice was due on October 17, 2016. The defense, however, did not provide notice of its intent to call Mr. Roloff until January 1, 2017 – over two months after the Court-ordered deadline and indeed nearly a month after the date on which trial of this matter originally was scheduled to commence. What makes the tardiness of this disclosure more egregious, however, is the fact that the defense retained Roloff as a "consulting expert" on December 8, 2016, more than three weeks prior to providing notice to the Government.[2] Moreover, as the limited Rule 26.2 materials produced by the defense on January 1, 2017 make clear, *see* Exhibit A, the defense had a call with Mr. Roloff on December 14, 2016, at which time they discussed the anticipated topics of his testimony. Notwithstanding that, the defense elected to wait more than an additional two weeks before providing notice of Roloff's testimony.[3] *See United States* v. *Mahaffy*, No. 05-CR-613(S-3) (ILG), 2007 WL 1213738, at *3 (Apr. 24, 2007) (precluding expert testimony for untimely disclosure and noting that the defendant's "late submission is particularly egregious because he has been in possession of the Superseding Indictment for over a year, ample time to determine the topics upon which his expert would testify"); *United States* v. *Wilson*, 493 F. Supp. 2d 484, 488 (E.D.N.Y. 2006) (finding untimeliness of defense expert disclosure a "a separate and independent basis for precluding" expert testimony); *see United States* v. *Petrie*, 302 F.3d 1280, 1288 (11th Cir. 2002) (affirming district court's preclusion of expert testimony for untimely disclosure).

Tacitly acknowledging the impropriety of such late notice, defense counsel contends that Mr. Roloff "was retained on December 8, one day after the government provided translations for most of the videos it is introducing from the laptop." This does not change the calculus or in any way excuse the delay. First, regardless of when translations were provided, the Government informed the defense of its intent to offer videos from the relevant laptop at least as early as

---

[2] In a filing on January 2, 2017, the defendant further seeks to excuse his untimely notice by arguing that as of December 9, 2016 "we were not certain that we would need a testifying expert because we were not certain what Roth or Horvath would say." *See* Dkt. No. 135 at 2. That argument is unavailing. The defense had been provided with copies of Roth and Horvath's forensic reports in discovery at least as early as April 2016. Moreover, as noted above, the Government notified defense counsel that it intended to offer videos from the Toshiba laptop on October 3, 2016, two weeks prior to their deadline to provide expert notice. The fact that they had not yet decided to actually expend funds necessary to retain Roloff does not support a different result. Based on this record, they could have timely provided notice thereby complying with this Court's scheduling order (and not unfairly prejudicing the government) and then made a decision as to whether or not to expend the funds. There is no requirement that an expert actually be retained in order to provide written notice of an intent to offer expert testimony.

[3] Additional Rule 26.2 materials produced by the defendant on January 4, 2017, *see* Exhibit B, show that the defense had at least two further calls discussing the anticipated testimony but nevertheless waited until January 1 to provide notice.

October 3, 2016, when it disclosed its initial exhibit list. The defense therefore had all of the information needed to consult their own information technology staff regarding the forensic significance of the videos, and to make appropriate decisions at that time regarding what further analysis or expert testimony might be necessary. Second, even before receiving draft or final translations of the videos, defense counsel could have consulted with an interpreter—or with their own client, who is a native Arabic speaker—rather than awaiting the Government's final translations. Indeed, one of the videos is in English, and the Government previously provided draft translations of the remaining three videos on November 13, 2016. While such translations may not have been final, they certainly provided the defense with ample notice of the contents of those videos. Finally, the data from laptop containing the relevant videos was produced to the defense in discovery on April 29, 2016, which was more than eight months before trial.

As such, the defendant's failure to comply with this Court's pretrial scheduling order is inexcusable and alone warrants preclusion of Mr. Roloff's testimony.

### B. The Defense Notice Is Insufficient to Meet the Requirements of Rule 16 and Rule 702

The Court should preclude Mr. Roloff's anticipated testimony for the additional reason that the defense's notice is insufficient as a matter of law. The defendant's conclusory, one-paragraph notice of Mr. Roloff's anticipated expert testimony consisted of:

> We hereby serve notice that the defense will call Josiah Roloff to testify about forensic evidence located on the Toshiba laptop and Apple iPad. He has reviewed the forensic image of the laptop and the extraction reports of the iPad. Regarding the laptop, he will testify about the location of videos being introduced as government exhibits 11, 12, 13, 14, 15, and 16, the manner in which they were downloaded, and other internet activity occurring at the same time as the video downloads. Additionally, Mr. Roloff will testify about his opinion of the Telegram application installed on the iPad, including that there currently exists no evidence that the application was used.

As such, the defense provided only conclusory notice as to the topics on which Mr. Roloff is expected to opine, but provided no indication as to the nature of those opinions. Rule 16, however, clearly requires the defense to provide not only "the witness's qualifications"—which the Government concedes has been done here—but also "must describe the witness's opinions," as well as "the bases and reasons for those opinions." Fed. R. Crim. P. 16(b)(1)(C). Rule 16(b)(1)(C) requires the defendant to "give to the government a written summary of any testimony that the defendant intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence as evidence at trial." Fed. R. Crim. P. 16(b)(1)(C). "This summary must describe the witness's opinions, the bases and reasons for those opinions, and the witness's qualifications." *Id*. In addition, the trial court must also find that proposed expert testimony is both relevant and reliable prior to admitting it into evidence. *Daubert* v. *Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589-90 (1993); *see also Kumho Tire Company, Inc.* v. *Carmichael*, 526 U.S. 137 (1999). Specifically, in *Daubert*, the Court held that the Federal Rules of Evidence "assign to the trial judge the task of

ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." 509 U.S. at 597. "*Daubert* applies to both defense and government experts." *United States* v. *Yousef*, 327 F.3d 56, 148 (2d Cir. 2003).

The defendant's January 2 filing provided some additional detail, but does not cure all of the inadequacies of their January 1 notice. Specifically, the defense now contends that they anticipate that Roloff will opine "that it was possible for the videos to have appeared in the laptop's cache without El Gammal having intentionally clicked on them or downloaded them," and the fact that "the videos were not fully downloaded indicating that El Gammal did not view them in their entirety." Dkt. No. 135 at 2. While such additional disclosures may minimally be sufficient to cure the defects with respect to the first half of Roloff's noticed opinion testimony—and the defense has in their papers seeking to preclude government expert witnesses alleged the inadequacy of much more detailed disclosures—they certainly do not cure the defects with respect to other aspects of Roloff's noticed testimony. Specifically, the defendant's general statement about Roloff's anticipated testimony regarding "other internet activity occurring at the same time as the video downloads" remains insufficient because it says nothing about: (i) to what internet activity Soloff is referring; (ii) the bases for his concluding that the unspecified Internet activity was occurring at the same time as the video downloads; or (iii) his opinions as to the significance of the other, unspecified activity purportedly occurring. Rather than describing Roloff's opinions and the bases for those opinions, the notice as to "other internet activity" merely identifies general topics about which Roloff would testify. *See United States* v. *Ulbricht*, No. 14 Cr. 68 (KBF), 2015 WL 413318, at *6 (S.D.N.Y. Feb. 1, 2015) ("The lack of any opinions in defense counsel's initial disclosures is a flagrant failure to comply with Rule 16."); *United States* v. *Ferguson*, No. CRIM 3:06CR137 CFD, 2007 WL 4539646, at *1 (D. Conn. Dec. 14, 2007) (explaining that defense disclosure was insufficient because it "merely identifies topics about which [the proposed expert] will testify, not his opinions on these subjects."); *Wilson*, 493 F. Supp. 2d at 487 (finding expert disclosure inadequate where the defendant "made no attempt at all to describe 'the bases and reasons for [the expert's] opinions'"); *see also United States* v. *Concessi*, 38 Fed. Appx. 866, 868, 2002 WL 1162339, at *1 (4th Cir. June 3, 2002) (finding no abuse of discretion in district court's preclusion of expert testimony where the disclosures "included only general topics concerning which each proposed expert would testimony" and "failed to describe the witnesses['] opinions or provide the basis and reasons for the witnesses' opinions").

Nor should the defense's belated production of handwritten notes from their calls with Mr. Roloff be deemed sufficient to cure the notice's plain deficiencies. Indeed, the Government cannot be expected to divine or decipher from these notes Roloff's expected conclusions concerning the matters at hand. The Federal Rules of Evidence place the burden on the party offering an expert to provide such conclusions.

While these deficiencies arguably could be cured and ordinarily may not warrant preclusion, given the untimeliness of the notice of this particular expert, the Government respectfully submits that the proper remedy here is preclusion. In the alternative, and without prejudice to renewal of its motion to preclude, the Government respectfully requests the Court issue an Order directing the defense to provide in writing a supplemental notice as to all of the witness's opinions, including but not limited to the items identified above.

### II. Even if the Court Permits Limited Testimony from Roloff, the Court Should Require That Any Such Testimony Be Provided In-Person at Trial

The Court should deny the defendant's motion to permit the extraordinary relief of allowing Roloff to testify via closed-circuit television ("CCTV") because the defendant has failed to carry his heavy burden of establishing that such relief is warranted. The standard for using live CCTV testimony at trial is the same as that applied to a Rule 15 deposition—namely the presence of exceptional circumstances because (1) the testimony is material to the case, and (2) the witness is unavailable. *United States* v. *Gigante*, 166 F.3d 75, 81 (2d Cir. 1999) (citing *United States* v. *Johnpoll*, 739 F.2d 702, 708 (2d Cir. 1984)); *see also United States* v. *Abu Ghayth*, No. 98 Cr. 1023 (LAK), 2014 WL 144653, at *2 (S.D.N.Y. Jan. 15, 2014) ("The Second Circuit has held that prosecution witnesses may testify through CCTV where the government satisfies the standard for taking a deposition under Rule 15."). Here, the defendant's motion fails to establish either the materiality of the proffered testimony or the unavailability of their intended expert.

With regard to the materiality requirement, when a defendant makes a motion for a Rule 15 deposition, the moving party must do more than show that the testimony sought is relevant to the case. *United States* v. *Ismaili*, 828 F.2d 153, 161 & n.6 (3d Cir. 1987); *see also id.* at 161 (holding that a district court cannot abuse its discretion in denying a Rule 15 deposition where the testimony "could not negate the crux of the government's indictment"). Rather, he must typically show, beyond "unsubstantiated speculation," that the testimony sought "exculpates the defendant." *United States* v. *Kelley*, 36 F.3d 1118, 1125 (D.C. Cir. 1994) (affirming denial of depositions where anticipated testimony, although relevant, was not exculpatory) (internal quotation marks and citation omitted); *United States* v. *Abu Gayth*, 17 F. Supp. 3d 289, 299-300 (S.D.N.Y. 2014); *United States* v. *Merritt*, No. 90 Cr. 767 (JSM), 1991 WL 79235, at *5 (S.D.N.Y. May 7, 1991) (denying Rule 15 deposition request where "the defendants have made no showing that the deponents' testimony would be exculpatory"); *United States* v. *Esquivel*, 755 F. Supp. 434, 439 (D.D.C. 1990) ("[A] defendant typically demonstrates the 'exceptional circumstances' necessary for success on a Rule 15(a) motion by some preliminary showing that the testimony will exculpate him" (citations omitted)). Moreover, a Rule 15 motion should be denied if it seeks to take testimony that is cumulative, *United States* v. *Stein*, 482 F. Supp. 2d 360, 365 (S.D.N.Y. 2007) (citing *United States* v. *Grossman*, No. S2 03 Cr. 1156 (SHS), 2005 WL 486735, at *3 (S.D.N.Y. March 2, 2005)), or that is inadmissible, *Grossman*, 2005 WL 486735, at *3. The burden of satisfying the *Johnpoll* test is on the party seeking to offer the testimony. *See United States* v. *Whiting*, 308 F.2d 537, 541 (2d Cir. 1962); *see also United States* v. *Kelley*, 36 F.3d 1118, 1124 (D.C. Cir. 1994).

Here, the defense fails to meet the required standard. As noted above, in their initial January 1 notice sent to the Government via email, the defense listed three broad topics on which they expected Roloff will testify: (1) "the location of videos," (2) "the manner in which they were downloaded," and (3) "other internet activity occurring at the same time as the video downloads." The defense's January 1 email did not articulate any theory under which Roloff's conclusions concerning any of these topics are material, nor did they provide information that would allow the Court to conclude how they might potentially aid in a trial defense. In their January 2 motion, the

defense again failed to articulate the materiality of these topics, other than to assert, with respect to the manner in which the videos were downloaded, that "if El Gammal did not intentionally click on the videos or did not watch them in full, that weakens the government's argument that the videos prove his knowledge of ISIS's terrorist activities or his motive and intent." Dkt. No. 135 at 6.

The defendant's assertion concerning whether the defendant clicked or fully downloaded the relevant videos is, standing alone, insufficient to establish the materiality of the proffered expert testimony. The Government is not offering its expert testimony of FBI Forensic Examiner Craig Roth in order to prove conclusively that the defendant actively clicked any video files or viewed them in their entirety. Rather, the Government expects Roth to testify that the videos were downloaded (or, in some cases, partially downloaded) to the laptop on particular dates and times, and that those videos were likely downloaded from the Internet. Only by combining these forensic conclusions with other evidence to be presented at trial will the Government argue in favor of the further inference that the defendant intentionally accessed militant and ISIS-related content on the Internet and was aware of ISIS's terrorist activities. Thus, where the relevant experts do not appear to offer materially different forensic conclusions on the core issue highlighted by the defendant's motion, it cannot be said that the testimony sought "exculpates the defendant." *Kelley*, 36 F.3d at 1125.

With regard to the remaining topics addressed in the defendant's January 1 email, but omitted from its January 2 motion, it is impossible to conclude based on the current record that testimony would material, much less "exculpatory," *Esquivel*, 755 F. Supp. 434 at 439. The defendant has not articulated how any conclusions drawn by Roloff concerning "other internet activity" that purportedly occurred at the time the relevant video downloads could possibly "negate the crux of the government's indictment." *Ismaili*, 828 F.2d at 161 & n.6. The mere fact that "other" internet activity" may have occurred at or around the same time suggests nothing exculpatory. Absent a further articulation of *why* such internet activity might aid a possible defense theory, the defendant has not met his burden of establishing the materiality of the proffered testimony. Thus, the defendant has failed to make the required showing of materiality. *Esquivel*, 755 F. Supp. at 439; *Merritt*, 1991 WL 79235, at *5.

Moreover, based on the inadequate notice provided to date, it remains unclear (at best) whether Roloff's testimony would be admissible at trial, let alone material to the defense. For example, to the extent the defense may seek to prove that "other" benign "internet activity" occurred on the defendant's computer at or around the time militant or ISIS-related content was cached, such evidence is neither relevant nor admissible. This is because "[a] defendant may not seek to establish his innocence . . . through proof of the absence of criminal acts on specific occasions." *United States* v. *Scarpa*, 913 F.2d 993, 1011 (2d Cir. 1990). "Evidence of a defendant's past 'good acts' is only relevant where 'a defendant is alleged to have always or continually committed bad acts or where the evidence of good acts would undermine the underlying theory of a criminal prosecution." *United States* v. *Balboa*, No. 12 Cr. 196 (PAC), 2013 WL 6196606, at *3 (S.D.N.Y. Nov. 27, 2013) (quoting *United States v. Damti,* 109 Fed. App'x 454, 455–56 (2d Cir. 2004)). Accordingly, courts have repeatedly rejected similar attempts to introduce evidence showing merely that other, innocuous conduct may have occurred at the time an alleged crime was

committed. *See, e.g., United States* v. *Williams*, 205 F.3d 23, 34 (2d Cir. 2000) (rejecting defense argument that "evidence of innocent travel [to Jamaica] was necessary to rebut the government's allegation that [the defendant] had been involved in other cocaine importations from Jamaica"); *United States* v. *Walker*, 191 F.3d 326, 336 (2d Cir. 1999) (affirming, in case involving fraudulent asylum applications, exclusion of evidence that defendant had "prepared other, non-fraudulent applications" because evidence "was simply irrelevant to whether the applications charged as false statements were fraudulent"). Applying this standard, the defendant's motion fails to articulate any theory under which the proffered expert testimony is admissible. *See United States* v. *Drogoul*, 1 F.3d 1546, 1555 ("[t]he court need not, at the cost of time and money, engage in an act of futility by authorizing depositions that clearly will be inadmissible at trial."); *see also United States* v. *Warren*, 713 F. Supp. 2d 1, 4 (D.D.C. 2010).

Nor has the defense explained why it is that Mr. Roloff would be unavailable to testify on any day of trial. The defendant simply asserts that Roloff is "committed to a capital trial in Georgia." Def. Mot. at 4. The defendant fails to provide any meaningful details such as the relevant court and presiding judge; the expected start and end dates of the trial; the daily trial schedule (including any days off); and the expected timing and length of Roloff's testimony.

While the Government of course does not contend that Roloff should be in two places at once, given that the parties anticipate this trial (including jury selection) will last at least approximately two weeks, it is highly unlikely that there would be a situation when Roloff's testimony could only be provided in both proceedings on the same day. Indeed, the fact that he is available to testify at all via CCTV suggests that Roloff can be available in this District for at least one or two days to testify in-person. Such an argument is further undercut by Georgia's proximity to this District, making a trip to New York for a day or two unlikely to disrupt either this proceeding or the Georgia proceeding. Accordingly, by failing to provide any of the aforementioned details about the purportedly conflicting trial and the dates of Roloff's testimony, the defense has failed to establish the witness's unavailability.

Thus, the defendant's conclusory allegations concerning the witness's unavailability do not suffice. *See, e.g., United States* v. *Al Kassar*, 572 F. Supp. 2d 375, 376 (S.D.N.Y. 2008) (a witness's "vague speculation that some theoretical future work commitments might make him unavailable is entirely insufficient to support a finding of unavailability"), especially where the trial is estimated to last approximately two weeks, *id.* at 376-77 ("[e]ven if [the witness] were unavailable on any given date, moreover, it is exceedingly unlikely, on its face, that he would be unavailable throughout the approximately three weeks estimated for this trial . . . ."). *See also Fawwaz*, Slip Op. at 5 ("Such speculative concerns that logistics, work, or travel schedules might prevent a witness's attendance at trial is not sufficient to satisfy the unavailability requirement."); *United States* v. *Paredes-Cordova*, No. 03 Cr. 987 (DAB), 2009 WL 1585776, at *4 (S.D.N.Y. June 8, 2009) (holding that proposed Rule 15 deponents were not unavailable where there was no evidence that they had attempted to and failed to obtain travel visas).

Finally, the defense has proffered no explanation as to why they have determined at this late hour to call a witness not only who resides in Washington State, but also who is unavailable to testify in-person at trial. As noted above, the defense has had ample notice not only of the

contents of the laptop and the iPad, but also of the specific videos the Government seeks to offer. Nevertheless, the defense has proffered no explanation as to why arrangements were not made to have the materials examined by a forensic expert who resides closer to this District—if not within this District—or why they did not try to obtain the services of a forensic expert who does not face the same scheduling limitations purportedly faced by Roloff here.  Indeed, the defense has proffered Roloff as an expert witness and not a percipient witness.  As such, there is nothing unique to Roloff's testimony that would require his presence rather than someone similarly qualified.  Indeed, this is yet another example of how the defendant's untimely notice here would unfairly prejudice and potentially unnecessarily disrupt these proceedings.  As such, Gammal should not be permitted to offer Roloff's testimony via CCTV.  *See Whitting*, 308 F.2d at 541 ("It is within the discretion of the trial court to deny [a Rule 15 motion] if it is made after 'unexcused delay.'")

           Respectfully submitted,

           PREET BHARARA
           United States Attorney

by: _____/S/_____
           Andrew DeFilippis
           Brendan Quigley
           Negar Tekeei
           Assistant United States Attorneys
           (212) 637-2231/2190/2482

cc: Sabrina P. Shroff/Annalisa Mirón/Daniel Habib
    *Counsel for Ahmed Mohammed El Gammal*