

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

January 6, 2017

**By ECF**

The Honorable Edgardo Ramos
United States District Judge
Southern District of New York
Thurgood Marshall U.S. Courthouse
40 Foley Square, Room 2102
New York, New York 10007

      Re:    **United States v. Ahmed Mohamed El Gammal,**
             15 Cr. 588 (ER)

Dear Judge Ramos:

      The Government writes respectfully to request that the Court take certain limited and nonprejudicial steps to prevent the names of prospective jurors on the voir dire panel, as well as the jurors and alternate jurors who are ultimately selected for the petit jury, from being made public.  Specifically, the Government renews its request that the Court refer to the jurors in open court by only their juror numbers, and not their names, during the voir dire and throughout the trial.  While the Court denied this application at the conference on January 3, 2016, the Government respectfully requests the Court to reconsider its ruling in view of the facts and law set forth herein.

      The Government respectfully submits that the public's and the parties' substantial interests in an efficient and fair trial advanced by the proposed minimally restrictive measure far outweigh the remote possibility of any prejudice to the defendant.  Specifically, while the parties and the Court will know the names of the jurors and the corresponding juror numbers, those names would not be publicly revealed.  As the Court is aware, this case involves charges of terrorism relating to ISIS, an extremely violent terrorist organization that has publicly published "kill lists" of United States citizens, including New York residents, and which has demonstrated its ability to closely track developments in Western media.  This concern is magnified in this case, which will be the first criminal trial involving ISIS in this District.  Accordingly, the Government respectfully submits that, under these circumstances, any publicity about the identities of the jurors and prospective jurors in this case could result in pre-trial, mid-trial, or post-trial threats of violence against jurors, and, at the very least, could cause the jurors to feel they would be subject to threats to their safety.  Accordingly, such threats (or fear of threats) likely will interfere with the jury's ability to render a fair and impartial verdict and potentially could have a chilling effect on a juror's ability to perform his or her constitutional duty.  Moreover, the emergence of a mid-trial threat potentially could result in a mistrial for the aforementioned reasons.

Honorable Edgardo Ramos
January 6, 2017
Page 2 of 7

Against this backdrop, this limited protective measure is necessary to address reasonable fears of jurors of threats of violence or retaliation from ISIS.  Nor should there be any prejudice to the defendant by the requested limited measure of not publicly announcing the jurors' names—a measure that many judges in this District take as a matter of routine course.  As such, the potential prejudice cited by the defense in opposition to the Government's January 3 oral application—*i.e.*, that a prospective juror may suspect that this is an unusual or extraordinary case in this District—is exceedingly remote and, in any event, is outweighed by the substantial risk of prejudice to, and risk of corruption of, the judicial process here.

**A.  Applicable Law**

To be sure, the Government is not asking for an anonymous jury to be empaneled here.[1]  However, Second Circuit case law upholding the use of anonymous juries is instructive when considering the limited measures the Government seeks here.  The Second Circuit has repeatedly upheld the use of anonymous juries where a court takes reasonable precautions to minimize any adverse effect on the jurors' opinion of a defendant by, for example, conducting a thorough voir dire to uncover any potential bias and giving the jury a plausible and non-prejudicial reason for jury anonymity.  United States v. Stewart, 590 F.3d 93, 124 (2d Cir. 2009) ("[T]he use of an anonymous jury does not infringe a defendant's constitutional rights, so long as the court conducts a voir dire designed to uncover any bias as to the issues or the defendants and takes care to give the jurors a plausible and nonprejudicial reason for not disclosing their identities." (internal quotation marks omitted)); United States v. Quinones, 511 F.3d 289, 295-97 (2d Cir. 2007); Unites States v. Aulicino, 44 F.3d 1102, 1116 (2d Cir. 1995); United States v. Wong, 40 F.3d 1347, 1376 (2d Cir. 1994); United States v. Thai, 29 F.3d 785, 800-01 (2d Cir. 1994); United States v. Paccione, 949 F.2d 1183, 1192 (2d Cir. 1991); United States v. Vario, 943 F.2d 236, 239 (2d Cir. 1991); United States v. Tutino, 883 F.2d 1125, 1132 (2d Cir. 1989); United States v. Barnes, 604 F.2d 121, 133-43 (2d Cir. 1979).

The case law in this Circuit has identified three factors that should be considered in determining whether empaneling an anonymous jury is appropriate.  See United States v.

---

[1] Anonymous juries have been used in several prominent terrorism cases tried in this District, including two trials of multiple defendants on charges relating to the 1998 bombings of the U.S. Embassies in Tanzania and Kenya (United States v. Ghailani, (S10) 98 Cr. 1023 (LAK), and United States v. Bin Laden, (S7) 98 Cr. 1023 (LBS)); the trial of Sulaiman Abu Ghayth for his participation in al Qaeda's conspiracy to kill Americans as a spokesman and inspirational leader for the terror group ((S14) 98 Cr. 1023 (LAK)); the trial of attorney Lynne Stewart and two others for various crimes arising from their contacts with Sheikh Omar Abdel Rahman (United States v. Stewart, 02 Cr. 395 (JGK)); three trials arising out of Indictment 93 Cr. 180 (KTD) (two of which related to the 1993 bombing of the World Trade Center (United States v. Salameh and United States v. Yousef) and the other of which concerned a plot to bomb American airliners flying out of Southeast Asia (United States v. Yousef)); and the trial of Sheikh Omar Abdel Rahman's seditious conspiracy to wage war against the United States, which included a plot to bomb various places in New York City (United States v. Abdel Rahman, 93 Cr. 181 (MBM)).

Honorable Edgardo Ramos
January 6, 2017
Page 3 of 7

Tomero, 486 F. Supp. 2d 320, 322 (S.D.N.Y. 2007). These factors are also instructive when considering whether to grant the Government's more limited application not to publicly announce the names of prospective jurors on the voir dire panel, as well as the jurors and alternate jurors who are ultimately selected for the petit jury:

- first, the nature and seriousness of the charges, Stewart, 590 F.3d at 124-25 (using an anonymous jury is appropriate where, inter alia, "the charges against the defendants . . . included a terrorist conspiracy to murder"); Vario, 943 F.2d at 241 (using an anonymous jury is appropriate where the "trial evidence will depict a pattern of violence by the defendants and [their] associates such as would cause a juror to reasonably fear for his own safety");

- second, the potential threat of corruption of the judicial process, Stewart, 590 F.3d at 124-25 (considering "the reasonable likelihood that the pervasive issue of terrorism would raise in the jurors' minds a fear for their individual safety"); United States v. Scala, 405 F. Supp. 2d 450, 452-53 (S.D.N.Y. 2005) (considering the possibility that the jurors, "absent anonymity, would fear reprisals"); and

- third, the expectation of publicity and media coverage, Stewart, 590 F.3d at 125 (considering "the widespread pretrial publicity about the case"); Tomero, 486 F. Supp. 2d. at 323 (weighing the fact that the case "has been covered extensively in the press," and predicting further press coverage).

Importantly, the Second Circuit has repeatedly upheld the use of jury-protection measures based upon the reasonable fears of jurors of threats of violence or retaliation, without an assessment of whether those fears are certain or even likely to be realized. E.g., Stewart, 590 F.3d at 125 (considering "the reasonable likelihood that the pervasive issue of terrorism would raise in the juror's minds a fear for their individual safety"); United States v. Thomas, 757 F.2d 1359, 1364 (2d Cir. 1985); Barnes, 604 F.2d at 141-42; Vario, 943 F.2d 239. The consideration of a jury's reasonable fear is relevant to both the first factor (nature and seriousness of the charges) as well as the second factor (threat to judicial process). See Scala, 405 F. Supp. 2d at 452-53 (with respect to the first factor, observing that "a jury, unless shielded, well could fear malevolent action by defendants accused of these crimes"; and with respect to the second factor, observing that demonstrated violence and jury tampering "raises a substantial risk that the jurors, absent anonymity, would fear reprisal").

The Second Circuit's opinion in Barnes is also instructive. There, the court upheld the empaneling of an anonymous jury and specifically rejected the argument that the law requires jurors to disclose their identities because

> [t]his . . . is not the law—and should not be. If a juror feels that he and his family may be subjected to violence or death at the hands of a defendant or his friends, how can his judgment be as free and impartial as the Constitution requires? If the anonymous juror feels

>less pressure as a result of anonymity . . . this is as it should be—a factor contributing to his impartiality.

604 F.2d at 140-41 (internal quotation marks omitted).

**B. All Three Factors Weigh Heavily in Favor of Not Publicly Announcing the Names of Jurors**

In this case, all three relevant factors weigh heavily in favor of granting the limited relief the Government is requesting—that the Court refer to the jurors by their juror number, and not their name, during the voir dire and throughout the trial.

**1. Nature and Seriousness of the Charges**

The Indictment charges the defendant with conspiring to provide, providing and attempting to provide material support or resources to ISIS, and conspiring to receive and aiding and abetting the receipt of military-type training from ISIS.  These charged crimes are serious, and involve a terrorist organization that has released numerous "kill lists" containing names and other personal identifying information for U.S. citizens as a terrorism technique to generate fear and publicity.  For example, in May 2016, ISIS's Cyber Caliphate Army published a "kill list" on the messaging application Telegram that included more than 3,500 New Yorkers, causing the FBI and NYPD to visit and notify thousands of individuals.  Jack Moore, How does it feel to be on ISIS's hit list?, Newsweek (May 10, 2016), available at http://www.newsweek.com/civilians-isis-3500-strong-new-york-hit-list-mixed-inclusion-457542.   In June 2016, ISIS's Cyber Caliphate Army posted another "kill list" on Telegram with the names, addresses and email addresses of more than 8,000 people, including U.S. citizens.  Chris Summers, ISIS orders American lone wolf jihadies to slaughter 8,000 citizens by releasing "kill list" which includes the names of several Hollywood celebs, Daily Mail (June 9, 2016), available at http://www.dailymail.co.uk/news/article-3632787/New-ISIS-kill-list-targets-7-848-Americans-message-app-tells-supporters-kill-strongly-revenge-Muslims.html.  As such, there is a reasonably risk that ISIS or its affiliates could target the jurors after their names become public.  Indeed, ISIS's repeated expression of a desire to attack American citizens—including its call to murder 100 U.S. service members—was one factor considered in United States v. Pugh, when the district court, finding that "there is a reasonable risk that ISIL or its affiliates could target the jury," decided to impose protective measures such as an anonymous and semi-sequestered jury. United States v. Pugh, 150 F. Supp. 3d 218, 224 (E.D.N.Y. 2015).

Both the seriousness of the crimes charged, the nature of the charges, and the terror tactics employed by ISIS are likely to raise in the minds of at least some jurors a reasonable fear for their own safety.  That reasonable fear would warrant the empaneling of an anonymous jury and the institution of related protective measures.  See Stewart, 590 F.3d at 125; see also Thai, 29 F.3d at 801; Thomas, 757 F.2d at 1364; Barnes, 604 F.2d at 141; United States v. Gambino, 809 F. Supp. 1061, 1067 (S.D.N.Y. 1992).  But all the Government is seeking here is for the Court to refrain from publicly announcing the names of the jurors—a reasonable and limited measure designed to address the reasonable fear a juror may have for his or her own safety.

Honorable Edgardo Ramos
January 6, 2017
Page 5 of 7

### 2. Corruption of the Judicial Process

Inflicting fear and terror on Americans is one of ISIS's goals. If jurors feel that they "may be subjected to violence or death at the hands of a defendant or his friends,"—or, for example, the terrorist organization the defendant is charged with supporting—such fears may well influence their ability to be "as free and impartial as the Constitution requires." Barnes, 604 F.2d at 141. The proposed limited measure of publicly referring to each juror by his or her juror number will reduce pressures borne of fear, and accordingly will better enable jurors to fulfill their duty of impartiality.

### 3. Pretrial Publicity

While this case has attracted publicity since the defendant's arrest, it has not attracted the level of pre-trial publicity that ordinarily would require more substantial protective measures than those sought here. However, in recent months, there has been increased media attention to the case during the pre-trial litigation.[2] It is likely that this case will attract increasing publicity once the trial commences, especially given the facts that this will be one of the first ISIS trials in the country, and the first ISIS trial in this District.

Moreover, given ISIS's demonstrated ability to track events occurring in Western media—in particular, events related to ISIS or terrorism more generally—even minimal trial publicity could create a risk that ISIS or an ISIS supporter could locate any public disclosure of the identities of the jurors. In these circumstances, even the limited expectation of publicity at trial weighs in favor of anonymity to avoid the jurors' exposure "to inappropriate contacts that could compromise the trial." Paccione, 949 F.2d at 1193; see also Stewart, 590 F.3d at 125; Thai, 29 F.3d at 801; Vario, 943 F.2d at 240; Tutino, 883 F.2d at 1132; United States v. Persico, 832 F.2d 705, 717 (2d Cir. 1987); Barnes, 604 F.2d at 141. Juror anonymity is an effective remedial measure to prevent possible prejudice and inappropriate contact by the press and others.[3] Moreover, potential jurors will be more willing to serve if they are confident that they and their families will not be subjected to unnecessary personal scrutiny.

---

[2] E.g., Mark Crudele, NYC College Student Died Fighting With ISIS in Syria, ABC 7 (Oct. 18, 2016), available at http://abc7ny.com/news/nyc-college-student-died-fighting-with-isis-in-syria/1560911/; How a New York Man Went from Comfortable Suburban Life to Jihad, CBS News (Dec. 13, 2016), available at http://www.cbsnews.com/news/samy-el-goarany-how-a-new-york-man-went-from-comfortable-suburban-life-to-isis-jihad/ (reprinted in news outlets across the country).

[3] It is well settled that where media coverage potentially threatens the fairness of a trial, remedial measures must be taken to prevent the prejudice. Sheppard v. Maxwell, 384 U.S. 333, 363 (1966). "The courts must take such steps by rule and regulation that will protect their processes from prejudicial outside interferences." Id. at 363. "[T]he trial court has a responsibility to the public as well as to the defendant to maintain the integrity of the criminal process." United States v. Shiomos, 864 F.2d 16, 18 (3d Cir. 1988); see also United States v. Marrone, 502 F. Supp. 983, 1003 (E.D. Pa. 1980) ("[T]he public, as well as the accused, has a

To avoid jurors' exposure to inappropriate contacts that would compromise their impartiality and to alleviate their concerns that they or their families might be subject to media scrutiny should their identities be revealed, use of the requested measures to protect the names of jurors is appropriate. See Stewart, 590 F.3d at 125; Persico, 832 F.2d at 717; Barnes, 604 F.2d at 141.

**C. Addressing Jurors by Their Juror Numbers Will Not Interfere with the Conduct of a Thorough and Searching Voir Dire**

Although proceeding with the requested method will result in the jurors' names and certain other personally identifying information not being disclosed to the public, the jurors' anonymity to the public will not prevent the parties from participating meaningfully in selecting a jury. Rather, through the use of a thorough voir dire process, the parties will be provided with ample information about the background and possible bias of the potential jurors. See, e.g., Thai, 29 F.3d at 801; Paccione, 949 F.2d at 1192; Vario, 943 F.2d at 241-42; Tutino, 883 F.2d at 1133.

The Court of course has substantial discretion in controlling and limiting the voir dire process. Rosales-Lopez v. United States, 451 U.S. 182, 189 (1981); United States v. Click, 807 F.2d 847, 850 (9th Cir. 1987); United States v. Steel, 759 F.2d 706, 711 (9th Cir. 1985); Barnes, 604 F.2d at 137. A full voir dire may be conducted about subjects other than the juror's name, and the parties and counsel will have an unrestricted opportunity to observe the jurors during the voir dire process. E.g., Barnes, 604 F.2d at 142-43. Where jury anonymity is warranted, the Second Circuit has found that a defendant's rights are protected by the trial court's conduct of "a voir dire designed to uncover any bias as to the issues or the defendants." Stewart, 590 F.3d at 124 (internal quotation marks omitted).

Furthermore, the Second Circuit has concluded that the danger that the anonymous procedure would cast unfair aspersions on a defendant is substantially minimized where the trial judge gives the jurors a plausible and non-prejudicial reason for not disclosing their identities or taking other security measures. Stewart, 590 F.3d at 124; see also Thai, 29 F.3d at 801 (district court instructed that "[s]electing an anonymous jury is not an unusual practice and has been followed in many cases in the Federal Court. Anonymity will ward off curiosity that might infringe on juror's privacy . . . ."); Paccione, 949 F.2d at 1193 (anonymity explained in terms of protection against pressures from the media). Here, the Court can accommodate the defendant's interests and allay any fears of a partial jury by, during voir dire, providing the jury with a truthful explanation that all jurors and prospective jurors will be referred to by number and not name for the sake of their privacy, and consistent with the practice used in other cases in federal court of keeping the identities of jurors confidential.

---

substantial interest in having guilt or innocence decided by a jury free from prejudicial influences.").

Honorable Edgardo Ramos
January 6, 2017
Page 7 of 7

**D. Conclusion**

      For all of the foregoing reasons, the Government's request that the Court refer to the jurors by their juror number, and not their name, during the empanelment and throughout the trial should be granted.

                                      Respectfully submitted,

                                      PREET BHARARA
                                      United States Attorney

                  by: _____/s/_____
                                      Andrew DeFilippis
                                      Brendan Quigley
                                      Negar Tekeei
                                      Assistant United States Attorneys
                                      (212) 637-2231/2190/2482


cc:  Sabrina P. Shroff/Annalisa Mirón/Daniel Habib
     *Counsel for Ahmed Mohammed El Gammal*