UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - -   x
UNITED STATES OF AMERICA          :
                                  :
        - v -                     :
                                  :          **15 Cr. 588 (ER)**
                                  :
**AHMED MOHAMMED EL GAMMAL,**     :
            Defendant.            :
- - - - - - - - - - - - - - - -   x


**DEFENDANT AHMED MOHAMMED EL GAMMAL'S OPPOSITION TO THE
GOVERNMENT'S JANUARY 6, 2017 MOTION TO IDENTITY VENIREPERSONS
AND JURORS BY NUMBER RATHER THAN NAME**


                         Federal Defenders of New York
                         Daniel Habib, Esq.
                         Annalisa Mirón, Esq.
                         Sabrina Shroff, Esq.
                         Attorneys for Defendant
                            **Ahmed Mohammed El Gammal**
                         52 Duane Street - 10th Floor
                         New York, NY 10007
                         Tel.: (212) 417-8700


TO:      PREET BHARARA, ESQ.
         United States Attorney
         Southern District of New York
         1 St. Andrew's Plaza
         New York, NY 10007

Attn:    **Andrew DeFilippis, Esq.,**
         **Brendan Quigley, Esq.,**
         **Negar Tekeei, Esq.**
         Assistant United States Attorneys

The defense submits this memorandum of law in opposition to the government's January 6, 2017 motion to refer to venirepersons and jurors by number rather than name, Dkt. No. 144 ("Gov't Mot."). The government has not demonstrated entitlement to the "extraordinary" relief of reconsideration. On the merits, the government has not shown that Mr. El Gammal has ever obstructed justice or engaged in violence. Its sole substantiation for the assertion that ISIS will threaten jurors in this case -- ISIS has never threatened or tampered with jurors in any case, ever -- is two periodical articles that do not address the subject. And the government's current position contradicts its representation to this Court, just two months ago, that this was a low-profile case. If accepted, the government's argument would warrant anonymous juries in every terrorism prosecution. That undifferentiated approach is not the law. See United States v. Vario, 943 F.2d 236, 241 (2d Cir. 1991) (rejecting use of anonymous jury based on connection to organized crime alone). But, if this Court reverses itself and orders a semi-anonymous jury, it should also grant the defense's corresponding request for a jury questionnaire.

**Argument**

A.  The Government Has Not Satisfied The Standard For
    Reconsideration.

During the January 3, 2017 status conference, the government said that its "slight preference" was to have venirepersons and jurors "referred to by number rather than by name, given the nature of the case." 1/3/17 Tr. 8.  This Court denied the government's request, citing "the reasons stated" by the defense ("There is nothing about this case that should lead the jury to believe that something could possibly happen to them"), as well as the Court's own practical concerns regarding the efficient administration of voir dire.  1/3/17 Tr. 9.

In the ensuing two days, that "slight preference" appears to have grown less slight.  The government moved for reconsideration, but its motion does not even address, let alone satisfy, the applicable legal standard.  "Reconsideration of a court's previous order is an 'extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources.'"  United States v. Baldeo, 2015 WL 252414, at *1 (S.D.N.Y. Jan. 20, 2015) (quoting Montanile v. Nat'l Broad. Co., 216 F. Supp. 2d 341, 342 (S.D.N.Y. 2002)).  To be entitled to reconsideration, "a party 'must demonstrate that the Court overlooked controlling decisions or factual matters that were put before it on the underlying motion.'"  Eisemann v. Greene, 204 F.3d 393, 395 n.2 (2d Cir. 2000) (quoting Shamis v. Ambassador Factors Corp., 187 F.R.D. 148, 151 (S.D.N.Y. 1999)). A party "may not advance new facts, issues, or arguments not

previously presented to the Court." <u>Nat'l Union Fire Ins. Co.</u>
<u>v. Stroh Cos., Inc.</u>, 265 F.3d 97, 115 (2d Cir. 2001).

In its first bite at this apple, the government chose to
make a cursory request based on nothing more than "the nature of
the case." 1/3/17 Tr. 8. Dissatisfied with this Court's
answer, the government now presents, for the first time, factual
assertions and case law (more on those later) that were
available at the time of the initial motion -- on the business
day before trial, no less. Hence, the government "is advancing
new arguments without excuse as to why these arguments were not
raised previously, and these arguments are therefore not
cognizable on a motion for reconsideration." <u>Richard Feiner &</u>
<u>Co., Inc. v. BMG Music Spain</u>, 2003 WL 21496812, at *1 (S.D.N.Y.
June 27, 2003).

B.  <u>On The Merits, The Government Hasn't Justified Its Request.</u>

Empaneling an anonymous jury "carries with it numerous
risks" to the integrity of the judicial process, including "the
possibility of unfair prejudice to the defendant and the danger
of encroaching on the presumption of innocence." <u>United States</u>
<u>v. Tutino</u>, 883 F.2d 1125, 1132 (2d Cir. 1989).[1] <u>See also</u> <u>United</u>

---

[1] The government insists that it is "not asking for an anonymous
jury," Gov't Mot. 2, and that may be true in the literal sense,
in that the parties will know the venirepersons' names. But
from the venirepersons' perspective, the effect will be the
same. The repeated use of their numbers instead of names will
convey the message that disclosure of their identities would

States v. Wong, 40 F.3d 1347, 1376 (2d Cir. 1994) ("Empanelling an anonymous jury undoubtedly has serious implications for a defendant's interest in effectively conducting voir dire and in maintaining the presumption of innocence.").  Empaneling an anonymous jury is justified only where "there is a strong reason to believe that the jury needs protection."  United States v. Thomas, 757 F.2d 1359, 1365 (2d Cir. 1985).  "[T]he mere incantation of words such as 'terrorist,' 'terrorism,' 'al Qaeda,' 'Bin Laden,' and '9/11' is insufficient to require an anonymous jury."  United States v. Mostafa, 7 F. Supp. 3d 334, 337 (S.D.N.Y. 2014); see also United States v. Fawwaz, 57 F. Supp. 3d 307, 309 (S.D.N.Y. 2014) (same); Vario, 943 F.2d at 241 (same, with respect to organized crime).  Rather, there must be "a demonstrable history or likelihood of obstruction of justice on the part of the defendant or others acting on his behalf or a showing that trial evidence will depict a pattern of violence by

---

endanger them.  Likewise, if the protection of the venirepersons' identities is to be effective, then this Court will have to consider not asking many of its planned voir dire questions (e.g., age, place of residence, workplace, spouses and children, etc.) in open court.  See, e.g., United States v. Wong, 40 F.3d 1347, 1376 (2d Cir. 1994) (noting that "the district court limited voir dire so as not to disclose the names, addresses, or places of employment of members of the venire").  What good will it do John Smith to be "Juror Number 1" if it's public information that he's 45, has lived on the Upper West Side for 10 years, works at an identified small nonprofit in Manhattan, and has a wife who's a lawyer at an identified firm?  The court may need to ask these questions at sidebar or use individual voir dire.

the defendant[] and his associates such as would cause a juror to reasonably fear for his own safety." Vario, 943 F.2d at 241.

The government has failed to make that showing. At the threshold, it is hard to take seriously the government's dire assessment of the danger to the venirepersons and the integrity of the judicial process when, just days ago, its present request was just a "slight preference" supported by a half-sentence of argument. In any case, Mr. El Gammal himself has never obstructed justice or engaged in violence, and the government does not allege that he has. He is not charged with joining or attempting to join ISIS (as in Pugh), or with personal acts of terrorism. The government agrees: Mr. El Gammal "is not personally accused of committing any violent acts, much less attacks on innocent New Yorkers." Dkt. No. 80, at 35.

Rather, the government relies on the danger posed by ISIS -- which, notwithstanding its "ability to closely track developments in Western media," Gov't Mot. 1 -- has shown no interest whatsoever in this case. And the government has substantiated its fear not with intelligence or historical examples or even ISIS propaganda, but with two articles (one from Newsweek, one from the Daily Mail) discussing the dissemination of an ISIS "kill list." Gov't Mot. 4. So far as the articles reflect, that list did not include anyone involved in a judicial proceeding. The government has offered no

evidence that ISIS has ever threatened or harmed a juror, a witness, an attorney, or any court personnel in any judicial proceeding in the United States.  The government has offered no evidence that ISIS has ever attempted to tamper with a juror or witness or obstruct justice.  If the government's showing suffices, then every ISIS prosecution in an Article III court will warrant an anonymous jury.  Second Circuit precedent forecloses that undifferentiated result: "Before a district judge may rely on the organized crime connection of a defendant as a factor in the question of anonymous juries, he must make a determination that this connection has some direct relevance to the question of juror fears or safety in the trial at hand, beyond the innuendo that this connection conjures up."  Vario, 943 F.2d at 241.

        As a result, the cases in which the Circuit has upheld the use of anonymous juries (including every such case cited in the government's motion, at 2) have always involved some concrete, specific allegation that the defendant or his criminal associates used violence or tampered with the judicial process. See, e.g., United States v. Stewart, 590 F.3d 93, 125 (2d Cir. 2009) ("terrorist conspiracy to murder" and "charges against Stewart and Yousry" that were "in significant part about their alleged corruption of the judicial process"); United States v. Quinones, 511 F.3d 289, 295 (2d Cir. 2007) ("murdering a

6

confidential informant in retaliation for his cooperation with law enforcement"); United States v. Aulicino, 44 F.3d 1102, 1116 (2d Cir. 1995) (attempt to bribe and threaten witness); Wong, 40 F.3d at 1376-77 (defendant's gang "had an extensive history of interfering with the judicial process," including witness killings); United States v. Thai, 29 F.3d 785, 801 (2d Cir. 1994) (defendants had attempted "to subvert the judicial process through intimidation and murder"); United States v. Paccione, 949 F.2d 1183, 1192-93 (2d Cir. 1991) (co-defendant "had been murdered in circumstances that strongly suggested a connection to the present case and to certain of these defendants" and that "a government witness had recently received a middle-of-the-night anonymous telephone call telling him that he would be safe so long as he 'remembered nothing'"); Vario, 943 F.2d at 240 (obstruction of justice charge "involving jury tampering"); Tutino, 883 F.2d at 1132 ("substantial showing that there was a risk of jury tampering"); United States v. Barnes, 604 F.2d 121, 141 (2d Cir. 1979) ("much pretrial publicity playing up the alleged acts of violence on the part of the actors in this case" so that "the suggestion of disruption was manifest").  The same is true of United States v. Pugh, which not only involved the allegation that the defendant, a veteran of the U.S. Air Force, had traveled to Syria to join ISIS, but also with destroying

7

evidence to obstruct the grand jury investigating his material support charge.  150 F. Supp. 3d 218, 221 (E.D.N.Y. 2015).

With no allegation of violence or obstruction by Mr. El Gammal, and only a generalized allegation that ISIS wishes Americans harm, this case lies far afield.  The government's argument that the venirepersons will face or fear harm is speculative and lacks factual substantiation.  The jurors will only have reason to fear service if this Court gives them one.

C.   If This Court Reverses Itself And Grants The Government's Request, Then It Should Also Reverse Itself And Grant The Defense's Request For The Use Of Jury Questionnaires.

If this Court reverses its earlier decision and grants the government's request, then it should, for balance, also reverse itself and grant the defense's request for the use of jury questionnaires.  "District courts routinely employ questionnaires to facilitate voir dire in a number of circumstances," including "where an anonymous jury is to be empaneled."  Quinones, 511 F.3d at 299 (citing Thai, 29 F.3d at 801); United States v. Dervishaj, 2015 WL 3794803, at *1 (E.D.N.Y. June 17, 2015) (same).  Anonymous juries and questionnaires go hand-in-hand: a questionnaire allows a more probing search for bias, and allows the parties to ask questions that couldn't be asked in open court (jurors' ages, occupations, places of residence, etc.) without rendering anonymity ineffectual.  Second Circuit decisions upholding the empanelment

of anonymous juries regularly note the use of a questionnaire.

See, e.g., United States v. Kaziu, 559 F. App'x 32, 38 (2d Cir.

2014); United States v. Kadir, 718 F.3d 115, 120 (2d Cir. 2013);

United States v. Pica, 692 F.3d 79, 88 (2d Cir. 2011); Quinones,

511 F.3d at 297; United States v. Gotti, 459 F.3d 296, 345 (2d

Cir. 2006); United States v. Rivera, 60 F. App'x 854, 858 (2d

Cir. 2003); Thai, 29 F.3d at 801; Tutino, 883 F.2d at 1133.

   And, as the defense has explained (Dkt. No. 92, at 23),

questionnaires have become common in terrorism trials, including

most of the proceedings cited in the government's motion.  See,

e.g., Pugh, 150 F. Supp. 3d at 228 (questionnaire "is likely

necessary" in light of anonymous jury); id., 15 Cr. 116

(E.D.N.Y.), Dkt. Nos. 87 (Feb. 9, 2016) and 100 (Feb. 16, 2016);

United States v. Ghailani, 98 Cr. 1023 (S.D.N.Y.), Dkt. No. 988

(July 30, 2010); United States v. Stewart, 02 Cr. 395 (S.D.N.Y.)

Dkt. No. 375 (May 4, 2004); United States v. Abdel Rahman, 93

Cr. 181 (S.D.N.Y.), Oct. 4, 1994 Dkt. Entry.

   Moreover, as the government has now recognized, "there has

been increased media attention to the case" and it is "likely

that this case will attract increasing publicity once the trial

commences."  Gov't Mot. 5.  (As this Court observed, this

position represents a complete about-face from the government's

view, in opposing the defense's request for a questionnaire,

that "this is not ... a case that has received significant pre-

trial publicity." Dkt. No. 80, at 34).  The government can't have it both ways.  Either the public profile of this case is high enough that both anonymity and a questionnaire are necessary, or the case is ordinary enough that neither is.

Using a questionnaire will not entail significant delay. The defense has already submitted a questionnaire (Dkt. No. 76), and the government did not object to its substance.  Or, the Court can adapt the voir dire form that it has prepared.  The venirepersons can complete (and the Court and the parties can review) questionnaires on Monday.  Unqualified venirepersons can be excused for cause on Tuesday, and voir dire can then proceed (more quickly, as the remaining venirepersons will have been pre-screened).  Deciding to use a questionnaire is workable, and any blame lies at the feet of the government, which chose to reopen debate on this settled issue on the Friday before a Monday trial.  But a questionnaire is a necessary complement to protect the presumption of Mr. El Gammal's innocence and his right to an impartial jury in the face an anonymous or semi-anonymous jury.  However, the simplest course is for this Court to stick to its prior rulings -- both of them.

**Conclusion**

For the foregoing reasons, the government's motion to refer to venirepersons and jurors by number should be denied.

Dated:     New York, New York
           January 8, 2017

                              Respectfully submitted,
                              Federal Defenders of New York

                              /s/
                              Daniel Habib, Esq.
                              Annalisa Mirón, Esq.
                              Sabrina Shroff, Esq.
                              Attorneys for Defendant
                              **Ahmed Mohammed El Gammal**
                              52 Duane Street - 10th Floor
                              New York, NY 10007
                              Tel.: (212) 417-8700