

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

January 16, 2017

**By ECF and Email**

The Honorable Edgardo Ramos
United States District Judge
Southern District of New York
40 Foley Square
New York, New York 10007

    Re:    <u>United States v. Ahmed Mohammed El Gammal</u>, 15 Cr. 588 (ER)

Dear Judge Ramos:

    The Government writes to preclude the defendant from offering (i) DX 122-II-T, Facebook messenger exchanges from May and June 2013 and September 2015 between Ateyya Aboualala and another individual ("Individual 1"), and (ii) a translation of Aboualala's resume, which is currently unmarked.[1]

## I.    The Court Should Preclude DX 122-II-T

### A.  Background

    DX-122-II-T contains two sections. Chronologically, the first consists of a conversation between Aboualala and Individual-1 from May and June 2013—over a year before the conspiracy in this case began—in which Aboualala discusses his translation of a book concerning "illiterate scholars, faqihs, politicians, novelists and judges who didn't learn reading or writing but were extremely dignified." DX 122-II-T at 3. Aboualala says the book is "basically a response to the hypothesis from Alaa Al-Aswani and secularists in Egypt regarding the illiterate people right to vote [sic]." *Id.* Aboualala later asks Individual-1 to publish a "post in my name" regarding "Bedouins in the desert" who may "forcibly take control with weapons" of certain cities in Egypt.

    DX-122-II-T also contains a conversation between Aboualala and Individual-1 from September 8 through 22, 2015, shortly after the defendant's arrest. In this conversation, Aboualala refers to the defendant being "detained in America and we still don't know they're going to with him. We contacted a lawyer and he still has to look into the case. We may need to launch a campaign regarding his arrest." *Id.* at 1. Aboualala then sends Individual-1 press accounts of the defendant's arrest and says "he's a citizen." *Id.* Individual-1 responds "[t]his is

---

[1] The defense provided these exhibits to the Government on January 7, 2017.

Hon. Edgardo Ramos
January 16, 2017

a huge problem. . . . If there is hope in the case it will be adopted by Islamic organizations . . . . If there's no hope, they won't take it." *Id.*

Aboualala then states "Yeah Sami's father accused him only because Sami knows him but he has nothing to do with Daesh." Individual-1 responds "Oh God, give us strength. God willing he's going to come out innocent. The judiciary here is good." *Id.* at 1-2. Aboualala then states that he "asked Sami to record a video and say in it that he went to Syria out of his own will." *Id.* at 2. Individual-1 responds "The most important thing is that he call his father. Yes, that's the bottom line. He must drop the case. He sadly ruined the man's life. Because lawyers charge hundreds of thousands of dollars." *Id.* at 2. Aboualala responds that "Yes, the brother is telling me that it's going to cost a quarter of a million." *Id.* Individual-1 responds "True unfortunately . . . . But this is going to take some time. May God grant him justice. And bring out his innocence . . . . I'm no law expert. American law is too complicated and required a lawyer." Aboualala then states that he has "an appointment with [Individual-2] because he had an experience in America and it got settled."

### B. DX 122-II-T is Almost Entirely Irrelevant

First, almost all the messages in DX 122-II-T are irrelevant. Individual-1's statements about the case, in which he had no personal involvement,[2] Individual-1's statements regarding the U.S. judiciary and the complexity of American law,[3] and Individual-1's statement that the defendant's life has been "ruined . . . because lawyers charge hundreds of thousands of dollars" do not make "any fact of consequence" in this case "more or less probable than it would be without the evidence," Fed. R. Evid. 401. Similarly, Aboualala's statements that the defendant apparently told him "it's going to cost of a quarter of a million" and that he has "an appointment with [Individual-2] because he had an experience in America and it got settled" are also irrelevant, as is the 2013 exchange between Aboualala and Individual-1 regarding a book Aboualala purportedly wrote and a potential news story about Bedouin tribesmen.

Further, the above statements should also be precluded under Rule 403. In particular, statements regarding the costs of the defense and supplications that the defendant is going to "come out innocent" raise a substantial risk of confusion of the issues and misleading the jury because these statements "would suggest that the jurors should have sympathy for" the defendant "and would implicitly encourage them to nullify by acquitting him based on something other than the question of whether the Government has proved each element of the crimes charged beyond a reasonable doubt." *United States* v. *Sabir*, No. S4 05 Cr. 673 (LAP), 2007 WL 1373184, at *9 (S.D.N.Y. May 10, 2007).

---

[2] *See, e.g.*, DX 122-II-T at 1-2 ("This is a huge problem. If there is hope in the case it will be adopted by Islamic organizations . . . . If there's no hope they won't take it . . . Oh God give us strength. God willing he's going to come out innocent"); *id.* at 2 ("He must drop the case . . . [T]his is going to take some time. May God grant him justice. And bring out his innocence.").

[3] *See* DX 122-II-T at 2 ("The judiciary here is good"); *id.* ("American law is too complicated and required a lawyer").

Hon. Edgardo Ramos
January 16, 2017

### C. DX 122-II-T Contains Numerous Pieces of Inadmissible Hearsay

In addition, DX 122-II-T contains numerous pieces of hearsay. The below statements, among others, are all out-of-court, factual declarations that appear to be offered for the truth of the matter asserted, and to which no hearsay exception applies.

- "A 'brother' is detained in America and we still don't know what they're going to do with him. We contacted a lawyer and he still has to look into the case." DX 122-II-T at 1.

- "If there is hope in the case it will be adopted by Islamic organizations. If there's no hope in it, they won't take it." *Id.*

- "Yeah, Sami's father accused him only because Sami knows him but he has nothing to do with Daesh." *Id.*

- "I asked Sami to record a video and say in it that he went to Syria out of his own will." *Id.* at 2.[4]

- "He sadly ruined the man's life. Because lawyers charge hundreds of thousands of dollars." *Id.* at 2.

- "Yes, the brother is telling me it's going to cost a quarter of a million." *Id.* at 2.

- "American law is too complicated and required a lawyer." *Id.* at 2.

- "mmmm Ok, I have an appointment with [Individual-2] because he had an experience in America and it got settled." *Id.* at 2.

- "The 'Illiterate' Book I translated in it for wonderful examples of Islamic high level persons including illiterate scholars, faqihs, politicians, novelists and judges

---

[4] In ruling on pre-trial motions *in limine*, the Court did allow the Government to introduce statements similar to this one. However, it did so under the co-conspirator exception to the hearsay rule. *See* 12/19/16 Tr. 47-48 ("As to the written communications about the creation of the YouTube video, the Court finds them admissible as statements by co-conspirators."). The co-conspirator exception derives from the exception for statements by party opponents, and thus the defendant cannot rely on that exception here, because there is no evidence of a conspiracy involving *the Government* and Aboulalala or Individual-1. *See* 5 Weinstein's Federal Evidence § 801.34 ("For a statement to be nonhearsay under Rule 801(d)(2)(E), the proponent must show the existence of a conspiracy whose membership includes the declarant and the party *against whom the statement is offered*." (emphasis added)); *United States* v. *Tracy,* 12 F.3d 1186, 1196 (2d Cir.1993) (citing *Bourjaily v. United States,* 483 U.S. 171, 175, 107 S.Ct. 2775, 97 L.Ed.2d 144 (1987)).

Hon. Edgardo Ramos
January 16, 2017

> who didn't learn reading or writing but were extremely dignified.  I picked 140 examples and the book comprises more than 17 volumes." *Id.* at 3.

- "I'm still negotiating with the publisher and will send you a copy of the summary.  I value your opinion so much.  This is basically a response to the hypothesis from Alaa Al-Aswani and secularists in Egypt regarding the illiterate people right to vote." *Id.* at 3.

- "There's news about the Bedouins in the desert around Belbais City to forcibly take control with weapons in case of any violation to legitimacy on 6/30.  Belbais and Tenth of Ramadan cities and their surroundings will become under their control.  Sources are from Arab tribes in Egypt.  I Atteia Abuelela may be your source, a journalist and a news reporter." *Id.* at 3.

- "This will take me time to read and I'm very busy with work this month." *Id.* at 3.

Accordingly, the Court should preclude the above statements on hearsay grounds, in addition to the relevance and Rule 403 grounds outlined above.

### D. The Defense Cannot Use the Rule of Completeness to Introduce Otherwise Inadmissible Statements in DX 122-II-T

Finally, to the extent the Court finds any of portion of DX 122-II-T admissible, the defense cannot use the so-called Rule of Completeness of compel the admission of otherwise inadmissible portions of the document.  Federal Rule of Evidence 106 provides that, "[i]f a party introduces all or part of a writing or recorded statement, *an adverse party* may require the introduction, at that time, of any other part — or any other writing or recorded statement — that in fairness ought to be considered at the same time." (emphasis added).  Further, "Rule 106 does not 'render admissible evidence that is otherwise inadmissible[.]'" *United States* v. *Guevara*, 277 F.3d 111, 127 (2d Cir. 2001) (quoting *United States* v. *Terry*, 702 F.2d 299, 314 (2d Cir. 1983)).

Thus, both because the rule applies only to "adverse part[ies]" and does not allow the admission of otherwise inadmissible evidence, the defense cannot use Rule 106 to admit additional content from its own exhibits.

### II.     The Court Should Also Preclude the Defense from Offering Aboualala's Resume

The Court should also preclude the defense from offering Aboualala's resume.  To begin with, the resume is hearsay, because it is being offered for the truth of the matter asserted—that Aboualala was educated at certain schools, had certain jobs, took certain courses, and wrote certain publications.[5]

---

[5] The Government asked the defense for their theory of admissibility on the resume, but the defense declined to provide any detail.

Hon. Edgardo Ramos
January 16, 2017

  Further, even if the defense can establish a valid non-hearsay purpose of the resume, the resume is not relevant. The most recent date on the resume is September 2012, *see* Ex. B at 1, almost two years before the charged conspiracies began. Moreover, certain sections refer to much earlier events, such as Aboualala's "teaching experience" between 2006 and 2008, and other sections contain no date range at all, including undated "Courses, Training, and Skills" and publications purportedly written by Aboualala.

  In short, the Court should preclude the defense from offering Aboualala's resume.

         Respectfully submitted,

         PREET BHARARA
         United States Attorney

    by: _____/s/_____
         Andrew DeFilippis
         Brendan Quigley
         Negar Tekeei
         Assistant United States Attorneys
         (212) 637-2231/2190/2482

cc: Sabrina P. Shroff/Annalisa Mirón/Daniel Habib
   *Counsel for Ahmed Mohammed El Gammal*