

*U.S. Department of Justice*

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

January 16, 2017

**By ECF and Email**

The Honorable Edgardo Ramos
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

    Re:    <u>United States</u> v. <u>Ahmed Mohammed El Gammal</u>, 15 Cr. 588 (ER)

Dear Judge Ramos:

    The Government respectfully submits this letter to address concerns raised by the defense efforts, through evidence and argument, to inject into the trial the largely irrelevant issue of whether the defendant was a member of ISIS, or whether his personal behavior generally conformed with the supposed dictates of ISIS's leadership and sharia law.

    As the Court is aware, on January 11, 2016, the defense admitted into evidence over the Government's objection: (1) an Avondale Smoke Shop card, and (2) an Arizona voter registration card, both of which were seized by the FBI from the defendant's home at the time of his arrest.[1]  The defense offered these items under the theory that such evidence tends to negate the Government's allegation that the defendant "possessed the necessary mental state to aid and abet the provision of materials that purport to ISIS" and reflects behavior by the defendant that ISIS "regards as sinful."  Trial Tr. at 52.  As the Government noted in its objection, these items have little, if any, probative value because the Government need not prove—and has not alleged—that the defendant was a member of ISIS, or that he adhered to all (or even most) of its ideological tenets.  Indeed, the Government asserted in its opening statement that "the defendant himself did not join ISIS."  *Id.* at 34.  That is because neither membership in a foreign terrorist organization nor strict adherence to its ideology is a required element of providing or conspiring to provide material support to a foreign terrorist organization, or of conspiring, aiding, or abetting in the receipt of military training from such an organization.  *See, e.g.*, Gov't Proposed Jury instruction at 5 ("The defendant does not have to have joined or become a member of the organization in order to have provided material support and resources to the organization."); *id.* at 23 ("You need not find that the defendant was a member of ISIL or any other organization to find that the defendant was a member of the conspiracy in question.").  *See also* Jury Instructions in *United States* v. *Kassir*, S2 04 Cr. 356 (JFK) (S.D.N.Y. 2009) (Tr. 2269-70);

---

[1] The defense has also indicated, through their exhibit list, that they intend offer the defendant's voting records into evidence.

Hon. Edgardo Ramos
January 16, 2017

*United States* v. *Sattar*, S1 02 Cr. 395 (JGK) (S.D.N.Y. 2005) (Tr. 12336-37); *United States* v. *Paracha*, 03 Cr. 1197 (SHS) (S.D.N.Y. 2005) (Tr. 1521).  Thus, the Government respectfully submits that such evidence has extremely limited, if any, probative value.

   Moreover, the introduction of such evidence has created a substantial risk of confusing the jury and causing unfair prejudice to the Government.  Specifically, the defense's repeated references at trial to the fact that the defendant smoked, voted, and engaged in other common behaviors that are prohibited by ISIS/sharia law are likely to leave the jury with the misimpression that the defendant's formal membership in ISIS and/or complete adherence to its ideology are required elements of the charged offenses.  *See, e.g.,* Trial Tr. at 533-35; 343-44 (defense counsel stating during oral argument their intent to prove that "Gammal lived as an average American in an average American suburb in an average American state in the United States of America").  Similarly, such evidence (and the arguments that the defense apparently intends to make from it) improperly invites the jury to speculate about why the Government is not offering evidence to prove the defendant's fealty to ISIS principles, or to rebut the defense claims of the purported lack thereof.

   In order to minimize the risk of any confusion or unfair prejudice, the Government therefore respectfully requests that the Court instruct the jury—on each occasion when evidence of the type described above is referenced or admitted, as well as at the conclusion of trial in the jury charge—as follows: "You have heard (or are about to hear) evidence about the defendant's behavior around the time of the charged crimes that is allegedly inconsistent with membership in ISIS or what ISIS defines as sharia law.  I remind you that membership in ISIS or obedience to its purported rules are not elements of the charged crimes, and thus the Government has no burden to prove either of these things.  Rather, the evidence is being offered for the limited purpose of addressing the defendant's intent to commit the charged offenses, and should be considered by you only as it may bear, or not, on whether the Government has proven that element.  I also remind you that the defendant has no burden to prove his innocence or disprove any element of the charges in this case."

   The Government also advises the Court and defense counsel that, given the emphasis placed on this issue by the defense, it is considering offering limited evidence to address and rebut the defendant's assertions on this issue.  Specifically, the Government is currently in the process of obtaining from the Florida Division of Elections voting records of Omar Mateen, the perpetrator of the June 2016 nightclub attack in Orlando, Florida.  Those records show that Mateen voted repeatedly, including as recently as March 2016—just three months prior to the Orlando attacks.  The Government would offer these records for the limited purpose of undermining and rebutting the defense's apparent contention that the defendant lacked the requisite mental state for the charged offenses because individuals who support ISIS do not engage in activities forbidden by ISIS, like voting.

   The Government's proffered evidence is admissible in these circumstances under the Rules of Evidence, for at least two reasons.  First, the evidence is directly responsive to the defense theory discussed above because it demonstrates that even a supporter of ISIS who took the major step of carrying out a terrorist attack voted repeatedly in the United States, including just months before the attack. Given the evidence and arguments made by the defense

Hon. Edgardo Ramos
January 16, 2017

thus far, the Government is entitled to offer countervailing proof demonstrating that ISIS supporters—including those in the United States—do not always adhere strictly to the rules, practices, and mandates of ISIS's leadership. *See, e.g., United States* v. *Basciano*, No. 03-CR-929 (S-5) NGG, 2006 WL 544465, at *3 (E.D.N.Y. Mar. 6, 2006) (where the defense in its "opening statement and through cross-examination [asserted] that members of [an] organized crime family are not permitted to commit murder without permission from the Boss," evidence of an un-charged murder committed without authorization was admissible because defense had "raised a question as to whether [the defendant] could—or would—commit an unapproved murder [or] was too scared to disobey [crime] family rules."); *see also United States* v. *Rosado,* 728 F.2d 89, 95 (2d Cir. 1984) (holding in case alleging criminal contempt for failure to testify in grand jury concerning terrorist bombings that "[o]nce the appellants were permitted to [offer testimony] that the Government was misusing the grand jury as an instrument of political oppression. . . it became entirely appropriate for the prosecution to respond with some indication of the [terrorist group's] bombings that the grand jury was investigating and the obstacles encountered in determining the identities of the perpetrators.").

Second, the evidence is not unduly prejudicial because testimony concerning the Orlando attack is already in the record through the testimony of expert Aaron Zelin. Trial Tr. at 484. That limited testimony was elicited in the context of Zelin's discussion of major attacks carried out by ISIS. Zelin did not provide details concerning the nature, specific location, or methods of the attack—other than that it occurred in Orlando; that Mateen was the perpetrator; and that the weapon used was a gun. Trial Tr. at 484. Indeed, evidence of the attack itself is highly probative and not unduly prejudicial because the Government must prove as an element of the charged material support offenses that ISIS is designated as a foreign terrorist organization, *and* that the defendant was aware of ISIS's designation as a foreign terrorist organization or of the fact that ISIS has engaged in terrorist activities or terrorism. Thus, the evidence was admitted for a proper purpose, and there is limited, if any, marginal prejudice that will result from the admission of additional evidence proving merely that Mateen voted in Florida.

Hon. Edgardo Ramos
January 16, 2017

      Accordingly, the Government respectfully requests that the Court provide the above-described limiting instructions in the final jury charge and on each occasion when evidence of the defendant's participation in activities purportedly inconsistent with ISIS's ideology is offered into evidence, and permit the Government to offer into evidence the voting records of Omar Mateen obtained from the Florida Division of Elections.

                        Respectfully submitted,

                        PREET BHARARA
                        United States Attorney

by:       /s/                            
            Andrew DeFilippis
            Brendan Quigley
            Negar Tekeei
            Assistant United States Attorneys
            (212) 637-2231/2190/2482

cc: Sabrina P. Shroff/Annalisa Mirón/Daniel Habib
    *Counsel for Ahmed Mohammed El Gammal*