```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - -  x
UNITED STATES OF AMERICA           :
                                   :
       - v -                       :
                                   :    15 Cr. 588 (ER)
AHMED MOHAMMED EL GAMMAL,          :
            Defendant.             :
- - - - - - - - - - - - - - - - -  x
```

**DEFENDANT AHMED MOHAMMED EL GAMMAL'S OPPOSITION TO THE
GOVERNMENT'S JANUARY 16, 2017 MOTION TO PRECLUDE DX-122-II-T AND
ATTIA ABOUALALA'S RESUME**

```
                        Federal Defenders of New York
                        Daniel Habib, Esq.
                        Annalisa Mirón, Esq.
                        Sabrina Shroff, Esq.
                        Attorneys for Defendant
                            Ahmed Mohammed El Gammal
                        52 Duane Street - 10th Floor
                        New York, NY 10007
                        Tel.: (212) 417-8700


TO:      PREET BHARARA, ESQ.
         United States Attorney
         Southern District of New York
         1 St. Andrew's Plaza
         New York, NY 10007

Attn:    Andrew DeFilippis, Esq.,
         Brendan Quigley, Esq.,
         Negar Tekeei, Esq.
         Assistant United States Attorneys
```

The defense submits this memorandum of law in opposition to the government's January 16, 2017 motion to preclude DX-122-II-T, translations of Facebook messages between Attia Aboualala and "Ahmed Ghanim," as well as Aboualala's resume, Dkt. No. 151 ("Gov't Mot."). As to DX-122-II-T, Rule 806 permits the introduction of statements by Aboualala inconsistent with hearsay declarations that the government has already introduced. The remainder of the conversation is admissible for the non-hearsay purpose of providing context. The defense offers Aboualala's resume not for its truth, but for its effect on the listener, El Gammal. The resume shows El Gammal's knowledge that Aboualala was a legitimate journalist, and negates the government's argument that El Gammal's purpose in referring Samy to Aboualala must have been to facilitate Samy's travel to ISIS.

**Argument**

A. <u>DX-122-II-T Is Admissible.</u>

As relevant,[1] DX-122-II-T contains a September 2015 Facebook exchange between Aboualala and "Ahmed Ghanim" in which the two discuss El Gammal's arrest. Two statements (to which the government objects on hearsay grounds alone) have particular significance. First, after recounting that El Gammal has been arrested and providing "Ahemd Ghanim" with links to media

---

[1] The defense does not intend to introduce the 2013 messages.

1

coverage of the arrest, Aboualala says: "Sami's father accused him only because Sami knows him but he has nothing to do with Daesh."  That statement is admissible under Rule 806 because it is inconsistent with Aboualala's April 2015 statement, already in evidence, that "Brother Ahmed is one of the good brothers, but he is of the Daesh brotherhood."  GX-122-G-T, at 2.

This Court admitted Aboualala's "Daesh brotherhood" statement pursuant to the co-conspirator exception, Rule 801(d)(2)(E).  See 12/29/16 Tr. 36.  Rule 806 provides: "When ... a statement described in [Rule 801(d)(2)(E)] has been admitted in evidence, the declarant's credibility may be attacked ... by any evidence that would be admissible for those purposes if the declarant had testified as a witness." Specifically, "[t]he court may admit evidence of the declarant's inconsistent statement ... regardless of when it occurred or whether the declarant had an opportunity to explain or deny it." Id.  Under Rule 806, "a hearsay declarant may be impeached by an inconsistent statement that was made prior to or subsequent to the hearsay declaration."  United States v. Trzaska, 111 F.3d 1019, 1024 n.1 (2d Cir. 1997).  "Rule 806 does not give the court the discretion to refuse impeachment evidence.  The court, having received hearsay in evidence, must permit opposing counsel to try to impeach the credibility of the declarant." 5 Weinstein's Fed. Evid. § 806.03[1].

2

Here, the government has offered Aboualala's hearsay statement that El Gammal "is of the Daesh brotherhood." Rule 806 affords the defense the opportunity to challenge that accusation with Aboualala's directly contradictory statement, made just a few months later, that El Gammal "has nothing to do with Daesh." Because Aboualala's statement that El Gammal "has nothing to do with Daesh" is therefore admissible, the remainder of his statements (and those of "Ahmed Ghanim") necessary to make the exchange intelligible are admissible for the non-hearsay purpose of providing context. See, e.g., United States v. Sorrentino, 72 F.3d 294, 298 (2d Cir. 1995); United States v. Liu, 2015 WL 4460898, at *13 (S.D.N.Y. July 20, 2015).

Aboualala's second significant statement in DX-122-II-T is: "I asked Sami to record a video and say in it that he went to Syria out of his own will." This statement is also admissible under Rule 806 because it's inconsistent with Aboualala's near-contemporaneous assertion to Samy that El Gammal requested the exculpatory YouTube video. GX-113-A-T, at 22 ("Now I spoke with Ahmed, who is asking you to send video is very necessary[.] Please and Please Send video Ahmed says he is important[.]").

Rule 806 embodies a liberal view of inconsistency: "It is well settled that for two statements to be inconsistent, they 'need not be diametrically opposed.'" Trzaska, 111 F.3d at 1024 (quoting United States v. Agajanian, 852 F.2d 56, 58 (2d Cir.

3

1988)).  Rather, "statements are inconsistent if there is 'any variance between the statement and the testimony that has a <u>reasonable bearing on credibility</u>.'"  Id. (quoting 28 Wright & Gold, Fed. Practice & Proc. § 6203, at 514 (1993)).  "'The test should be, could the jury reasonably find that a witness who believed the truth of the facts testified to would have been unlikely to make a ... statement of this tenor?'"  Id. (quoting McCormick on Evidence § 34, at 115 (4th ed. 1992)).

  Aboualala's statements satisfy this definition.  On the one hand, Aboualala told Samy that El Gammal demanded the production of the YouTube video; on the other, Aboualala told "Ahmed Ghanim" that he, Aboualala, was responsible because El Gammal was innocent and uninvolved with ISIS.  Both assertions cannot be true.  And the jury could reasonably conclude, in light of Aboualala's statements to "Ahmed Ghanim," that when he invoked El Gammal to Samy, Aboualala was lying.  The government has already promised the jury that the YouTube video "is a transparent, almost ridiculous denial that is powerful proof" of El Gammal's guilt.  1/10/17 Tr. 32.  And the government has flagged its intent to "rely on" the YouTube video "to argue that" El Gammal, Samy, and Aboualala "demonstrated consciousness of guilt through their efforts to deceive others regarding their criminal conduct."  Dkt. No. 80, at 30.  In light of the importance the government has ascribed to this issue, the

4

defense is entitled to contest Aboualala's assertion to Samy that El Gammal sought the video's creation.  And, as above, once Aboualala's inconsistent statement is admitted, the rest of the conversation, as necessary for intelligibility, should be admitted for the non-hearsay purpose of providing context. Sorrentino, 72 F.3d at 298; Liu, 2015 WL 4460898, at *13.

The government has not contested the relevance of these two statements, with good reason.  Both go to the heart of the disputed issues on trial, namely, whether El Gammal had the necessary intent to provide material support to ISIS, and whether he demonstrated consciousness of guilt by procuring a false exculpatory statement.  As such, both implicate El Gammal's constitutional right to present a complete defense.

B.   Aboualala's Resume Is Admissible.

The government objects to the introduction of Aboualala's resume on hearsay and relevance grounds.  Gov't Mot. 4-5.  Both objections are misplaced.  As the search warrant return on Aboualala's Facebook account (GX-120) indicates, Aboualala sent El Gammal copies of his resume via Facebook message in October 2013, November 2013, and April 2014.  See also 1/12/17 Tr. 257-58 (case agent so testifying).  Hence, the resume is offered not for its truth, but for its effect on the listener, El Gammal, and is therefore not hearsay.  See United States v. Rowland, 826 F.3d 100, 115 (2d Cir. 2016) (citing Fed. R. Evid.

801(c)). The resume is relevant because it shows El Gammal's awareness that Aboualala was a legitimate journalist with a steady work history, and academic as well as professional training. Indeed, this Court has already ruled relevant and admissible evidence showing El Gammal's "awareness" that Aboualala "worked in and was familiar with the TV journalism industry in Turkey and stations supportive of the Muslim Brotherhood." 1/6/17 Tr. 22. Further, this evidence supports the defense contention that El Gammal could have referred Samy to Aboualala for lawful purposes (namely, professional assistance), while negating the government's contention that El Gammal must have intended that Aboualala facilitate Samy's travel to ISIS in Syria.

## Conclusion

For the foregoing reasons, the government's motion to preclude DX-122-II-T and Aboualala's resume should be denied.

Dated:    New York, New York
          January 17, 2017

                                    Respectfully submitted,
                                    Federal Defenders of New York

                                    /s/
                                    Daniel Habib, Esq.
                                    Annalisa Mirón, Esq.
                                    Sabrina Shroff, Esq.
                                    Attorneys for Defendant
                                        **Ahmed Mohammed El Gammal**
                                    52 Duane Street - 10th Floor
                                    New York, NY 10007
                                    Tel.: (212) 417-8700