UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - -   x
UNITED STATES OF AMERICA            :
                                    :
        - v -                       :
                                    :       **15 Cr. 588 (ER)**
**AHMED MOHAMMED EL GAMMAL,**        :
           Defendant.               :
- - - - - - - - - - - - - - - -   x

**DEFENDANT AHMED MOHAMMED EL GAMMAL'S OPPOSITION TO THE
GOVERNMENT'S JANUARY 16, 2017 MOTION FOR A LIMITING INSTRUCTION,
AND TO INTRODUCE OMAR MATEEN'S VOTING RECORDS**

                    Federal Defenders of New York
                    Daniel Habib, Esq.
                    Annalisa Mirón, Esq.
                    Sabrina Shroff, Esq.
                    Attorneys for Defendant
                       **Ahmed Mohammed El Gammal**
                    52 Duane Street - 10th Floor
                    New York, NY 10007
                    Tel.: (212) 417-8700

TO:       PREET BHARARA, ESQ.
          United States Attorney
          Southern District of New York
          1 St. Andrew's Plaza
          New York, NY 10007

Attn:     **Andrew DeFilippis, Esq.,**
          **Brendan Quigley, Esq.,**
          **Negar Tekeei, Esq.**
          Assistant United States Attorneys

The defense submits this memorandum of law in opposition to the government's January 16, 2017 motion for a limiting instruction, and to introduce evidence of Omar Mateen's voting records, Dkt. No. 152 ("Gov't Mot."). The proposed limiting instruction should be denied because the defense has made only appropriate, focused references to El Gammal's smoking and voting, and the government's concerns can be addressed through substantive instructions and argument. Mateen's voting records should be excluded as irrelevant, cumulative, confusing, and prejudicial.

## Background

On January 11, this Court ruled relevant and admissible two pieces of evidence seized during the execution of a search warrant at El Gammal's home: a card from the Avondale Smoke Shop indicating the purchase of ten packs of cigarettes (DX-6), and an Arizona voter registration card in El Gammal's name (DX-13). See T.55. This Court concluded that this evidence cleared Rule 401's "minimal threshold for relevance" by showing that El Gammal has engaged in conduct that ISIS deems un-Islamic, negating the government's argument that he possessed the mental state necessary to provide material support. T.55. (Thus, the government's extended effort to argue this evidence's irrelevance, Gov't Mot. 1-2, is just another refusal to accept

this Court's rulings.  <u>See, e.g.</u>, Dkt. No. 144 (motion for anonymous jury)).

In line with this Court's ruling, the defense introduced these exhibits and elicited brief testimony establishing their relevance.  Contrary to the government's contention that the defense has made "repeated references" to this material or given it special "emphasis," Gov't Mot. 2, the defense has:

- Stated in opening that El Gammal "smokes Marlboro cigarettes," T.37;
- Introduced a photo of the Avondale Smoke Shop card and elicited testimony that the card has 10 stamps, T.302-03;
- Introduced the voter registration card and elicited testimony describing it, T.310-12;
- Elicited from the government's expert on militant jihadist groups, Aaron Zelin, testimony that ISIS prohibits smoking and punishes smoking with whipping and death, T.533-35;
- Elicited from Zelin testimony that ISIS regards voting as apostasy, T.535-36, 538-39.

This targeted presentation has consumed no more than 10-15 minutes of what promises to be a three-week trial.  Put another way, the trial transcript so far runs 886 pages and about 20,000 lines, figures that will double or triple.  The defense's references to these exhibits appear on parts of 12 transcript pages (1.3% of the total) and cover about 160 lines (0.8% of the total).  It is hard to imagine how the defense could have introduced this material with any less fanfare, and we do not anticipate offering further evidence about smoking or voting.

**Argument**

A.   <u>The Government's Limiting Instruction Is Unnecessary.</u>

By overstating the significance that the defense has
attached to evidence that El Gammal smoked and voted, the
government has likewise overstated the danger of jury confusion
and prejudice, and so the need for a limiting instruction.
Properly weighed, the government's concerns can be addressed, as
is usual, through substantive instructions and arguments.

As to the former, the parties have proposed jury
instructions that reflect the elements of the offenses charged.
<u>See</u> Dkt. No. 73, Gov't Request Nos. 3-27; Dkt. No. 75, Def't
Request Nos. 8-28.  Both sets of proposals reflect that the
government need not prove El Gammal's "membership in ISIS" or
his "obedience to its purported rules."  Indeed, the parties
have requested an instruction that membership in ISIS is neither
an element nor a crime.  Dkt. No. 73, Gov't Request Nos. 5, 11;
Dkt. No. 75, Def't Request Nos. 9, 14, 19.  In light of the
parties' agreement on the appropriateness of such an
instruction, as well as the defense's limited evidentiary
presentation, there is no danger that the jury will form the
"misimpression" that the government must prove El Gammal's
"formal membership in ISIS."  Gov't Mot. 2.  Nor is the jury
likely to "speculate" about the government's supposed failure to
"prove the defendant's fealty to ISIS principles."  Gov't Mot.

3

2.  That concern is fanciful.  The government has introduced substantial evidence -- in the form of individual communications, public Facebook posts, and incendiary videos -- that El Gammal sympathized with ISIS and embraced its ideological and political objectives.

Moreover, the government can mitigate any residual concerns through summation.  The government will, we expect, walk the jury through the elements of each offense charged.  While doing so, the government is free to underscore the absence of any element requiring proof that El Gammal belonged to ISIS or embraced all of its positions.  Likewise, the government can argue that evidence of El Gammal's smoking and voting proves little about his mental state.  On January 17, this Court declined the defense's request for a limiting instruction with respect to evidence that El Gammal posted to Facebook articles concerning ISIS's military and terrorist activities, reasoning that we could make our argument to the jury.  T.729.  The same ruling is proper here.

B.  Evidence That Omar Mateen Voted Is Inadmissible.

The government's request to, as this Court put it, "introduce certain voting records of an individual not here on trial," T.703, is not sound.  The evidence is irrelevant, cumulative, confusing, and prejudicial.  As to relevance, no authority supports the proposition that the government can prove

4

a defendant's mental state through another person's conduct.[1]
The defense has offered evidence of El Gammal's own actions to
support an argument about his own mental state and whether he
had the intent necessary to commit the charged crimes.  The
government, by contrast, proposes to offer proof of an unrelated
third party's actions, which, as a matter of law, prove nothing
about El Gammal.  Likewise, the government has not proffered
evidence sufficient to establish conditional relevance under
Rule 104(b).  The government's theory is that Mateen's voting
history rebuts the defense's mental-state argument by showing
that "even a supporter of ISIS who took the major step of
carrying out a terrorist attack voted repeatedly in the United
States."  Gov't Mot. 3.  Thus, before offering Mateen's voting
records, the government would have to tender admissible evidence
sufficient for a jury to find that Mateen was the Orlando
shooter and that he was a supporter of ISIS.  The government has
introduced no evidence in support of the latter assertion --
Zelin testified only that ISIS had claimed responsibility for
the attack.  T.483.

---

[1] United States v. Basciano, 2006 WL 544465 (E.D.N.Y. March 6,
2006), allowed the government to introduce evidence of the
defendant's conduct that was inconsistent with his mental-state
defense.  United States v. Rosado, 728 F.2d 89 (2d Cir. 1984),
involved rebuttal of a nullification defense, not a mental-state
defense, and hence does not support the argument that a third
party's conduct can be probative of a defendant's state of mind.

Should the government endeavor to prove those premises, the defense will be obliged to contest them.  Doing so will require investigation into the facts of the shooting and Mateen's motives.  The latter task, in turn, will entail witness interviews, investigation, and review of voluminous material in the government's possession for clues.  See NBC News, Noor Salman, Wife of Orlando Shooter Omar Mateen, Arrested (Jan. 16, 2017) (Attorney General Lynch commenting that government had looked at "every aspect of this case, every aspect of this shooter's life ... to determine ... why did he take these actions"), http://nbcnews.to/2jR59ss.  The defense would be entitled to dispute the claim that Mateen was a "supporter of ISIS" in order to negate the relevance of his voting record.  Thus, admitting Mateen's voting records would, of necessity, spawn a mini-trial about whether he is the Orlando shooter and whether he carried out the attack on ISIS's behalf.

In addition, the defense would be entitled to test the strength of the government's assertion -- i.e., the assertion that there is no correlation between voting and supporting ISIS -- by presenting evidence that other individuals who committed terrorist attacks did not vote.  See, e.g., Politico, Bombing Suspects Not Voters (Apr. 22, 2013) (according to Cambridge Election Commission records, Boston Marathon bombers Tamerlan

6

and Dzhokhar Tsarnaev not registered to vote),

http://politi.co/2jIyd6p.

    We could go on.  For example, we could point out that the
Mateen evidence is cumulative -- the government elicited
testimony from Zelin that ISIS members sometimes break its
rules, T.558-59.  We could cite the obvious danger of unfair
prejudice in linking El Gammal, who is not charged with a
domestic terrorist attack, to Mateen, who committed the worst
domestic terrorist attack since 9/11.  See, e.g., United States
v. Al-Moayad, 545 F.3d 139, 159-62 (2d Cir. 2008) (error to
admit testimony about terrorist bus bombing that "was almost
entirely unrelated to the elements of the charges").  And we
could observe that the government's ostenisble justification for
admitting evidence of the Orlando attack -- to prove El Gammal's
knowledge that ISIS has engaged in terrorism, Gov't Mot. 3 -- is
specious, given that the attack postdates his arrest.  But the
government's request should be rejected for the simplest of
reasons: Mateen's conduct proves nothing about El Gammal's
mental state, which is the only fact at issue here.  Unless this
Court is prepared to abandon that bedrock principle of law and
embark on what's sure to be a lengthy sub-trial about who
committed the Orlando attack and why, the government's request
should be denied.

## Conclusion

For the foregoing reasons, the government's motion should be denied.

Dated:      New York, New York
            January 17, 2017

                              Respectfully submitted,
                              Federal Defenders of New York

                              /s/
                              Daniel Habib, Esq.
                              Annalisa Mirón, Esq.
                              Sabrina Shroff, Esq.
                              Attorneys for Defendant
                                 **Ahmed Mohammed El Gammal**
                              52 Duane Street - 10th Floor
                              New York, NY 10007
                              Tel.: (212) 417-8700

8