**Federal Defenders**
OF NEW YORK, INC.

Southern District
52 Duane Street-10th Floor, New York, NY 10007
Tel: (212) 417-8700 Fax: (212) 571-0392

David E. Patton
*Executive Director*

Southern District of New York
Jennifer L. Brown
*Attorney-in-Charge*

January 23, 2017

**By Email and ECF**

Honorable Edgardo Ramos
United States District Judge
Southern District of New York
Thurgood Marshall U.S. Courthouse
40 Foley Square
New York, New York 10007

Re:  **United States v. El Gammal**, 15 Cr. 588 (ER)

Dear Judge Ramos:

    We write in response to the government's January 22, 2017 letter (Dkt. No. 163) concerning the Court's jury charge; and to raise our objections to the charge.

**I.   The Government's Requests**

A.   The Court's First Amendment Instruction Is Appropriate And Necessary.

    Throughout this trial, the government has introduced substantial evidence of El Gammal's political and religious beliefs, all arising from First Amendment-protected activity. The government has presented the jury with El Gammal's public and private statements on topical matters of great concern to all, but in particular to Egyptians and Muslims; with evidence of news media articles that he read and shared; and with evidence of the lawful videos he watched in the privacy of his home. Much of that material -- in particular, videos of ISIS militants executing captured soldiers and images of beheaded corpses -- is inflammatory, as are El Gammal's own pro-ISIS statements. There is a real risk that the jury will punish El Gammal for his beliefs. Consequently, the Court's First Amendment

Hon. Edgardo Ramos                                        January 12, 2017
United States District Judge                                        Page 2

**United States v. El Gammal, 15 Cr. 588 (ER)**

instruction, which correctly states the law and is consistent with instructions in other material-support prosecutions, is both necessary and appropriate.

    For example, the Court's instruction accurately states that the First Amendment protects the freedoms of speech and association, and that the material-support statute "may not be applied so as to abridge the exercise of those rights." Jury Charge 7. See 18 U.S.C. § 2339B(i). The instruction correctly adds that El Gammal cannot be convicted for his beliefs, for belonging to a foreign terrorist organization, or for associating with its members. See, e.g., Holder v. Humanitarian Law Project, 130 S. Ct. 2705, 2730 (2010) (§ 2339B "does not penalize mere association with a foreign terrorist organization" and "does not prohibit being a member of one of the designated groups or vigorously promoting and supporting the political goals of the group"). Likewise, the instruction properly informs the jury that § 2339B "does not prohibit independent advocacy on behalf of a terrorist organization," and confirms that "people may freely say or write anything they want regarding such organizations." "As the Supreme Court stated in rejecting a First Amendment challenge to § 2339B, the statute leaves persons free to 'say anything they wish on any topic,' including terrorism." United States v. Farhane, 634 F.3d 127, 137 (2d Cir. 2011) (quoting Holder v. Humanitarian Law Project, 130 S. Ct. 2705, 2722-23 (2010)). "The statute does not prohibit independent advocacy or expression of any kind." Humanitarian Law Project, 130 S. Ct. at 2723. And, as cited in the defense's requests to charge (Dkt. No. 75, Request No. 4), other courts have given similar cautionary instructions.

    The government's objections are misplaced. First, the government objects that the phrase "'people may freely say or write anything they want regarding such [terrorist] organizations'" "overstates the scope of the protections afforded by the First Amendment." Gov't Letter 2 (quoting Draft Jury Instruction 6-7). The government is mistaken,

Hon. Edgardo Ramos                                          January 12, 2017
United States District Judge                                          Page 3

**United States v. El Gammal, 15 Cr. 588 (ER)**

and that phrase correctly reflects the law, as just explained.  See Humanitarian Law Project, 130 S. Ct. at 2722-23; Farhane, 634 F.3d at 137.  United States v. Rahman, 189 F.3d 88 (2d Cir. 1999) (cited at Gov't Letter 2), is not to the contrary.  Rahman rejected a First Amendment challenge to the seditious conspiracy statute, 18 U.S.C. § 2384, which "proscribes 'speech' only when it constitutes an agreement to use force against the United States."  189 F.3d at 114.  See also id. at 115 (distinguishing between "expressions of belief, which are protected by the First Amendment, and threatened or actual uses of force, which are not").  Here, there is no evidence that El Gammal made, and he is not charged with making, any statements agreeing to use, threatening to use, or using force.  Nor is there evidence that he advocated "'imminent lawless action.'"  Gov't Letter 2 (quoting Brandenburg v. Ohio, 395 U.S. 444, 447 (1969)).

     Second, the government objects that certain crimes can be committed by speech alone, and that such speech is unprotected.  True, but immaterial.  In the context of material support, such speech must be "under the direction of, or in coordination with foreign groups that the speaker knows to be terrorist organizations."  Humanitarian Law Project, 130 S. Ct. at 2723.  The government has not alleged or proved direction or coordination here.  Indeed, El Gammal is not charged with providing material support through speech, but through personnel.

     Finally, the government speculates that the jury will misunderstand this instruction to preclude the use of El Gammal's speech as evidence of his mental state.  Gov't Letter 2.  The Court's instruction says no such thing, and juries are presumed to follow their instructions, see, e.g., United States v. Agrawal, 726 F.3d 235, 258 (2d Cir. 2013).  Indeed, this Court's charge specifies that the jury should consider circumstantial evidence (such as El Gammal's statements and the media he viewed and shared) in determining whether the government has proved El Gammal's culpable state of mind.  Jury Charge 36-37.  See also Jury

Hon. Edgardo Ramos					January 12, 2017
United States District Judge				Page 4

**United States v. El Gammal, 15 Cr. 588 (ER)**

Charge 18 (instructing jury to consider "statements of each alleged co-conspirator and such inferences as may be reasonably drawn from them" in determining whether conspiracy existed).  Those instructions -- in combination with an explanation of the offense's elements to which the government does not object -- suffices to ensure that the jury will feel free to give El Gammal's protected activity the weight deemed due.

B.   A Conscious Avoidance Instruction Is Not Warranted.

This Court should decline to give a conscious avoidance charge because the factual predicate is lacking.  Here, the government alleges that El Gammal and Samy El-Goarany planned his travel for months, communicating over Facebook, Surespot, telephone, and in person.  The government's theory is not that Samy hid what he was doing during those interactions, but that the two formed a plan together.  A conscious avoidance charge is "inappropriate" "when the only evidence that alerts the defendant to the high probability of the criminal activity is direct evidence of the illegality, such that the question for the jury is whether 'the defendant had either actual knowledge or no knowledge at all of the facts in question.'"  United States v. Cuti, 720 F.3d 453, 463 (2d Cir. 2013) (quoting United States v. Nektalov, 461 F.3d 309, 316 (2d Cir. 2006)).  That is the case here.  Either Samy told El Gammal that he intended to join ISIS (actual knowledge), or lied and said he was doing humanitarian work (no knowledge).

Here, the government points to three facts that, it says, justify a conscious avoidance charge: (1) El Gammal and Samy's use of coded language; (2) El Gammal's failure to accompany Samy to Turkey; and (3) Samy's secrecy about his plans with friends and family members.  Gov't Letter 4.  The last is easily dispatched.  Evidence that Samy (unbeknownst to El Gammal) concealed his plans from third parties does not support any inference with respect to El Gammal's mental state, especially because the government has not shown that Samy was similarly secretive with El

Gammal.  Moreover, Samy's conduct with respect to third parties (of which El Gammal was unaware) proves nothing about El Gammal's state of mind.  See Cuti, 720 F.3d at 463 (conscious avoidance instruction inappropriate "if the defendant denies ever having access to the facts that the government claims should have alerted him to the fraud," because "the issue is not whether the facts he knew should have alerted him but whether he could even have known those facts.")

So too El Gammal's failure to travel.  He did not decline Samy's invitation to travel or back out of a trip at the last minute, nor is there evidence that the parties ever contemplated his making this trip.  "A conscious avoidance charge ... instructs the jury that it can infer knowledge by the defendant of a particular fact if the defendant intentionally decides to avoid knowledge of that fact."  United States v. Adeniji, 31 F.3d 58, 62 (2d Cir. 1994).  Here, El Gammal never made an intentional decision not to travel, so that omission proves little.

Finally, the use of coded language does not justify the charge.  The usual premise of coded language is that the parties have a mutual understanding of what the code means.  If that's true, then this conduct evinces actual knowledge.  But if Samy was lying to El Gammal -- using "the company" to mean one thing to himself (ISIS) and another to El Gammal (illegal humanitarian work, as he told Khalafalla Osman) -- then the code does not establish the requisite proof that El Gammal avoided learning the truth.  Rather, it shows only that Samy deceived El Gammal about his plans.

Should the Court disagree, we request the Sand Instruction (3A-2).  The government's proposed charge (Dkt. No. 73, at 28-29) is erroneous and unbalanced.  For example, the government mistakenly suggests that conscious avoidance can prove that "the defendant acted with the necessary knowledge or intent."  Dkt. No. 73, at 28.  But it's well settled that conscious avoidance can only

Hon. Edgardo Ramos                                              January 12, 2017
United States District Judge                                              Page 6

**United States v. El Gammal, 15 Cr. 588 (ER)**

establish knowledge, not specific intent. See, e.g., United States v. Samaria, 239 F.3d 228, 239-40 (2d Cir. 2001). The jury should be so instructed. Similarly, the last line of the charge is insufficient. If the jury finds that El Gammal "actually believed" that Samy did not plan to join ISIS, then it is not the case that he merely "may not have acted knowingly," Dkt. No. 73, at 29. Rather, he did not act knowingly and is not guilty. "[A]lthough the jury may be instructed in proper circumstances that knowledge of a criminal fact may be established where the defendant consciously avoided learning the fact while aware of a high probability of its existence, the court must include a proviso advising the jury that it cannot find knowledge of the fact if the defendant actually believed the contrary. ... Failure to include that proviso improperly permits the jury to convict a defendant who honestly believed that he was not engaging in illegal activity." United States v. Sicignano, 78 F.3d 69, 71-72 (2d Cir. 1996). See also, e.g., United States v. Feroz, 848 F.2d 359, 360 (2d Cir. 1988).

C.   Accomplice Or Cooperating Witness Testimony

The defense has no objection to the government's proposed revision. Gov't Letter 4-5. However, we request several changes to this instruction, as discussed below.

**II.  The Defense's Requests**

A.   Reasonable Doubt (Jury Charge 4)

The defense requests that the Court either give the Sand Instruction (4-2), or no instruction at all. See, e.g., United States v. DeSimone, 119 F.3d 217, 226-27 (2d Cir. 1997) (discouraging district courts from defining "reasonable doubt"); United States v. Ivic, 700 F.2d 51, 69 (2d Cir. 1983) (same, but stating that if definition is given, standard definition should be used).

The defense objects to the second, third, and fourth paragraphs of the Court's proposed instruction on the

Hon. Edgardo Ramos                                        January 12, 2017
United States District Judge                                       Page 7

**United States v. El Gammal, 15 Cr. 588 (ER)**

ground that they shift the burden to the defense and permit conviction on less than proof beyond a reasonable doubt, in violation of the Fifth and Sixth Amendments.

In addition, the defense objects to the fourth paragraph of the Court's proposed instruction for the reasons given in the commentary to Sand 4-2. This language is "not ... recommended" because "it is basically a reductio ad absurdum argument that borders on the emotional, tends to minimize the government's burden, and does not actually serve the purpose of defining reasonable doubt for the jury."

B.   Count One: First Element (Jury Charge 8)

First, the defense requests that the definition of "material support" be limited to "personnel," as that is the only form of material support alleged to have been provided here.

Second, the defense requests that the jury be charged, pursuant to § 2339B(h) and Judge Garaufis's charge in United States v. Pugh, 15 Cr. 116 (NGG) (E.D.N.Y.): "The defendant can be convicted for a violation of this statute in connection with providing, attempting to provide, or aiding and abetting the provision of, personnel, if you find that he has knowingly attempted to provide one or more individuals, which may include himself, to work under ISIS's direction or control. However, the defendant cannot be convicted if he worked independently of ISIS to advance its goals and objectives." Dkt. No. 75-2, at 23-24. The defense believes that this provision sets forth an element that the jury must find beyond a reasonable doubt. At a minimum, however, as Judge Garaufis concluded in United States v. Pugh, 2015 WL 9450598, at *11 (E.D.N.Y. Dec. 21, 2015), § 2339B(h) "further defines" the statutory term "personnel," and as such should be included in the instruction. See also Dkt. No. 75-1, at 2033 (Judge Gleeson's charge in Medunjanin, defining "personnel" as "agreeing to work under the direction and control" of FTO).

Hon. Edgardo Ramos                                      January 12, 2017
United States District Judge                                      Page 8

**United States v. El Gammal, 15 Cr. 588 (ER)**

C.   Count One: Aiding And Abetting (Jury Charge 13-14)

　　　The defense requests that this Court give the definition of aiding and abetting set forth in Dkt. No. 75, Request No. 6 (i.e., the two bullet points), which is derived from Rosemond v. United States, 134 S. Ct. 1240 (2014), and the Sand Instruction (11-2).

D.   Count Two: First Element (Jury Charge 16-19)

　　　As discussed above, the defense requests that the description of the conspiracy be narrowed to the provision of personnel in particular (as opposed to material support in general), as there has been no proof that the principals conspired to provide any other form of support.

E.   Count Two: Second Element (Jury Charge 19-21)

　　　First, the defense requests the addition of some language clarifying the necessary mental state.  "To prove conspiracy, the government must show that the defendant agreed with another to commit the offense; that he 'knowingly' engaged in the conspiracy with the 'specific intent to commit the offenses that were the objects of the conspiracy.'"  United States v. Monaco, 194 F.3d 381, 386 (2d Cir. 1999).  See also United States v. Salameh, 152 F.3d 88, 145 (2d Cir. 1998).  As is, several parts of the instruction may create the misimpression that El Gammal need not have known or intended to further this precise unlawful objective.  E.g., Jury Charge 19 ("The Defendant need not have known that he was breaking any particular law or any particular rule.  He need only have been aware of the generally unlawful nature of his actions."); Jury Charge 20 ("It is not necessary that the Defendant be fully informed as to all the details of an alleged conspiracy in order for you to infer knowledge on his part.")

　　　Thus, the defense requests the following language, or substantially similar language: "The defendant must have joined the conspiracy with knowledge that its unlawful objective was to provide material support in the form of

Hon. Edgardo Ramos                                    January 12, 2017
United States District Judge                                    Page 9

**United States v. El Gammal, 15 Cr. 588 (ER)**

personnel to ISIS, with the specific intent to further that unlawful objective." Appropriate language appears in Count Four: First and Second Elements: "[T]he Government must prove that Mr. El Gammal knowingly and willfully became a member of that charged conspiracy during the applicable time period, knowing that its goal was to receive military-type training from ISIL, and intending by his actions to help it achieve that goal." Jury Charge 28.

Second, as above, the defense requests an instruction pursuant to § 2339B(h): "The defendant can be convicted for a violation of this statute in connection with conspiring to provide personnel, if you find that he has conspired to provide one or more individuals, which may include himself, to work under ISIS's direction or control. However, the defendant cannot be convicted if he worked independently of ISIS to advance its goals and objectives."

F.   Count Three: Elements

The defense requests that this Court add, as a fifth element: "The defendant aided and abetted the person's receipt of military-type training." As written, the instruction may create the misimpression that Samy's receipt of such training, regardless of El Gammal's intent or participation, suffices for conviction.

G.   Count Three: Aiding And Abetting (Jury Charge 25-26)

The defense requests the aiding and abetting charge sought above (see supra II.C). Specifically, the defense seeks language clarifying that El Gammal must have known and intended that Samy would receive military-type training from ISIS, not just that Samy would join ISIS. See Dkt. No. 75, Request No. 24. Under Rosemond, which requires foreknowledge for aiding and abetting and holds that foreknowledge means knowledge at a time when the aider and abettor can "walk away," we request the charge proposed in Dkt. No. 75, Request No. 24.

H.   Particular Investigative Techniques (Jury Charge 29)

Hon. Edgardo Ramos                                      January 12, 2017
United States District Judge                                     Page 10

**United States v. El Gammal, 15 Cr. 588 (ER)**

     We request the inclusion of the following from Sand Instruction 4-4, after the first sentence: "You may consider these facts in deciding whether the government has met its burden of proof, because as I told you, you should look to all of the evidence or lack of evidence in deciding whether the defendant is guilty."

I.    Accomplice Or Cooperating Witness Testimony (Jury Charge 29-30)

     First, the defense requests that this Court delete: "In fact, in federal courts, the law is that the testimony of a cooperating witness in itself may be enough for conviction if the jury believes it proves guilt beyond a reasonable doubt." Jury Charge 30. The testimony of the CWs in this case, if believed, would not be sufficient to prove El Gammal's guilt, so the instruction (which is merely illustrative) invites confusion and error.

     Second, the defense requests the relevant Sand Instruction (7-9): "[T]he testimony of a witness who has been promised that he will not be prosecuted should be examined by you with greater care than the testimony of an ordinary witness. You should scrutinize it closely to determine whether or not it is colored in such a way as to place guilt upon the defendant in order to further the witness' own interests; for, such a witness, confronted with the realization that he can win his own freedom by helping to convict another, has a motive to falsify his testimony. Such testimony should be received by you with suspicion and you may give it such weight, if any, as you believe it deserves." As written, the Court's unbalanced instruction encourages the jury to credit the CWs' accounts, but lacks needed cautionary language. See United States v. Vaughn, 430 F.3d 518, 521-24 (2d Cir. 2005).

J.    Charts and Summaries

     Acknowledging the Court's earlier ruling (T.1244-47), and for preservation purposes, we request an instruction

Hon. Edgardo Ramos                                            January 12, 2017
United States District Judge                                          Page 11

**United States v. El Gammal, 15 Cr. 588 (ER)**

that GX-1201 through GX-1206 are not evidence, and that the jury should rely on the underlying exhibits, not the summaries, in its deliberations.

                                          Respectfully submitted,
                                          Federal Defenders of New York

                                          <u>/s/</u>
                                          Daniel Habib, Esq.
                                          Annalisa Mirón, Esq.
                                          Sabrina Shroff, Esq.
                                          Attorneys for Defendant
                                              **Ahmed Mohammed El Gammal**
                                          52 Duane Street - 10th Floor
                                          New York, NY 10007
                                          Tel.: (212) 417-8700