H195gam1                         trial

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

        v.                            15 Cr. 588 (ER)

AHMED MOHAMMED EL GAMMAL,

           Defendant.

------------------------------x

                              New York, N.Y.
                              January 9, 2017
                              9:30 a.m.

Before:

                HON. EDGARDO RAMOS,

                              District Judge

                   APPEARANCES

PREET BHARARA
    United States Attorney for the
    Southern District of New York
BRENDAN F. QUIGLEY
NEGAR TEKEEI
ANDREW J. DeFILIPPIS
    Assistant United States Attorneys

FEDERAL DEFENDERS OF NEW YORK, INC.
    Attorneys for Defendant
BY:  SABRINA SHROFF
     ANNALISA MIRÓN
     DANIEL G. HABIB

1               (Case called)
2               THE DEPUTY CLERK:  Counsel, please state your name for
3     the record.
4               THE COURT:  Are we waiting for Mr. Habib?
5               MS. SHROFF:  We are missing Mr. Habib -- there he is.
6     Thank you.
7               MR. QUIGLEY:  Good morning, your Honor.  Brendan
8     Quigley, Negar Tekeei, Andrew DeFilippis for the United States.
9     We are joined by Vanessa Quinones who is a paralegal in our
10    office, and Agent Kamaal Collie.
11              THE COURT:  Good morning.
12              MS. SHROFF:  Good morning, your Honor.  For
13    Mr. El-Gammal, Federal Defenders of New York by Sabrina Shroff
14    Daniel Habib, Analisa Mirón and Hannah Sotnick.
15              THE COURT:  Good morning to you all.  Good morning
16    Mr. El-Gammal.
17              THE DEFENDANT:  Good morning.
18              THE COURT:  Is everyone prepared to proceed?  Yes?
19              MS. SHROFF:  Yes.
20              MR. QUIGLEY:  Yes, your Honor.
21              THE COURT:  There are three things that I think we
22    need to get done this morning, one being the allocution.  I did
23    have the allocution that I proposed to take of Mr. El-Gammal
24    since the parties -- I don't believe we have gotten any
25    comments from either side; is that correct?

1          MR. QUIGLEY:  That's correct, your Honor.

2          MS. SHROFF:  That's correct, your Honor.

3          THE COURT:  The other thing that we need to determine

4   are the question of the juror names and the issue concerning

5   the cross-examination of Mr. El Goarany and Agent McNulty, but

6   since we are all agreed, let me begin with the allocution of

7   Mr. El-Gammal.  I am going to inquire regarding the

8   government's offer of a plea and the communication of that

9   offer to the defendant.

10         Mr. El-Gammal, I want you to listen carefully to my

11  questions and the answers given by counsel.  Okay?

12         First, for Mr. Quigley, did the government extend a

13  plea offer to Mr. El-Gammal?

14         MR. QUIGLEY:  Yes, your Honor; we did.

15         THE COURT:  Was it in writing?

16         MR. QUIGLEY:  It was, your Honor.

17         THE COURT:  In the government's view, is the

18  defendant's sentencing exposure if he proceeds to trial and is

19  convicted on every count, greater than the exposure he would

20  face if he had accepted the plea offer?

21         MR. QUIGLEY:  It is, your Honor.

22         THE COURT:  Thank you.

23         For defense counsel, did defense counsel give the

24  defendant a copy of the plea offer and discuss it with him?

25         MS. SHROFF:  Yes, your Honor.

H195gam1                             trial

1           THE COURT:  Did defense counsel discuss the
2  defendant's sentencing exposure if he went to trial and were
3  convicted on all counts?
4           MS. SHROFF:  Yes, your Honor.
5           THE COURT:  Did defense counsel make a recommendation
6  to the defendant as to whether he should accept or reject the
7  plea offer?
8           MS. SHROFF:  Yes, your Honor.
9           THE COURT:  Thank you, Ms. Shroff.
10          Mr. El-Gammal, have you heard everything that's been
11 mentioned so far today?
12          THE DEFENDANT:  Yes, your Honor.
13          THE COURT:  Sir, have you taken any drugs, medicine,
14 or pills, or had any alcohol in the last 24 hours?
15          THE DEFENDANT:  No, your Honor.
16          THE COURT:  Mr. El-Gammal, is your mind clear today?
17          THE DEFENDANT:  Yes, your Honor.
18          THE COURT:  Mr. El-Gammal, have you heard the
19 questions I asked the government attorney and your counsel and
20 their answers?
21          THE DEFENDANT:  Yes, your Honor.
22          THE COURT:  Was your attorney's account of their
23 discussions with you accurate?
24          THE DEFENDANT:  Yes, your Honor.
25          THE COURT:  Did you see the government's plea offer

1  and did you discuss it with your attorneys?

2            THE DEFENDANT:  Yes, your Honor.

3            THE COURT:  Have you rejected the government's plea

4  offer?

5            THE DEFENDANT:  Yes, your Honor.

6            THE COURT:  Thank you, Mr. El-Gammal.  You may be

7  seated.

8            The next thing that I want to discuss is the issue of

9  the jurors' names.  I have determined to deny the government's

10 request.  I will be using the actual names of the jurors at

11 least initially certainly when we call them up from the venire

12 into the box.  The case law that's been brought to my attention

13 by both sides indicate that there are any number of factors

14 that Courts take into account in determining whether or not to

15 use juror names or to impanel an anonymous jury.

16           As Judge Forrest in the Mustafa case indicated, the

17 impanelment of an anonymous jury is a drastic measure and is

18 one that should be taken only in limited circumstances.  This

19 Circuit has realized that allowing an anonymous jury carries

20 with it a possibility of unfair prejudice to the defendant and

21 the danger of encroaching on the presumption of innocence.

22           In determining whether or not to impanel an anonymous

23 jury, Courts in this Circuit have considered, among other

24 factors, the charges against the defendant and whether they are

25 serious charges, whether there is a substantial potential

threat of corruption of judicial process, and whether there is considerable media of the trial that is anticipated.

In this case, although it obviously involves a serious crime it is not, to my mind, so serious that it requires that the jurors' names not be used. I think this case is different from the case of Pugh in the Eastern District of New York in the very least and, importantly, because the Pugh case involved an allocution that the defendant attempted to corrupt, at least, the grand jury process. There are no such allegations here and why these charges are serious, I do note that the defendant is, based on my reading of the statutes, none of the counts that he is facing -- he is facing four counts -- two are 20-year counts, one s a 10-year count, and one is a five-year count. So, he is not facing life or anything close to that.

In addition, as the government noted in its prior submission to the Court, the defendant is accused of assisting the travel of a co-conspirator, he is not personally accused of committing any violent acts much less attacks on innocent New Yorkers. When you compare that, for example, to the Mustafa case and have some familiarity with this case because I, once upon a time, represented Mr. Mustafa's co-defendant in a trial before Judge Keenan, the charges there were much more serious including conspiracy to take hostages and the killing of hostages. That is with respect to Mr. Mustafa himself, the Defendant Mustafa, and Judge Forrest determined that that case

was not so serious that it required the extraordinary step of impaneling an anonymous jury.

With respect to Mr. Al Kassir -- rather, Kassir who I am more familiar with, he was charged with providing material support to Al Qaeda and conspiring to kill, kidnap, maim, and injure persons in a foreign country and to conceal material support and resources to terrorist organization including al Qaeda, and in that case we did not undertake any measures to hide the jurors' names, etc.

So, what we are left with -- and then there is the third aspect that whether there is considerable media coverage of the trial that is anticipated. Clearly this case has garnered some media attention, it will likely garner some more.

I note that I have only received two requests from members of the press for bringing in computers or electronic equipment. I have not been deluged by the press with respect to any inquiries. The Office of the District Executive has prepared to deal with the media requests and asked me if we needed an overflow room, for example: I told them that I did not believe that we did.

So, I don't think that this is a case that will garner considerable or extraordinary media attention. And, as I indicated, there is absolutely no allegation or threat that's been brought to my attention, certainly that Mr. El-Gammal or any co-conspirator has in any way attempted to corrupt the

1     judicial process.

2          So, what we are left with is a case that involves
3     ISIL, the mere incantation of your organizations whether it
4     involves ISIL the case law is clear, is an insufficient basis
5     upon which to impanel an anonymous jury.  So, that constitutes
6     the Court's decision in that regard.  We will be using the
7     jurors' names.

8          Now I, for what it is worth, I tend to be very
9     cognizant of juror sensibility, and so when I ask them where
10    they live I make sure that I tell them that they don't have to
11    give me a precise address, they can just tell me what town they
12    live in; they don't have to tell me precisely where they work
13    or where a spouse works or where their children go to school or
14    anything of that nature.  If there is anything that they want
15    to talk about at side bar I will happily accommodate them and,
16    by the way, we should all be prepared to do a lot of jumping up
17    and moving to side bar during the course of this jury
18    selection, I believe.

19         Now, with respect to the cross-examination of
20    Mr. El Goarany and Agent McNulty, I understand that the defense
21    will not be cross-examining Agent McNulty concerning his
22    teenage escapades.

23         With respect to Mr. El Goarany, I am granting the
24    government's request that the defense not question him
25    concerning the two items that took place in the late 1980s but

H195gam1                         trial

1   I did want to discuss with the parties the third item and I
2   understand that this is all still, I guess, under seal, so what
3   I want to do is discuss it with the parties in the robing room.
4            So, we can all get ready.
5            (Continued on next page)
6            (Pages 10-13 SEALED by order of the Court)

H195gam1                          trial

1            (In open court)
2            THE COURT:  As I indicated, it is going to be 22 folks
3   in the box, seven in the first bench and seven in the second
4   bench, and there will be 23, the one furthest to your right,
5   and then 28 is, I guess, whatever, 29, on the second bench.
6            (Recess)
7            (Jury Voir Dire under separate cover)

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300