

750 Third Avenue
New York, NY 10017-2703
(212) 687-8181
Fax: (212) 972-9432
www.kreindler.com

December 17, 2018

Via ECF/CM
The Honorable Edgardo Ramos
United States District Court
 for the Southern District of New York
40 Foley Square
New York, NY 10007

    Re:    *United States v. El Gammal*, 15-cr-588 (S.D.N.Y.) (ER)

Dear Judge Ramos:

    We submit this letter-reply to the government's sentencing submission to briefly address certain issues it raised, and to also ask the Court to consider the attached supplemental exhibits, including a letter from Ahmed el Gammal (*see* Exhibit I hereto), recent Bureau of Prisons records (*see* Exhibit J hereto) a revised and signed letter in support from Mr. Gammal's former mother in law Cherie Dubrow (*see* Exhibit K hereto), certain additional photographs, documenting Mr. Gammal's close relationship with his mother and his former spouse (and demonstrating the nature of their relationship with each other) (*see* Exhibit L hereto) and discovery materials (Tarek el-Goarany's FaceBook messages about his brother's plans) that substantiate the claim that Samy el-Goarany was determined to travel to Syria with or without anyone else's help (*see* Exhibit M hereto, filed under seal).

    The government's memorandum largely focuses on the trial evidence, which, while relevant to the offense conduct portion of a sentencing analysis, is only one of many factors a court must take into account when fashioning a sufficient but not greater than necessary sentence.  When considering the other statutory sentencing factors, the government's submission takes a wholly superficial approach that cannot justify the drastic sentence it seeks – one that would incarcerate Mr. Gammal until well into his 60s, when his hope for meaningful relationships with his loved ones (critical to his reentry) will be severely damaged and his likelihood of gainful employment will be seriously diminished.

    First, to the point that Mr. Gammal "has shown no apparent remorse," it would appear that this is an argument to further penalize Mr. Gammal for exercising his constitutional right to go to trial, beyond the loss of the three-point acceptance of responsibility reduction.  That Mr. Gammal has not made a statement of remorse satisfactory to the government cannot justify additional incarceration, given that he also has a constitutional right to appeal his conviction and the government's apparent expectation for a public inculpatory declaration would impair that

California Office
707 Wilshire Boulevard, Los Angeles, CA 90017-3613
Tel: (213) 622-6469  Fax: (213) 622-6019

Massachusetts Office
855 Boylston Street, Boston, MA 02116-2688
Tel: (617) 424-9100  Fax: (617) 424-9120

*United States v. Gammal* – 15-cr-588 (S.D.N.Y.) (ER)
Dec. 17, 2018
Defense Sentencing Reply Letter
p. 2 of 3

right.[1]

    Second, as to the seriousness of the offense (*see* Gov't Memo at 23 – 27), Mr. Gammal's offense was no more serious than that of Asher Abid Khan, who was sentenced to 18 months in custody and whose sentence the government never attempts to distinguish. Indeed, the government's argument about the "incredibly serious" nature of the offense is necessarily true of all material support of terrorism cases, and offers no specific argument why Mr. Gammal's conduct warrants a sentence nearly 20 times longer than Khan's nearly identical conduct.

    Third, the underlying facts in the cases the government presents are not comparable to Mr. Gammal's offense conduct. In *United States v. Lutchman*, --- F.3d --- , 2018 WL 6362603 (2d Cir. Dec. 6, 2018), the defendant had been involved in a plot with an ISIL member to attack individuals at a local grill in Rochester, New York. He cased possible venues for the attack, purchased ski masks, knives, a machete, zip ties, duct tape, ammonia and latex gloves to use in the attack. *Id.* In *United States v. Saidakhmetov*, 2018 WL 461516 (E.D.N.Y. Jan 18, 2018), the defendant and his co-conspirator purchased travel documents with the plan to get to Syria and join ISIL (*Id.*), had expressed his belief that it was the duty of every Muslim to go and fight in Syria, had tried to recruit ISIL soldiers, had communicated directly with ISIL representatives and had pledged to engage in violence in the United States. *See U.S. v. Saidakhmetov*, 15-cr-95 (E.D.N.Y.) (WFK), ECF No. 259 at 3. He also made threats against President Obama. *Id.* The defendant in *United States v. Alaa Sadeh* had been engaged in a long-term effort to not only travel to join ISIL but to recruit others to travel and join as well; expressed his belief that he had a religious obligation to do so; and threatened to "kill someone" after discovering that "one of his friends snitched on him." 15-cr-558 (D.N.J.) (SDW), ECF No. 1 at 29. The conduct in those cases is far different – and far more serious – than the facilitation at issue in Mr. Gammal's case.[2]

    Last, in discussing Mr. Gammal's history and characteristics, the government largely ignores anything specific to Mr. Gammal and instead discusses generalities. For example, it

---

[1] The government attempts to distinguish Islam Said Natseh's 60-month sentence by noting that he "plead guilty and expressed remorse for his conduct" (Gov't Memo at 33), but the sentencing court there did not vary below the 360-month guidelines range because the defendant did not go to trial – and if it did, surely the risk of a 25-year greater sentence for going to trial as opposed to pleading guilty would be the sort of trial tax that raises constitutional concerns.

[2] Other prosecutions in which sentences were far below the sentencing guidelines range the government seeks here include *U.S. v. Van Haften*, 15-cr-37 (W.D.Wisc.) (JDP), ECF No. 77 at 1, ECF No. 84 (120-month sentence, despite the defendant's "very clear … desire and plan to fight abroad with terrorists, and to kill Americans and American allies," and despite the fact that "he not only spoke, he acted."); and *U.S. v. Qamar*, 16-cr-227 (E.D.Va.) (LMB), ECF No. 33 at 2 – 11, ECF No. 43 (-month sentence for a defendant who identified ISIL targets in Washington, D.C. and planned to broadcast images of those targets to inspire lone-wolf attackers.) Even those cases involving radicalized defendants who planned violent actions directly against United States citizens resulted in sentences less than half what the government seeks here.

*United States v. Gammal* – 15-cr-588 (S.D.N.Y.) (ER)
Dec. 17, 2018
Defense Sentencing Reply Letter
p. 3 of 3

argues that age should count against Mr. Gammal with respect to sentencing, but that argument ignores the empirical evidence that Mr. Gammal's age (especially when combined with his lack of prior criminal history) indicates a low likelihood of recidivism. *See* U.S. Sentencing Commission, *The Effects of Aging on Recidivism Among Federal Offenders*, Dec. 7, 2017.[3] The fact of Mr. Gammal's relatively advanced age – 46 as compared, say to 20 – is, contrary to the government's argument, a mitigating factor.[4] Additionally, the government fails to address at all either the expert report of Dr. Michael First or Mr. Gammal's good behavior during the past three-plus years of incarceration, both of which provide powerful evidence that a sentence beyond 48-months would be greater than necessary to satisfy the sentencing goals of rehabilitation, specific deterrence and protecting the public.  Dr. First opines as to the multifactorial contributors to Mr. Gammal's offense conduct and observed that unlike radicalized offenders, Mr. Gammal did not have a "strong rigid adherence to the beliefs and practices of Islam," did not "have trouble adapting to the demands of life in the United States," and was, instead, a well-adjusted stable individual with a thriving business and strong family support. *See* Defense Memo, Exh. B at 6 – 7.  Consistent with Dr. First's observations, Mr. Gammal has been an exemplary inmate over several years in a very difficult environment – as distinguished from other terrorism defendants in the same prison.  Mr. Gammal has avoided trouble and has sought out opportunities to make positive contributions to his community.  As his most recent work performance notes, for many months prior to his hiring Mr. Gammal sought out the work, even when he had to make "efforts to be moved so that he could join the program" and as soon as the program was hiring again, "Mr. El Gammal immediately expressed interest and has been a dedicated member of the program since." *Id.*

     As discussed in his opening sentencing submission, a sentence of 48-months in prison will be sufficient but not greater than necessary to satisfy the goals of the federal sentencing regime.  The sentence the government seeks here – which exceeds even the Probation Department's recommendation – is nothing more than a mechanistic application of a sentencing guideline that fails to adequately consider the 18 U.S.C. § 3553(a) factors.

     Respectfully submitted,

/s/ Megan W. Benett
MEGAN WOLFE BENETT, Esq.
750 Third Avenue, 32nd Floor
New York, New York 10017
Tel.:    (212) 973-3406
Fax:    (212) 972-9432
Email: mbenett@kreindler.com

cc:  All counsel of record (via ECF/CM)

---

[3] Available at https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2017/20171207_Recidivism-Age.pdf, last accessed Dec. 17, 2018.

[4] The government submission seems to conflate arguments made in other prosecutions that an offender's youth explains the misconduct with the relevance at sentencing of age as a factor militating against recidivism.