UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>– against –<br><br>AHMED MOHAMMED EL GAMMAL,<br><br>Defendant. | **OPINION AND ORDER**<br>15 Cr. 588 (ER) |

RAMOS, D.J.:

  Ahmed Mohammed El Gammal is currently serving a 144-month sentence. Pending before the Court is El Gammal's motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A).  Doc. 236.  For the following reasons, the motion is DENIED.

I.   BACKGROUND

  **A. Prior Proceedings**

  In August 2015, a Southern District grand jury returned an indictment against El Gammal charging him with four counts:  providing material support or resources to a foreign terrorist organization, in violation of 18 U.S.C. § 2339B; conspiring to do the same, also in violation of 18 U.S.C. § 2339B; aiding and abetting the receipt of military-type training from a foreign terrorist organization, in violation of 18 U.S.C. §§ 2339D and 2; and conspiring to have another person receive military-type training from a foreign terrorist organization, in violation of 18 U.S.C. §§ 18 U.S.C. §§ 371 and 2339D.  *Id.*  On January 30, 2017, after a twenty-one-day trial, a jury convicted El Gammal on all counts. Doc. 202.  On December 18, 2018, the Court sentenced El Gammal to 144 months' imprisonment on the first two counts, 120 months' imprisonment on the third count, and 60 months' imprisonment on the fourth count, with all sentences to run concurrently. Doc. 230.  El Gammal appealed his conviction, and on October 26, 2020, the Second

Circuit affirmed. *United States v. El Gammal*, 831 F. App'x 539, 544 (2d Cir. 2020) (summary order).

El Gammal is currently serving his sentence at FCI Phoenix in Phoenix, Arizona and, based on good time credits, has a projected release date of November 13, 2025. Doc. 237 at 14.

### B. El Gammal's Motion

On December 21, 2020, El Gammal filed his motion for compassionate release. Doc. 236. The Government concedes that El Gammal has exhausted his administrative remedies in connection with the instant motion. Doc. 244 at 10 n.2. Accordingly, the motion is ripe for adjudication. *See* 18 U.S.C. § 3582(c)(1)(A).

In his motion, El Gammal argues, first, that there are extraordinary and compelling reasons to warrant a reduction in his sentence. El Gammal is forty-eight years old and, with a body mass index ("BMI") of 40.6, is considered to be severely obese. Moreover, El Gammal has been diagnosed with hypertension, for which he receives daily medication, and he had been a heavy tobacco user until five years ago. Based on these factors, and coupled with the spread of COVID-19 across inmates in FCI Phoenix, El Gammal argues that the heightened risk of complications that may arise from infection give rise to extraordinary and compelling circumstances that justify his release. Second, El Gammal argues that, under the factors set forth in 18 U.S.C. § 3553(a), he should be permitted to complete the remainder of his sentence in home confinement. Regarding this point, El Gammal emphasizes that pandemic-related lockdown restrictions at FCI Phoenix have rendered his term of incarceration much more oppressive than the Court contemplated when it imposed his original sentence. Moreover, El Gammal emphasizes that he has served as an Inmate Suicide Watch Companion, has received consistently outstanding evaluations for his work, and has recently been approved to be transferred to a low-security facility. While noting the seriousness of his offenses, El

Gammal emphasizes that the changed circumstances render home confinement a just punishment.

The Government opposes El Gammal's request. As to El Gammal's arguments regarding extraordinary and compelling circumstances, the Government notes that El Gammal has already contracted and recovered from COVID-19 with no apparent symptoms or remaining health effects—a fact that El Gammal does not dispute. As such, according to the Government, there are no longer extraordinary and compelling reasons justifying compassionate release. The Government also argues that, even if there were such reasons, the factors under 18 U.S.C. § 3553(a) compel denying El Gammal's motion, emphasizing that he supported a terrorist organization through his actions. Additionally, the Government contends that a modification of El Gammal's sentence would severely undermine important deterrent objectives at issue in this case.

In his reply, El Gammal acknowledges that he has recovered from COVID-19 without any apparent lingering effects from the disease. Still, given the developing science around COVID-19, El Gammal argues that there is no reason to presume that he will avoid reinfection and that, given his underlying health conditions, he will not suffer serious adverse effects were he to be reinfected. Regarding the factors under 18 U.S.C. § 3553(a), El Gammal adds that, if granted a modification, he will have served effectively all but three years of his time in institutional custody. Further, as to the deterrent effect of his punishment, El Gammal notes that the Court stated during sentencing that it did not anticipate El Gammal would commit another crime after his release from prison, and that there was uncontradicted evidence at sentencing to support the conclusion that his conduct was unlikely to recur.

## II. DISCUSSION

### A. Legal Standard

Although a court may not normally "modify a term of imprisonment once it has been imposed," there are certain limited exceptions, including "compassionate release."

*See United States v. Roberts*, No. 18 Cr. 528 (JMF), 2020 WL 1700032, at *1 (S.D.N.Y. Apr. 8, 2020) (internal quotation omitted).  Under 18 U.S.C. § 1382, a court may reduce a prisoner's sentence when it finds that there are "extraordinary and compelling reasons" that warrant such a reduction, but one of two conditions must first occur:  either the Bureau of Prisons ("BOP") Director may move the court to release the prisoner or, alternatively, the prisoner himself may move the court—but only after he has fully exhausted all administrative rights.  *See* 18 U.S.C. § 3582(c)(1)(A).

Prior to the First Step Act, sole authority rested with the BOP to determine what reasons, for the purposes of compassionate release, are "extraordinary and compelling." *See* U.S.S.G. § 1B1.13 ("BOP Policy Statement"), Application Note 1(D).  The BOP Policy Statement includes as an "extraordinary and compelling reason" the existence of "a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover."  *Id.* cmt. 1(A)(ii)(I).  It also permits the Court to consider whether the incarcerated person "is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)."  *Id.* § 1B1.13(2). However, the Second Circuit in *United States v. Brooker* recently held that the First Step Act also "freed district courts to consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them in motions for compassionate release."  *See* 976 F.3d 228, 237 (2d Cir. 2020).

If the sentencing court finds that "extraordinary and compelling reasons" exist, it "may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in Section 3553(a) to the extent that they are applicable."  18 U.S.C. § 3582(c)(1)(A).  These factors include the nature and circumstances of the offense, the history and characteristics of the

4

defendant, the need for the sentence imposed, and the need to avoid unwarranted sentence disparities.  18 U.S.C. § 3553(a).

### B. Analysis

El Gammal has failed to establish that extraordinary and compelling reasons warrant release.  As an initial matter, the Court agrees with other courts in this District that have found that "the threat of COVID-19 to those in prison," on its own, "constitutes an extraordinary and compelling reason for compassionate release." *United States v. Pacheco*, No. 12 Cr. 408 (JMF), 2020 WL 4350257, at *1 (S.D.N.Y. July 29, 2020). However, "the analysis is necessarily different when an imprisoned person has . . . already contracted and recovered from a COVID-19 infection." *United States v. Pena*, 18 Cr. 640 (RA), 2021 WL 396420, at *2 (S.D.N.Y. Feb. 4, 2021); *see also United States v. Delorbe-Luna*, No. 18 Cr. 384 (VEC), 2020 WL 7231060, at *2 (S.D.N.Y. Dec. 7, 2020). In those circumstances, "courts have tended to focus more on the defendant's 'present need for medical treatment and the adequacy of the treatment that he is receiving,' as opposed to the usual emphasis on 'the potential risk to him or her—particularly due to one or more underlying health conditions—if he or she were to [contract the virus].'" *Pena*, 2021 WL 396420, at *2 (quoting *United States v. Zubkov*, 460 F. Supp. 3d 450, 454 (S.D.N.Y. 2020)).  That is because there is growing scientific consensus that, with the exception of those who are immunosuppressed or otherwise immunocompromised, patients who are infected with COVID-19 develop some degree of immunity from future infections resulting from at least the wild-type or B.1.1.7 variant SARS-CoV-2 strains. *See* Victoria J. Hall et al., *SARS-CoV-2 Infection Rates of Antibody-positive Compared with Antibody-negative Health-care Workers in England:  A Large, Multicentre, Prospective Cohort Study (SIREN)*, The Lancet, Apr. 17, 2021, https://doi.org/10.1016/S0140-6736(21)00675-9; Katherine J. Wu, *COVID-19 Vaccines are Entering Uncharted Immune Territory*, The Atlantic, Apr. 15, 2021, https://www.theatlantic.com/science/archive/2021/04/immunocompromised-

vaccine/618596/; Jennifer M. Dan et al., *Immunological Memory to SARS-CoV-2 Assessed for up to 8 Months After Infection*, Science, Feb. 5, 2021, https://doi.org/10.1126/science.abf4063.

Here, El Gammal acknowledges that, at the time he submitted his request for compassionate release, he had already contracted COVID-19, and he has since suffered no adverse results from his infection. Of course, like other courts in this District, the Court takes seriously "the long-term health consequences that can arise even in someone who appears to have successfully recovered from the virus," and notes that those consequences can arise long after the virus can be detected in a patient. *See Pena*, 2021 WL 396420, at *2 (citing Moises Velasquez-Manoff, *What If You Never Get Better from COVID-19?*, The New York Times, Jan. 21, 2021, https://www.nytimes.com/2021/01/21/magazine/covid-aftereffects.html). However, as El Gammal notes, he has not suffered any complications resulting from his illness, and he does not provide any evidence to suggest that he is immunosuppressed or otherwise immunocompromised. Moreover, although the Court is aware that new variants have been spreading across the country as a result of the coronavirus's mutations, and the science is still developing around the question of whether those mutations evade immunity from prior infection, El Gammal has not provided any evidence to suggest that those variants pose a risk at FCI Phoenix. *See United States v. Curtis*, No. 12 Cr. 214 (ER), 2021 WL 1399964, at *2 n.2 (S.D.N.Y. Apr. 14, 2021). Accordingly, the Court finds that El Gammal has not demonstrated extraordinary and compelling reasons to support his motion for compassionate release.

Having determined that El Gammal has not established the "extraordinary and compelling" reasons necessary for a sentence reduction, "the Court need not, and does not, consider the sentencing factors laid out in 18 U.S.C. § 3553(a)." *See United States v. Nwankwo*, No. 12 Cr. 31 (VM), 2020 WL 7335287, at *3 (S.D.N.Y. Dec. 14, 2020); *see*

*also* 18 U.S.C. § 3582(c)(1)(A).  The Court therefore concludes that El Gammal's request should be denied.

### III.    CONCLUSION

For the foregoing reasons, El Gammal's motion for compassionate release is DENIED.  The Clerk of Court is respectfully directed to terminate the motion.  Doc. 236.

It is SO ORDERED.

Dated:   April 22, 2021
         New York, New York

EDGARDO RAMOS, U.S.D.J.